## IN THE CIRCUIT COURT FOR
## MONTGOMERY COUNTY, MARYLAND

Civil Action No. C-15-CV-25-003984

| | |
|---|---|
| YOSEPH SEYOUM, 1900 Lyttonsville Rd. # 306, Silver Spring, MD 20910 | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CHARLES M. SIMS, ESQ., 411 East Franklin Street, Suite 500, Richmond, VA 23219, and O'HAGAN MEYER PLLC, 411 East Franklin Street, Suite 500, Richmond, VA 23219 | ) ) ) ) ) ) |
| Defendants. | ) |

### COMPLAINT FOR CIVIL ASSAULT AND BATTERY

### JURY TRIAL DEMANDED

**I. PRELIMINARY STATEMENT**

1. This action arises from two separate incidents of assault and battery committed by Defendant Charles M. Sims against Plaintiff Yoseph Seyoum during trial proceedings in the Circuit Court for Montgomery County, Maryland on July 22-26, 2024, in *Crowley, Hoge & Fein, P.C. v. Seyoum,* Case No. C-15-CV-22-004124.

2. Plaintiff brings this action for assault and battery committed by Defendant, who has engaged in the systematic concealment of evidence and obstruction of justice to prevent the disclosure of security camera footage documenting his misconduct.

**II. JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action as the incidents occurred in Montgomery County, Maryland.

4. Venue is proper in this Court pursuant to Maryland Courts and Judicial Proceedings Code § 6-201.

EXHIBIT

C

## III. PARTIES

5. Plaintiff Yoseph Seyoum is a citizen and resident of Maryland.

6. Defendant Charles M. Sims is an attorney licensed to practice law in Virginia, who appeared pro hac vice in the underlying Montgomery County proceedings.

7. Defendant O'Hagan Meyer PLLC is a Virginia professional limited liability company engaged in the practice of law, with offices at 411 East Franklin Street, Suite 500, Richmond, Virginia 23219, and is the employer of Defendant Sims.

## IV. Factual Allegations

### A. The Trial Context

8. During the week of July 22-26, 2024, Plaintiff was a *pro se* defendant/counterclaim plaintiff in trial proceedings before this Court in *Crowley, Hoge & Fein, P.C. v. Seyoum*, Case No. C-15-CV-22-004124.

9. Defendant Sims served as counsel for opposing parties in said proceedings while acting within the scope of his employment with Defendant O'Hagan Meyer PLLC (sometimes "O'Hagan").

10. During the week of July 22-26, 2024, during a break in trial proceedings, Plaintiff politely requested a copy of a PowerPoint presentation that had been used as evidence.

11. In response to this reasonable request, Defendant Sims immediately turned toward Plaintiff, pointed his fingers at Plaintiff in an aggressive manner, and repeatedly stated in a threatening tone: "I know what you are doing."

12. Defendant Sims then aggressively approached Plaintiff in a threatening manner, causing Plaintiff to reasonably fear imminent harmful physical contact.

13. Plaintiff, in fear for his safety, was forced to retreat backward approximately 6-10 feet toward the judge's chambers while stating: "Mr. Sims, what are you doing? Calm down."

14. Despite Plaintiff's attempts to de-escalate, Defendant Sims continued his aggressive advance, placing Plaintiff in reasonable apprehension of imminent battery.

15. This incident occurred in the presence of multiple witnesses, including attorneys Christopher Hoge, Michael Thomas, Defendant Sims' female assistant, Bradley Canter, as well as court personnel.

16. A second time during the July 22-26, 2024 trial, during another break in proceedings, a second assault incident occurred.

17. Defendant Sims again responded aggressively to Plaintiff's polite request for documents and witness lists. Defendant Sims walked toward Plaintiff in a threatening manner eager to batter Plaintiff.

18. Defendant Sims' aggressive approach was so threatening that his own assistant, Michael Thomas, was compelled to physically intervene and restrain Defendant Sims.

19. Mr. Thomas physically restrained Defendant Sims to prevent the situation from escalating into physical violence.

20. This incident occurred in the presence of jurors, court personnel, and other witnesses.

21. Immediately following the first incident, Plaintiff called attention to Defendant's conduct by stating to those present: "You all saw what he did, right?"

