**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **YOSEPH SEYOUM,** | * | |
| *Plaintiff,* | * | |
| v. | * | **Case No.: 25-3446-TDC** |
| **CHARLES M. SIMS, et al.,** | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CHARLES M. SIMS AND O'HAGAN MEYER, PLLC'S MOTION FOR SUMMARY JUDGMENT

Defendants, Charles M. Sims and O'Hagan Meyer, PLLC (hereinafter "O'Hagan Meyer"), by their attorneys, Justin S. Dunbar, Joshua B. Keyser, and Niles, Barton & Wilmer, LLC, hereby move for Summary Judgment pursuant to Fed. R. Civ. P. 56, and in further support thereof submits the following Memorandum:

## INTRODUCTION

Plaintiff Seyoum's claims against Defendants are unsupported by admissible evidence and fail as a matter of law under Federal Rule of Civil Procedure 56.

In July 2025, Plaintiff, Yoseph Seyoum, was defendant in a collections action in the Circuit Court for Montgomery County, Maryland, brought by Christopher Hoge, Esq., and captioned *Crowley, Hoge & Fein, P.C v. Yoseph Seyoum*, C-15-CV-22-004124. Mr. Seyoum counterclaimed for legal malpractice against Mr. Hoge and his law firm. Mr. Hoge and his firm were represented by Defendant Charles Sims, Esq., as defense counsel in connection with Mr. Seyoum's malpractice claim.

The matter proceeded to trial from July 22-26, 2025. Mr. Seyoum was self-represented at the trial. In his opening statement at trial, Mr. Sims used a PowerPoint presentation which emphasized the strengths of Mr. Hoge's case; afterward, Mr. Seyoum demanded a copy, and Mr. Sims informed

Plaintiff that he was not obligated to provide it and would not do so. Mr. Seyoum proceeded to repeatedly confront Mr. Sims demanding the PowerPoint for the rest of the trial both on the record and during breaks. Mr. Hoge ultimately prevailed at trial as to both his claims and Mr. Seyoum's counterclaim.

Following the trial, Mr. Seyoum asserted that two interactions during the proceedings constituted "assaults" by Mr. Sims in court filings and items of correspondence. First, on the morning of the second day of trial inside the courtroom and at Defense trial table, Mr. Seyoum asserts that he approached Mr. Sims as he was setting up for the day again demanding the PowerPoint slides. Mr. Seyoum claims Mr. Sims stated, "I know what you're doing," pointing at him, and stepping towards him. [Amended Complaint, hereinafter "**Exhibit A**," at ℙ 9.] Mr. Sims, and multiple witnesses, testified that Mr. Sims told Mr. Seyoum to back away. [Defendant Charles M. Sims' Answers to Plaintiff's Interrogatories, hereinafter "**Exhibit B**," at p. 4-5; Affidavit of Christopher Hoge, hereinafter "**Exhibit C**," at ℙ 13; Affidavit of Margaret Wheeler, hereinafter "**Exhibit D**," at ℙℙ 9-11.] Mr. Seyoum then theatrically backed away from Mr. Sims, waving his arms in the air and repeatedly shouting "Mr. Sims! Mr. Sims!" [**Exhibit B** at p. 5, **Exhibit D**, at ℙ 10.] Mr. Sims did not make physical contact with Mr. Seyoum at any point during this occurrence. [*See generally* **Exhibit A**. *See also* **Exhibit B** at p. 4-5; **Exhibit C** at ¶ 15; **Exhibit D** at ¶¶ 12, 19.] Mr. Sims did not raise his arms or threaten Mr. Seyoum. **Exhibit A.** Mr. Seyoum did not raise any issue or concern with the Circuit Court when trial resumed, and Mr. Seyoum presented his case during the second day of Trial. [*See* **Exhibit E**, Trial Transcript, July 23, 2022.]