**B. Impact of the Assaults**

22. As a result of Defendant's assaults, Plaintiff suffered emotional distress, fear for his physical safety, and disruption of his ability to effectively present his case.

23. Plaintiff, as a *pro se* litigant, was particularly vulnerable to such intimidation tactics and relied on the court's protection to ensure fair proceedings.

24. Courts nationwide recognize that *pro se* litigants are particularly vulnerable to intimidation tactics in legal proceedings. The systematic targeting of a self-represented party through physical intimidation represents not only assault but also an attack on the fundamental right of access to courts. When attorneys use physical aggression against *pro se* opponents, they exploit the inherent power imbalance in the attorney-client relationship and violate core principles of professional conduct.

25. The assaults were calculated to intimidate Plaintiff and interfere with his presentation of evidence during critical portions of the trial.

26. As a direct result of Defendant's assaults and intimidation, Plaintiff was unable to effectively present his case, leading to an adverse judgment against him.

27. Plaintiff suffered a judgment of over $140,000 against him in the underlying case, which he would not have incurred but for Defendant's physical intimidation and disruption of his trial presentation.

28. Plaintiff was forced to empty his retirement savings to pay the judgment, devastating his financial security and future.

29. The assault was strategically timed to occur when Plaintiff was successfully presenting evidence that would have cleared his name and prevented the adverse judgment.

**C. Concealment of Evidence and Obstruction of Justice**

30. Following the trial, Plaintiff diligently sought to obtain security camera footage documenting these assault incidents.

4

31. On December 9, 2024, Plaintiff filed a Motion for Court Order to Release Trial Dates Security Camera Footage and for Sanctions.

32. Defendant Sims, through counsel, filed an opposition to Plaintiff's motion on December 13, 2024, thereby actively preventing Plaintiff from obtaining objective evidence of the assaults.

33. Defendant's opposition notably failed to deny the factual allegations of assault, instead relying solely on procedural objections to prevent disclosure of the video evidence.

34. On July 16, 2025, when Plaintiff filed an Amended Emergency Motion to Compel, Defendant Sims again opposed the motion, asserting jurisdictional objections designed to prevent access to the security footage.

35. Defendant's opposition to the release of security footage constitutes concealment of evidence and obstruction of justice.

36. Despite the motion being fully briefed since December 13, 2024, the Circuit Court has failed to rule on the motion for over seven months.

37. On May 20, 2025, Plaintiff filed a Motion to Expedite Hearing, which has also gone unaddressed.

38. On July 7, 2025, Plaintiff filed an Emergency Motion to Compel Ruling, emphasizing the approaching one-year anniversary and risk of evidence destruction.

39. On July 16, 2025, Plaintiff filed an Amended Emergency Motion to Compel, to which Defendant again objected, continuing his pattern of obstructing access to evidence.

40. The combination of Defendant's active opposition to evidence disclosure and the Court's failure to rule has effectively prevented Plaintiff from obtaining evidence necessary to fully document his claims.

41. Defendant's persistent efforts to conceal video evidence of his assaults demonstrates consciousness of guilt and a continuing pattern of misconduct designed to avoid accountability for his actions. Notably, in multiple court filings spanning from December 2024 through July 2025, Defendants have never once denied that the assaults occurred.

42. Furthermore, it is noteworthy that Defendant Sims has never denied the assaults in any of his opposition motions.

43. In their July 17, 2025 Opposition to Plaintiff's Emergency Motion to Compel, Defendants conspicuously failed to deny any of the assault allegations, instead relying entirely on jurisdictional and procedural arguments. This failure to deny the assaults in a formal court filing constitutes a tacit admission of the misconduct.

44. Defendant Sims' conduct violated Maryland Rules of Professional Conduct 19-308.4(d), which prohibits conduct prejudicial to the administration of justice, and Rule 19-304.4(a), which prohibits using means that have no substantial purpose other than to embarrass or burden a third person.

45. Maryland courts have held that assault committed by professionals in positions of trust constitutes a serious breach warranting substantial damages. While *Sloan v. Segal,* 2008 WL 81513 (Del. Ch. 2008) is a Delaware Chancery Court case, Maryland courts similarly recognize that professionals who commit assault breach their special duties of trust.