During the alleged second occurrence, later in the week of trial, after the trial had concluded for the day, Mr. Sims was standing in the lobby outside the courtroom with his client, Mr. Hoge, and several other members of the trial team. Mr. Seyoum approached, again demanding the PowerPoint; Mr. Sims again firmly refused. Mr. Seyoum wrote in his Complaint that Mr. Sims was furious and

had to be restrained by his associate, Michael Thomas. Mr. Thomas' testimony is that he stepped between Sims and Seyoum and faced Mr. Seyoum with his arms crossed until Mr. Seyoum walked away, expressly denying that he restrained Mr. Sims. [Affidavit of Michael Thomas, hereinafter "**Exhibit F**," at ℙℙ 10-13.] The undisputed material fact here is that Mr. Thomas stood between Plaintiff and Mr. Sims.  Again, it is undisputed that at no time did Mr. Sims make physical contact with Mr. Seyoum. [*See generally* **Exhibit A.** *See also* **Exhibit B** at p. 5, **Exhibit D** at ℙ 19; **Exhibit F** at ℙ 13; Affidavit of Bradley Canter, hereinafter "**Exhibit G**," at ¶ 14.]  Mr. Sims did not raise his hands or attempt to touch Mr. Seyoum at any time, nor did he raise his voice. *See* **Exhibit A.**

For the reasons set forth as follows, nothing about the undisputed facts of these occurrences supports Defendants' liability for the claims set forth in Plaintiff's Amended Complaint.[1] This Court should accordingly grant Defendants judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

1.     On the morning of the second day of trial, Mr. Seyoum approached Mr. Sims as he was setting up for the day again demanding the PowerPoint slides.

2.     Mr. Sims said words to the effect of telling Mr. Seyoum to back away; Mr. Seyoum alleges that Sims stated, "I know what you're doing."

3.     Mr. Seyoum alleges that Mr. Sims pointed at him and stepped towards him.

---

[1] Of the four Counts pled in Plaintiff's Amended Complaint, the first three—for assault, battery, and intentional infliction of emotional distress—allege tortious conduct solely by Defendant Sims, not his employer, Defendant O'Hagan Meyer. The fourth Count (labeled "Count V") claims that O'Hagan Meyer is liable for Defendant Sims' alleged conduct in *respondeat superior*. Plaintiff has therefore pled no primary liability to him by O'Hagan Meyer, and any liability by O'Hagan Meyer to Plaintiff would be purely vicarious.

Therefore, given that Mr. Sims is entitled to judgment as matter of law for the reasons set forth in this Memorandum, O'Hagan Meyer is entitled to judgment as a matter of law as to all of Plaintiff's claims as well. *Cf. Anne Arundel Med. Ctr. v. Condon*, 102 Md. App. 408, 416 (1994) ("when liability of the principal is solely vicarious in nature and is not based upon the principal's independent actionable fault, a release of the agent acts as a release of the principal as a matter of law"); *Md. Bd. of Physicians v. Geier*, 241 Md. App. 429, 543 (2019) ("No judgment can be entered against a defaulting defendant if a judgment in favor of a non-defaulting defendant logically precludes the liability of the defaulting defendant." (citing *Curry v. Hillcrest, Inc.*, 337 Md. 412, 430 (1995)).

4. At no point during the First Occurrence did Mr. Sims make physical contact with Mr. Seyoum.

5. At no point during the First Occurrence did Mr. Sims threaten to harm Mr. Seyoum.

6. Later in the week of trial, Mr. Sims was standing in the lobby outside the courtroom with his client, Mr. Hoge, and several other members of the trial team, including Mr. Canter, Mr. Thomas and Ms. Wheeler.

7. Mr. Seyoum approached, again demanding the PowerPoint; Mr. Sims again refused.

8. Mr. Thomas stood between Sims and Seyoum and faced Mr. Seyoum with his arms crossed, until Mr. Seyoum stepped away.

9. At no point during the Second Occurrence did Mr. Sims make physical contact with Mr. Seyoum.

10. At no point during the Second Occurrence did Mr. Sims threaten to harm Mr. Seyoum.

## LEGAL STANDARD

A claim must be dismissed under a motion for summary judgment if "materials in the record" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under governing law." *Spriggs v. Diamon Auto Glass*, 242 F.3d. 179, 183 (4th Cir. 2001). For a material fact to also be "genuine", however, there must be "sufficient evidence favoring the nonmoving party" to be entitled to a "verdict". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 2248 (1986). A genuine issue of material fact cannot consist of "mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (internal citation omitted).