46. Maryland courts have specifically addressed assault in professional contexts. In *Jones v. State,* 2020 WL 584521 (Md. Ct. Spec. App. 2020), the court explained that second-degree assault under Md. Code, Crim. Law § 3-203(a) includes placing a victim in reasonable apprehension of imminent battery. Similarly, *Porter v.*

*State,* 455 Md. 220, 166 A.3d 1044 (2017), emphasized the severity of assault charges in professional settings where trust relationships exist.

47. Recent Maryland appellate decisions have further clarified the standards for assault claims. In *Battle v. State,* 252 Md. App. 280, 258 A.3d 1009 (2021), the Court of Special Appeals reaffirmed that assault requires proof of intent to place the victim in fear of immediate offensive physical contact. *Alarcon-Ozoria v. State,* 477 Md. 75, 266 A.3d 313 (2021), emphasized that the victim's apprehension of harm must be reasonable under the circumstances, which is particularly relevant when the assault occurs in a courthouse setting where parties expect safety and decorum.

### COUNT I - ASSAULT

48. Plaintiff incorporates by reference all preceding paragraphs.

49. During the week of July 22-26, 2024, Defendant Sims committed two assaults by intentionally causing Plaintiff to reasonably fear imminent harmful or offensive physical contact.

50. Defendant Sims' aggressive approach, threatening gestures, and verbal threats while advancing on Plaintiff created reasonable apprehension of imminent battery.

51. Plaintiff's fear was reasonable given Defendant Sims' aggressive demeanor, the confined courthouse setting, and Defendant Sims' position as opposing counsel.

52. As a direct and proximate result of Defendant Sims' assaults, Plaintiff suffered damages including emotional distress, disruption of his trial presentation, and violation of his right to participate in legal proceedings free from physical intimidation.

53. Defendant O'Hagan Meyer PLLC is vicariously liable for the tortious conduct of its employee, Defendant Sims, under the doctrine of respondeat superior, as the assaults occurred while Sims was acting within the scope of his employment.

54. Under Maryland law, an employer is liable for an employee's intentional torts when the employee's actions are in furtherance of the employer's business or within the scope of employment. *Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467 (1991); *Tall v. Board of School Comm'rs of Baltimore County,* 120 Md. App. 309, 706 A.2d 659 (1998).

55. The Delaware Supreme Court's analysis in *Sherman v. State Department of Public Safety,* 190 A.3d 148 (Del. 2018), while persuasive authority, demonstrates that employers can be held liable under respondeat superior even for intentional torts when the employee violates a non-delegable duty, supporting the principle that law firms cannot escape liability for their attorneys' assaults during legal proceedings.

56. WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in an amount to be proven at trial, punitive damages, costs, and such other relief as this Court deems just and proper.

## COUNT II - BATTERY

57. Plaintiff incorporates by reference all preceding paragraphs.

58. In the alternative, if the Court finds that Defendant Sims' aggressive physical approach constituted offensive physical contact, Defendant Sims committed battery.

59. Any physical contact or near-contact during Defendant Sims' aggressive advances toward Plaintiff was intentional, harmful or offensive, and without Plaintiff's consent.

60. The contact was particularly offensive given the professional setting and Defendant's duty as an officer of the court to maintain proper decorum.

61. As a direct and proximate result of any battery, Plaintiff suffered damages as set forth above.

62. Defendant O'Hagan is vicariously liable for the battery committed by its employee under a theory of respondeat superior.

63. WHEREFORE, Plaintiff demands judgment against Defendants as set forth in Count I.

## COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64. Plaintiff incorporates by reference all preceding paragraphs.

65. Defendant Sims' conduct in physically intimidating a pro se litigant during trial proceedings was extreme and outrageous, exceeding all bounds of decency.

66. Defendant Sims intended to cause Plaintiff severe emotional distress or acted with reckless disregard for the probability of causing such distress.

67. Plaintiff suffered severe emotional distress as a result of being physically threatened in a courthouse by opposing counsel while attempting to represent himself.

68. The setting of the conduct - during active trial proceedings where Plaintiff was entitled to safety and due process - renders Defendant Sims' behavior particularly egregious.

69. Maryland recognizes intentional infliction of emotional distress claims in professional misconduct contexts. See Harris v. Jones, 281 Md. 560, 380 A.2d 611 (1977) (establishing Maryland's IIED standard requiring extreme and outrageous conduct).