## ARGUMENT

4

**I. Plaintiff cannot sustain his claim for battery as there is no dispute that no physical contact of any kind occurred between Plaintiff and Mr. Sims.**

No evidence has been produced in discovery upon which a fact finder can find that a battery occurred. In Maryland, liability for the tort of battery requires a showing of an "intentional touching of a person without that person's consent," where "touching" is defined to include "the intentional putting into motion of anything that touches another person, or that touches something that is connected with, or in contact with, another person." *White Pine Ins. Co. v. Taylor*, 233 Md. App. 479, 504 (2017) (quoting Maryland Pattern Jury Instructions § 15:2 (5th ed. 2017)). The touching must have been harmful or offensive. *See id.*

Plaintiff did not plead facts supporting his claim that a battery occurred. The Amended Complaint contains no factual allegation of physical contact by Mr. Sims. Mr. Seyoum left what appears to be a placeholder for factual allegations in his Amended Complaint filed in the Circuit Court:

> Smith's colleagues to retrain him.
>
> 13. [i need information for the battery here]
>
> COUNT I - ASSAULT

*See* **Exhibit A** at ¶ 13.

To the extent that the Court is willing to consider Plaintiff's unexecuted and unsworn Answers to Defendants' Interrogatories as part of the discovery record, these too contain no allegation that Mr. Sims touched Plaintiff or caused a contact with him. Accordingly, Plaintiff has failed to produce any evidence whatsoever which would support a claim that an offensive or harmful contact occurred—indeed, that *any* contact occurred at all.

Thus, the uncontroverted evidence in the record is that Mr. Sims did not make or cause contact of any kind with Mr. Seyoum. This is reflected in the sworn affidavits of multiple witnesses. [**Exhibit B** at p. 4, 5; **Exhibit C** at ¶ 15; **Exhibit D** at ¶¶ 12, 19; **Exhibit G** at ¶ 14.] There is no dispute of material fact that Mr. Sims did not commit a battery under Maryland law. As such, there is no evidence to establish an essential element of the claim—an offensive touching—and Defendants are entitled to judgment as a matter of law as to Plaintiff's claim for battery.

**II.      Based on the undisputed facts, no reasonable factfinder could conclude that Defendant Sims threatened Plaintiff and Defendants are entitled to judgment as a matter of law on Plaintiff's assault claim.**

Drawing all reasonable inferences in Plaintiff's favor, no reasonable fact finder could grant him relief for assault as a matter of law. No juror could reasonably conclude from the undisputed facts that Defendant Sims threatened Plaintiff, and Plaintiff's assault claim must therefore fail.

For tort liability for assault to lie in Maryland, the plaintiff must prove 1) that they were threatened by a defendant who possessed the apparent present ability to carry out that threat, and 2) the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm. *Lee v. Pfeifer*, 916 F. Supp. 501, 505-06 (D. Md. 1996). Whether the defendant's behavior is threatening is viewed from the perspective of a reasonable person, not the plaintiff's subjective interpretation. *See id.* at 506. Viewed in the most favorable light to Plaintiff, for the purpose of a motion for summary judgment, all Plaintiff has alleged is that Mr. Sims made the statement "I know what you are doing," loudly, which Mr. Seyoum subjectively interpreted as threatening and aggressive.

There is no evidence that Defendant Sims used any threatening language, only that he spoke firmly in refusing to provide Plaintiff with a copy of the PowerPoint presentation used during opening statement at the underlying trial. The words "I know what you are doing" are not inherently

threatening and could not reasonably be viewed as implying a threat. Nor would a finger point from a distance across a table or with another person in between be so.