70. Defendant O'Hagan Meyer PLLC is liable for the intentional infliction of emotional distress caused by its employee acting within the scope of employment.

9

71. WHEREFORE, Plaintiff demands judgment against Defendant as set forth above.

## COUNT IV - OBSTRUCTION OF JUSTICE

72. Plaintiff incorporates by reference all preceding paragraphs.

73. Following the assault incidents, Defendants have engaged in a pattern of obstruction designed to prevent disclosure of evidence documenting the misconduct.

74. Defendants' opposition to the release of security camera footage constitutes obstruction of justice and witness intimidation.

75. This obstruction has prevented Plaintiff from obtaining evidence necessary to fully prosecute his claims.

76. See Md. Code, Crim. Law § 9-305 (prohibiting obstruction of justice); see also *In re Criminal Investigation No. 1-162*, 307 Md. 674, 516 A.2d 976 (1986) (discussing obstruction principles in Maryland). The deliberate concealment of evidence documenting attorney misconduct constitutes obstruction of justice, particularly when such concealment prevents a party from obtaining remedies for violations of their rights.

77. The pattern of obstruction extends beyond this Court. On January 23, 2025, when Plaintiff sought relief from the Appellate Court of Maryland (Case No. ACM-REG-1435-2024), Defendants opposed that motion as well, and the Appellate Court denied it on January 24, 2025. Defendants' strategy has been to use procedural technicalities to prevent any court from addressing the substantive issue of attorney assault.

78. As a direct result of Defendants' obstruction, Plaintiff has suffered additional damages including litigation costs and continued inability to clear his name.

79. WHEREFORE, Plaintiff demands judgment against Defendants as set forth above, including all costs and fees incurred due to Defendants' obstruction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants on all counts;

B. Award Plaintiff compensatory damages in excess of **$500,000,** in an amount to be determined at trial, including, but not limited to damages for emotional distress, harm to reputation, and interference with legal proceedings; Plaintiff acknowledges Maryland's statutory cap on non-economic damages under Md. Code, Cts. & Jud. Proc. § 11-108, but notes that punitive damages and economic losses are not subject to this cap;

C. Order immediate preservation and production of all security camera footage from July 22-26, 2024;

D. Award Plaintiff punitive damages sufficient to deter similar misconduct, as warranted under Maryland law when defendant's conduct is characterized by evil motive, intent to injure, or fraud, *Owens-Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992);

E. Maryland's punitive damages jurisprudence supports substantial awards for professional misconduct. *ACandS, Inc. v. Godwin,* 340 Md. 334, 667 A.2d 116 (1995), established that punitive damages require actual knowledge of wrongdoing and deliberate disregard of consequences. *Darcars Motors of Silver Spring, Inc. v. Borzym,* 379 Md. 249, 841 A.2d 828 (2004), confirmed that plaintiffs need not prove defendant's ability to pay when seeking punitive damages for egregious conduct;

F. Award Plaintiff all costs and reasonable attorney's fees incurred in prosecuting this action;

G. Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## VERIFICATION

I, Yoseph Seyoum, verify under penalty of perjury that the factual allegations in this Complaint regarding the assault incidents are true and correct based on my personal knowledge.

Executed on July 28, 2025.

                                         Respectfully submitted,

                                         */s/ Yoseph Seyoum*
                                         Yoseph Seyoum
                                         1900 Lyttonsville Road # 306
                                         Silver Spring, MD 20910
                                         (703) 975-8957
                                         Joe.Scott@PhantomALERT.com
                                         Plaintiff Pro Se

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July, 2025, a copy of the foregoing

## COMPLAINT FOR CIVIL ASSAULT AND BATTERY

was served electronically via Maryland's MDEC system upon the following:

Charles M. Sims, Esq., *Defendant*
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Tel: (804) 403-7111
Fax: (804) 237-2500
Email: csims@ohaganmeyer.com

and

O'Hagan Meyer PLLC, *Defendant*
8115 Maple Lawn Blvd. Suite 350
Fulton, Maryland 20759
Tel: (240) 447-6577

*/s/ Yoseph Seyoum*
Yoseph Seyoum
*Plaintiff, Pro Se*