Further, none of Mr. Sims' actions or gestures accompanying this alleged statement were sufficient to elevate that statement to a threat. Mr. Seyoum characterizes this interaction as aggressive. Even if Mr. Seyoum did subjectively perceive Mr. Sims stepping forward as "aggressively approaching" or his tone as "angry, unhinged, irrational, and inconsolable," the first element of the tort of assault is not the plaintiff's subjective apprehension of whether the defendant's conduct was threatening, it is whether that conduct was objectively a threat to cause bodily harm. Here, no reasonable person would have interpreted Mr. Sims' alleged conduct as a threat. Saying "I know what you are doing"—unaccompanied by a raised fist or other act demonstrating an intent to cause bodily harm—does not constitute an objectively reasonable threat of imminent bodily harm under Maryland law. At no point does Plaintiff allege that Mr. Sims threatened physical harm, used language threatening to cause harm, or took action suggesting imminent bodily

Critically, to prevail on the first element of the tort of assault, Plaintiff is obligated to prove that Defendant "engaged in some threatening behavior," *MacDonald v. Costco Wholesale Corp.*, No. JKB-17-1747, 2018 U.S. Dist. LEXIS 55893, at \*23 (D. Md. Mar. 23, 2018), adjudged by a standard of reasonableness. There is simply no evidence that Mr. Sims, a lawyer in a courtroom surrounded by courtroom staff and Sheriff's deputies, engaged in conduct which could objectively be considered threatening, and there is no evidence at all that Mr. Sims made any threats of physical harm toward Mr. Seyoum under the circumstances the Plaintiff alleges. No reasonable person would deem his behavior threatening under the surrounding circumstances. And even if Plaintiff perceived Mr. Sims speaking sharply to him as threatening, no objective, reasonable person would have found Mr. Sims' conduct to be a "present threat" that Mr. Sims would imminently act upon by committing a battery.

Where, as here, the alleged conduct occurred in a courtroom or courthouse setting, in view of court personnel and other counsel, and involved non-threatening language, no clinched fists, no weapon, no physical contact, and no pursuit, no reasonable jury could conclude that Defendant Sims committed an assault. Accordingly, Defendants are entitled to judgment as a matter of law.

**III. Defendants are entitled to judgment as a matter of law as to Plaintiff's intentional infliction of emotional distress claim as a matter of law, because no reasonable factfinder could conclude that Defendant Sims' conduct was extreme or outrageous.**

Finally, drawing all disputes of material fact and reasonable inferences therefrom in the Plaintiff's favor, there is no evidence in the record which would establish liability for intentional infliction of emotional distress in Plaintiff's favor.

Liability for the tort of intentional infliction of emotional distress requires a showing of (1) intentional or reckless conduct, which is (2) extreme and outrageous, with (3) a causal connection between the wrongful conduct and the emotional distress, with a showing that (4) the emotional distress is severe. *Harris v. Jones*, 281 Md. 560, 566 (1977). Outrageous conduct must be "extreme in degree, as to go beyond all possible bounds of decency and to be regarded atrocious and utterly intolerable in a civilized society." *Braun v. Maynard*, No. 1:09-cv-1897, 2010 U.S. Dist. LEXIS 32160, at *19 (D. Md. Mar. 31, 2010) (quoting *Harris v. Jones*, 281 Md. 560 (1977)). The mere showing of a threat is explicitly not enough to establish this element: "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," without more, do not suffice to constitute an outrage. *Harris*, 281 Md. at 567. The fourth element of the tort—that the emotional distress must be severe—"required the plaintiff to show that he suffered a *severely* disabling emotional response to the defendant's conduct." The severity of the emotional distress is not only relevant to the amount of recovery but is a necessary element to any recovery. *Id.* 570. In Maryland, it is a question of law for the court to determine, as a threshold matter, whether the conduct alleged is so extreme and

outrageous as to permit the plaintiff to recover. *See Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 680 (1992).

Accordingly, drawing all material factual conclusions in the light most favorable to Plaintiff, none of Defendant Sims' conduct even *approached* the type of outrageous conduct that would support liability for intentional infliction of emotional distress. Even when a threat escalates to physical contact, that alone is not enough to constitute intentional infliction of emotional distress. For instance, where a defendant "yelled and screamed" at the plaintiff and "may have tapped him on the nose and pushed him," Maryland's Court of Special Appeals held that "no rational trier of fact could conclude that Sheehan's actions were more than rude and violent and amounted to extreme and outrageous conduct." *Cont'l Cas. Co. v. Mirabile*, 52 Md. App. 387, 405 (1982). -Here, Plaintiff has not even alleged conduct that constitutes a threat, let alone so much as a tap on the shoulder. As a matter of law, there is no showing of the type of conduct sufficient to establish liability for intentional infliction of emotional distress.

Even accepting Mr. Seyoum's account as true for purposes of summary judgment, Plaintiff has produced no evidence of medically cognizable or functionally debilitating emotional distress. To the contrary, Mr. Seyoum presented his evidence in support of his claims against Mr. Hoge during four days of trial, during which he bickered with Mr. Sims from the witness stand throughout the course of the trial.

Accordingly, Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law, because Plaintiff has not and cannot establish that Defendant Sims acted intentionally to cause Plaintiff severe emotional distress, that Mr. Sims' conduct was outrageous, and that Plaintiff suffered "'emotional distress to such a substantial quantity or enduring quality that no reasonable main in a civilized society should be expected to endure it.'" *Harris*, 281 Md. at 572 (citations omitted).

**IV.     Plaintiff's claimed damages are speculative and not causally related to his claims.**

Maryland law provides that "[t]o recover compensatory damages, the amount must be proved with reasonable certainty and may not be based upon speculation or conjecture." *Brock Bridge Ltd. Pshp. v. Dev. Facilitators*, 114 Md. App. 144, 157 (1997) (internal citations omitted). Mathematical precision as to the extent of damages is not required, but "the plaintiff bears the burden of adducing sufficient evidence from which the amount of damages can be determined on 'some rational basis and other than by pure speculation or conjecture.'" *Id.* (quoting *Ass'n of Maryland Pilots v. Baltimore & Ohio Railroad Co.*, 304 F. Supp. 548, 557 (D. Md. 1969)).

Here, Plaintiff has only set forth his claimed damages in his unexecuted Answers to Interrogatories. [*See* Plaintiff's First Response to Defendant's First Request for Interrogatories, hereinafter "**Exhibit H,**" at ¶ 4.] To the extent that this Court considers these Answers, though, most of the damages Plaintiff claims are based upon the assertion that, but for the alleged assault, he would have prevailed in his malpractice claim against Christopher Hoge. Plaintiff contends that he would have recovered damages of $4 million and $90,000 in legal fees. He also claims a host of other damages, including the amount that Mr. Hoge collected from him by prevailing in his collections action ($143,000), and sums in connection with appeals of a malpractice claim against Carlos Salvado, Esq. ($15,000) and Mr. Hoge ($20,000).[2] Plaintiff also claims a sum of $1 million for his alleged emotional distress justifying or providing any certainty as to what damages that sum represents.

These claimed damages are unsupported by evidence and lack a legally cognizable causal connection to the alleged conduct.   Plaintiff's attempt to reframe the adverse judgment against him in the underlying malpractice action he pursued against Mr. Hoge is not cognizable under Maryland

---

[2] Defendants are entirely unable to discern what damages these sums represent, even allegedly, but presume that Plaintiff is asserting that he is due damages for taking appeals of these cases.

law and is foreclosed by the Appellate Court of Maryland's decision affirming the judgment against him. .

Even assuming that each and every fact Plaintiff alleges regarding Mr. Sims' purported assault is true, Plaintiff has adduced no evidence whatsoever tending to prove Plaintiff's assertion that he would have prevailed at trial but for that purported assault—let alone recovered *millions* of dollars. The only way that a jury could accept his argument that his claimed damages would be to speculate that the trial would have resolved in his favor but for the occurrences giving rise to his claims occurring. The jury would have to do so without even a shred of evidence about the substance of that trial. Plaintiff has adduced no evidence that he suffered any economic damages related to emotional distress, apart from a bald statement that he should be awarded $1 million. There is, therefore, no rational basis upon which Plaintiff's claimed damages could be awarded. Moreover, Plaintiff's recourse to reverse the outcome of the underlying trial would be an appeal of that trial. Indeed, the Appellate Court of Maryland considered such an appeal by Plaintiff and affirmed the underlying trial court's judgment in favor of Mr. Hoge. [*See* Unreported Opinion of Appellate Court, No. 1435 (2026), hereinafter "**Exhibit I.**"]

The Appellate Court of Maryland's decision establishes that Mr. Seyoum lost his case against Mr. Hoge because he failed to present evidence of causation at trial, and for that reason only. As noted by the Appellate Cour, to prevail in his malpractice claim against Mr. Hoge, Mr. Seyoum carried the burden to prove "a case within a case within a case." *Id.* at p. 21. That is, Mr. Seyoum had the burden to prove that his first lawyer, Mr. Salvado, committed malpractice in representing Mr. Seyoum in a Final Protective Order ("FPO") hearing arising out of claim by the mother of his child for domestic violence. In addition, Mr. Seyoum had to prove that Mr. Hoge committed malpractice in representing Mr. Seyoum in pursuing his malpractice claim against Mr. Salvado. *Id.*

Notably, the Appellate Court reviewed the Maryland Circuit Court's grant of a motion for judgment in favor of Mr. Hoge and his law firm *de novo*, and it held that Circuit Court had correctly determined that "Mr. Seyoum failed to present any legally sufficient evidence to establish a breach of the standard of care by Mr. Salvado proximately caused the failure to defeat" the request for an FPO. *Id.* at p. 22. The Court found that although Mr. Seyoum's standard of care expert had opined that "Mr. Salvado breached the applicable standard of care, he unequivocally declined to opine that any breach caused Mr. Seyoum to lose the FPO case." *Id.* Viewing the case in the "light most favorable to Mr. Seyoum, the Court found that "the record contains not even a scintilla of evidence that, but for Mr. Salvado's alleged negligence, the circuit court would have declined to issue the FPO." *Id.* at p. 23. The Court, therefore held that Mr. Seyoum had failed to prove causation and his malpractice action against Mr. Hoge and his firm failed as a matter of law. *Id.*

Thus, Defendants are entitled to judgment as a matter of law that Plaintiff's claimed damages related to the unfavorable outcome of prior legal proceedings and alleged emotional distress are unsubstantiated and not recoverable.

<u>**CONCLUSION**</u>

The maxim that "the law does not concern itself with trifles" applies to this case. Mr. Seyoum inflated a disagreement during the course of a trial into a tort claim for the sole purpose of harassing and inconveniencing an attorney he resents for winning a trial against him. Plaintiff's claims are as legally bankrupt as the claim he pursued against Mr. Hoge. Plaintiff's claims fail as a matter of law because he has not produced evidence sufficient to establish the essential elements of any claim he has asserted against Defendants. Indeed, Plaintiff did not even trouble himself to prosecute the case by meaningfully participating in the discovery process or to produce any credible affirmative evidence to support his claims. And, most importantly, no rational finder of fact would deem those facts that Plaintiff did plead, and present sufficient evidence to support, to substantiate

any of his claims. For these reasons, this Court should grant Defendants summary judgment as Defendants are entitled to judgment as a matter of law as to each Count of Plaintiff's Amended Complaint.

WHEREFORE, Defendants, Charles M. Sims and O'Hagan Meyer, PLLC, respectfully request this Honorable Court grant their Motion for Summary Judgment and deny the relief sought by Plaintiff, and grant such other and further relief as the Court deems appropriate.

*/s/ Justin S. Dunbar*
Justin S. Dunbar, Esq. (# 27699)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of April, 2026, a copy of the foregoing Memorandum of Law was sent via PACER and electronic mail to:

Samuel Elira, Esquire
Patricia Peterson, Esquire
5302 E. Court Drive
Upper Marlboro, Maryland 20774
Tel.: (301) 936-1418
sqelaw@gmail.com
ppetersoneliralaw@gmail.com
*Counsel for Plaintiff*

*/s/ Justin S. Dunbar*
Justin S. Dunbar, Esq. (# 27699)
