**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

_____
)
**YOSEPH SEYOUM,**                              )
)
     Plaintiff,                                )
)
     v.                                        )    Case No.: 25-3446-TDC
)
**CHARLES M. SIMS, et al.**                     )
)
     Defendants.                               )
_____)

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS CHARLES M. SIMS
AND O'HAGAN MEYER, PLLC'S MOTION FOR SUMMARY JUDGMENT</u>**

The plaintiff, **Yoseph Seyoum**, by and through undersigned counsel, Samuel Q.

Elira Sr. and **THE ELIRA LAW FIRM, LLC.**, pursuant to Fed.R.Civ.P. 56, hereby

opposes the defendants Charles M. Sims and O'Hagan Meyer, PLLC's, Motion for

Summary Judgment. In support thereof, the plaintiff states the following:

**<u>INTRODUCTION</u>**

The defendants have filed a Motion for Summary Judgment. In support of their

motion, the defendants submitted a "Statement of Undisputed Facts." In the said

statement, the defendants narrated that on the morning of the second day of trial, Mr.

Seyoum approached Mr. Sims as he was setting up for the day again demanding the

PowerPoint slides. In response, "Mr. Sims said words to the effect of telling Mr. Seyoum

to back away; Mr. Seyoum alleges that Sims stated, "I know what you're doing."

According to the Statement, "Mr. Seyoum alleges that Mr. Sims pointed at him and

stepped towards him. The Statement continued that "Later in the week of trial, Mr. Sims was standing in the lobby outside the courtroom with his client, Mr. Hoge, and several other members of the trial team, including Mr. Canter, Mr. Thomas and Ms. Wheeler" when "Mr. Seyoum approached, again demanding the PowerPoint; Mr. Sims again refused." Suddenly and for no reason, "Mr. Thomas stood between Sims and Seyoum and faced Mr. Seyoum with his arms crossed, until Mr. Seyoum stepped away." Nevertheless, Mr. Seyoum had previously filed an Amended Complaint. According to the Amended Complaint, the incident occurred during the trial between Crowley, Hoge & Fein, PC, and Mr. Seyoum. The defendants, Mr. Sims and his employer O'Hagan Meyer, PLLC, represented Crowley, Hoge & Fein. Mr. Sims was trial counsel for his employer, O'Hagan Meyer. According to the Amended Complaint, the two incidents occurred during the week of the trial, between July 22 and July 26, 2024. The Amended Complaint narrated the first incident beginning in paragraph 9, stating that, "During a break, Mr. Seyoum walked outside the courtroom. Mr. Sims was in the hallway. Mr. Seyoum asked Mr. Sims for a copy of the Power Point presentation presented in trial. Defendant Sims grew enraged, pointed his finger at Mr. Seyoum in an aggressive manner, walked toward Mr. Seyoum quickly and yelled 'I know what you are doing.'" Paragraph 9, Amended Complaint. The second incident was described in paragraph 12 of the Amended Complaint, in which Mr. Seyoum alleged that, "During a second break, Mr. Seyoum assumed Mr. Sims' anger had calmed. Mr. Seyoum asked Mr. Sims politely, at a safe distance, for a copy of the witness list offered by Mr. Smith in trial. In this instance, Mr. Sims lunged toward Mr. Seyoum causing one of Mr. Sims colleagues to [restrain] him."

In support of his opposition to the defendants' Motion for Summary Judgment, the plaintiff has submitted the following statement of material facts in genuine dispute and an affidavit that narrates the incidents involved in this case.

**STATEMENT OF MATERIAL FACTS IN GENUINE DISPUTE**

1.     On the morning of the second day of trial, before the judge appeared, the plaintiff asked the courtroom clerk for a copy of the PowerPoint presentation used by Mr. Sims during his opening statement the prior day.

2.     The clerk informed the plaintiff that Mr. Sims did not submit the presentation to the court and advised the plaintiff to request it from Mr. Sims directly.

3.     Following the clerk's recommendation, the plaintiff walked a few feet from the clerk's station to Mr. Sims's desk and . . . asked him for a copy of the PowerPoint presentation.

4.     Without any discussion, Mr. Sims became very agitated, began advancing toward the plaintiff in a menacing and threatening manner, and repeatedly stated, "I know what you are doing," as he closed distance on the plaintiff.

5.     Mr. Seyoum continued, "Startled and fearing for my safety, I immediately began walking backwards while telling Mr. Sims to calm down and stop his advance."

6.     Mr. Seyoum "was forced to walk backwards approximately ten feet from the plaintiff's desk toward the judge's bench to avoid being struck. Mr. Sims ceased advancing only after I had retreated and loudly called for him to stop."

7.     The distance Mr. Sims crossed to confront the plaintiff "spanned a significant portion of the well of the courtroom."

8.      A few days later, after Mr. Seyoum "had exhausted his witness list and believed Mr. Sims was blocking my witnesses from testifying, I approached him during a midday break (on the third or fourth trial day) to ask if he would consent to allowing witnesses to testify, believing court approval might follow if he consented."

9.      When Mr. Seyoum asked to speak with Mr. Sims, "Mr. Sims immediately turned, faced me, and began advancing toward me in a threatening manner, again causing me to retreat backwards to avoid confrontation."

10.     Mr. Sims's male assistant, Mr. Michael Thomas, "rushed forward and physically positioned himself between Mr. Sims and me, blocking Mr. Sims's advance."

11.     Mr. Sims attempted to maneuver around Mr. Thomas to continue advancing toward Mr. Seyoum, and in the process Mr. Sims pushed Mr. Thomas pushed into Mr. Seyoum while he maintained his physical restraint of Mr. Sims.

12.     Mr. Canter reached out and grabbed Mr. Sims back into their discussion huddle.

13.     Mr. Seyoum continued to walk backwards away from Mr. Sims and Mr. Thomas to avoid further confrontation.

14.     In both incidents, Mr. Sims intentionally advanced toward me in a menacing and threatening manner, closing distance rapidly and forcing me to retreat to avoid imminent, offensive physical contact.

15.     Mr. Seyoum was very concerned that Mr. Sims was going to injure him and, during the second incident, physical intervention was required by Mr. Thomas and Mr. Canter to prevent further advance and harm.

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a), "a party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Under this standard, summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; and Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Once (or if) a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings but rather must set forth specific facts showing that there is a genuine issue of material fact for trial. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003). The court should "view the evidence in the light most favorable to . . . the nonmovant [] and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." Dennis v Columbia Colleton Med. Ctr, Inc., 290 F.3d 639, 644-45 (4th Cir. 2002); see F.D.I.C. v. Cashion, 720 F.3d 169, 173 (4th Cir. 2013).

Under this standard, the evidence of the non-moving party is to be believed, and all justifiable inferences must be drawn in favor of the non-moving party. Anderson, 477 U.S. at 255. In other words, in determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 E3d at 213 (citing Bonds v. Leavitt, 629 E.3d 369, 380 (4th Cir. 2011)). Indeed, "|i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc, v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam)). Moreover, "|c]redibilitv determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury' functions, not those of a judge." Anderson, 477 U.S. at 255. That is, the court should "view the evidence in the light most favorable to . . . the nonmovant [] and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The trial court may not make credibility determinations on summary judgment. Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 569 (4th Cir. 2015); Mercantile Peninsula Bank v. French, 499 F.3d 345, 352 (4th Cir. 2007); Black & Decker Corp. v. United States, 436 F.3d 431, 442 (4th Cir. 2006); Dennis, 290 F.3d at 644-45. In the face of conflicting evidence raising disputes of material fact, such as competing

affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. See Anderson, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis, 249 F.3d at 265.

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

"In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury' could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 E2d 736, 738 (4th Cir. 1993) (quoting Anderson, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992). If a reasonable jury could

return a verdict for the non-movant, then a genuine factual dispute exists, and summary judgment is improper. Grp. Home on Gibson Island, LLC v. Gibson Island Corp., 144 F.4th 522, 531 (4th Cir. 2025).

A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. Anderson, 477 U.S. at 248-49. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. Id. at 248; Libertarian Party of Virginia v. Judd, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so onesided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

## ARGUMENT

The defendants make two broad arguments. First, they argue that there is no genuine dispute of material fact. Second, they argue that they are entitled to judgment as a matter of law.

### Defendant's Burden - Moving Party

Under Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the party seeking summary judgment bears the initial burden of demonstrating to the Court that there is no genuine issue of material fact and that it (the moving party) is entitled to judgment as a matter of law. Id. at 323. It is only after the movant has made this threshold demonstration that the burden shifts to the non-moving party to demonstrate that specific, material facts exist which give rise to a genuine issue. Id. at 324.

Genuine Issues

In this instance, the threshold issue is whether the plaintiffs have demonstrated that there is no genuine issue of material fact when their affidavits in support of such assertion directly and extensively contradict each other on almost every relevant issue calls on the court to make credibility decisions? The plaintiff believes that these internal factual inconsistencies in themselves are those genuine issues of material facts that preclude summary judgment. To examine these factual inconsistencies, the court should examine or consider Mr. Sims' state of mind from the first day of trial because it sets the stage for the two encounters that form the basis of the complaint in this case.

Mr. Sims' state of mind can be seen through two witnesses. The first witness is Mr. Sims himself, and the second witness is Mr. Thomas, a former associate of Mr. Sims. Mr. Sims's state of mind can be seen through his response to Mr. Seyoum's Interrogatory Number 4. Mr. Sims narrated that, "On the first day of trial, July 22, 2024, after Plaintiff gave his opening statement to the jury, Defendant Sims made his opening statement to the jury and in so doing, he used a PowerPoint presentation as a demonstrative exhibit. After the parties made their opening statements, Mr. Seyoum read most of the transcript from Rebecca Deucher's deposition to the jury, during which he paused repeatedly in theatrical display of emotions. He then called Mr. Hoge as a witness. During Plaintiff's examination of Mr. Hoge, he repeatedly turned and stared at Defendant Sims." Mr. Seyoum's conduct as viewed by Mr. Sims was sufficient for Mr. Sims to raise the issue with the court.

Nevertheless, "Plaintiff continued to engage in this sort of theatrics throughout the trial – staring at Defendant Sims while examining witnesses, continually pointing his

finger at the witnesses for which the Court repeatedly admonished him, and pausing repeatedly during examination of witnesses while appearing to cry or feigning emotional distress."

Mr. Sims' state of mind can also be seen through the affidavit of Mr. Michael Thomas, a former associate of Mr. Sims. In his Affidavit executed in support of the Motion for Summary Judgment, Mr. Thomas, in paragraph 6, "recall[ed] that Mr. Seyoum believed that Mr. Sims had been aggressive towards him at trial." In paragraph 7, Mr. Thomas "recall[ed] an instance during a court recess . . . where Mr. Seyoum approached Mr. Sims. . . .  Mr. Seyoum said something to Mr. Sims, and Mr. Sims responded by saying, 'I know what you are doing' more than once." Emphasis. Furthermore, in paragraph 8, Mr. Thomas narrated that "[d]uring the trial, when Mr, Seyoum was testifying on cross examination, Mr. Sims had deliberately provoked Mr. Seyoum in a line of questioning about Mr. Seyoum's domestic violence . . .  to undermine Mr. Seyoum's credibility. . . .  I recall Mr. Seyoum becoming agitated on the stand and Mr. Sims slightly raised his voice as he continued questioning." But these set the stage for what would happen the following morning. In response to Interrogatory Number 4, Mr. Sims described what happened the following morning.

> On the morning of the second day of the trial, Defendant Sims was sitting at defense counsel's table in the Courtroom preparing for that day's witnesses. Also present at defense counsel's table were Mr. Hoge, Mr. Canter, Ms. Wheeler, a paralegal employed by O'Hagan Meyer, and Mr. Thomas, an associate attorney employed by O'Hagan Meyer at the time. . . . Plaintiff came to defense counsel's table, stood over Defendant Sims and accused him of misrepresenting the facts in the PowerPoint deck Defendant Sims had used when presenting his opening statement to the jury. Plaintiff demanded that Defendant Sims provide him with a copy of the PowerPoint

that he had used in opening. Defendant responded that the PowerPoint accurately informed the jury of the facts that would be established at trial and that Plaintiff had made no objection to the PowerPoint at anytime during or immediately after Defendant Sims gave his opening statement to the jury. Accordingly, Defendant Sims stated that he would not provide Plaintiff with the PowerPoint slides. As Plaintiff walked away from the Defense table, Defendant got up from the table to retrieve documents from the banker's box behind him. Defendant's back was to Plaintiff's counsel table. Plaintiff again approached Defendant from behind and loudly demanded that Defendant Sims provide him with a copy of the PowerPoint presentation. Defendant turned and told Plaintiff to back away from him. . . . Plaintiff backed away while throwing his hands up and theatrically yelling 'Mr. Sims! Mr. Sims!' repeatedly Defendant did not respond to Plaintiff's theatrics, and took his seat at the defense counsel's table.

Mr. Sims' Response to Plaintiff's Interrogatory Number 4. Emphasis added.

The only witness to have observed this first encounter on the second trial date was Ms. Wheeler, a paralegal at the office of O'Hagan Meyer. In her affidavit in support in support of the Motion for Summary Judgment, Ms. Wheeler in paragraphs 4, 6, and 7, alleged that on July 23, 2024, while she and defendant Mr. Sims were setting up for the second day of trial, "Mr. Seyoum approached the table and asked Mr. Sims for a copy of the PowerPoint accompanying the opening statement the previous day. Mr. Sims declined." In paragraph 7, Ms. Wheeler stated that, "Mr. Seyoum appeared to be upset, and he turned and walked back to his table."

In paragraph 8, however, "thereafter, Mr. Sims stood up to continue setting up his things for the day. His back was to Mr. Seyoum." In paragraph 9, "Mr. Seyoum approached Mr. Sims again and demanded a copy of the PowerPoint presentation again. Mr. Sims turned around to face him." In paragraph 10, "Mr. Seyoum started running

backwards and throwing his hands up while theatrically yelling, 'Mr. Sims! Mr. Sims!' repeatedly.

For Mr. Thomas, he stated in paragraph 7 that he "recall[ed] an instance during a court recess . . . where Mr. Seyoum approached Mr. Sims. . . . Mr. Seyoum said something to Mr. Sims, and Mr. Sims responded by saying, 'I know what you are doing' more than once." In paragraph 8, Mr. Thomas stated that "[d]uring the trial, when Mr, Seyoum was testifying on cross examination, Mr. Sims had deliberately provoked Mr. Seyoum in a line of questioning about Mr. Seyoum's domestic violence . . . to undermine Mr. Seyoum's credibility. . . . I recall Mr. Seyoum becoming agitated on the stand and Mr. Sims slightly raised his voice as he continued questioning."

According to the defendant Mr. Sims, "on either July 24 or 25, 2024, after the trial had concluded for the day, Defendant Sims was conversing about the case with his client, Mr. Hoge, and with Mr. Canter, Ms. Wheeler, and Mr. Thomas. . . . Plaintiff approached Defendant from behind and, once again, demanded a copy of the PowerPoint. Plaintiff refused to drop the matter, was clearly agitated, and continued to badger Defendant Sims to provide him with the PowerPoint. <u>At this time, Mr. Thomas placed himself between Defendant and Plaintiff and stood facing Plaintiff with his arms crossed</u>. Mr. Thomas then turned towards Defendant Sims, who resumed the conversation with other noted counsel. Plaintiff walked away. Emphasis added.

The other witness who observed the second incident was Ms. Wheeler. On July 24, or July 25, 2024, Ms. Wheeler was outside the courtroom in the courthouse lobby and in a "<u>huddle</u> conversing with Mr. Sims, Christopher Hoge, Bradley Canter, Michael

Thomas" when Mr. Seyoum approached the group and "again demanded that Mr. Sims provide him a copy of the PowerPoint presentation. Mr. Sims refused again." Paragraph 15. In paragraph 16, "Mr. Seyoum was unhappy with Mr. Sims' refusal and continued to badger Mr. Sims. Mr. Sims stepped out of the group to speak to Mr. Seyoum; he was standing a distance of at least two to three people away." In paragraph 17, "Mr. Sims once again refused to provide a copy of the PowerPoint. Mr. Sims spoke firmly but did not threaten Ms. Seyoum." In paragraph 18, Ms. Wheeler stated that "<u>Michael Thomas placed himself between Mr. Sims and Mr. Seyoum</u>." Emphasis added.

In paragraph 9 of his affidavit, Mr. Thomas for his part recalled "an occasion in the hallway . . . when Mr. Seyoum approached Mr. Sims and demanded something from him." In paragraph 10, Mr. Thomas recalled that "Mr. Sims refused to back down on the disagreement; <u>both he and Mr. Seyoum were emotional</u>." In paragraph 11, Mr. Thomas "<u>stood between them and faced Mr. Seyoum with my arms crossed until both he and Mr. Sims settled down</u>." Emphasis added. In paragraph 12, Mr. Thomas stated that he "did not restrain Mr. Sims or touch him. I also did not touch Mr. Seyoum. The two settled down quickly and moved to opposite ends of the hallway."

In his affidavit, Mr. Canter stated in paragraph 10 that "during one of the breaks during the trial . . . he was standing in a circle outside the courtroom with Mr. Sims, Mr. Hoge, and Mr. Sims' associate, Michael Thomas." "Mr. Seyoum approached and demanded the PowerPoint presentation again. Paragraph 11. In paragraph 12, "Mr. Sims said no, and words to the effect of 'get away from us,' more sternly than he had previously." More importantly, Mr. Canter stated in paragraph 13 that "<u>Mr. Thomas put</u>

his arm around Mr. Sims to draw him back into the circle and redirect any focus away from Mr. Seyoum." Emphasis added.

Mr. Hoge, for his part, in paragraph 12 stated that "at some point during the trial of that case, I recall that Mr. Seyoum got into Mr. Sims' face demanding a document of some kind." In paragraph 13, "Mr. Sims responded that he was not entitled to it and said words to the effect of 'get out of my face.'" Mr. Seyoum, in response, "said something to the effect of 'look everyone, Mr. Sims is assaulting me.'" Paragraph 14. It is not clear from this affidavit whether Mr. Hoge was referring to the incident inside the courtroom or in the lobby of the courthouse. But the affidavit makes clear that if Mr. Hoge observed anything at all, he only observed one of the two encounters between Mr. Sims and Mr. Seyoum and not both. There is also a good argument that Mr. Hoge's affidavit does not satisfy the requirements of Rule 56(c)(4), for failing to show that Mr. Hoge had personal knowledge of the facts in the affidavit and that his affidavit sets out facts that would be admissible in evidence.

It is clear that the affidavits of the defendants' witnesses are almost entirely in conflict with one another. When the defendants' own evidence is contradictory, it is difficult to see how the defendants can show that no factual dispute exists. These internal inconsistencies directly undermine the defendant's burden of showing that there be "no genuine dispute as to any material fact."

## Judgment as a Matter of Law

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment. Assuming there is no genuine issue, the defendants

argue that they are entitled to judgment as a matter of law. The defendants argue that the plaintiff cannot maintain an action for battery or an action for assault.

Assault

The defendants also argue that based on the undisputed facts, no reasonable fact-finder could conclude that Defendant Sims threatened Plaintiff. They argue that "[d]rawing all reasonable inferences in Plaintiff's favor, no reasonable fact finder could grant him relief for assault as a matter of law. No juror could reasonably conclude from the undisputed facts that Defendant Sims threatened Plaintiff, and Plaintiff's assault claim must therefore fail."

According to the plaintiffs, "[f]or tort liability for assault to lie in Maryland, the plaintiff must prove 1) that they were threatened by a defendant who possessed the apparent present ability to carry out that threat, and 2) the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm." Citing Lee v. Pfeifer, 916 F. Supp. 501, 505-06 (D. Md. 1996). They further argue that "Whether the defendant's behavior is threatening is viewed from the perspective of a reasonable person, not the plaintiff's subjective interpretation." "Viewed in the most favorable light to Plaintiff, for the purpose of a motion for summary judgment, all Plaintiff has alleged is that Mr. Sims made the statement 'I know what you are doing,' loudly," which Mr. Seyoum "subjectively interpreted as threatening and aggressive." They continued that, "[t]he words 'I know what you are doing' are not inherently threatening and could not reasonably be viewed as implying a threat. Nor would a finger point from a distance across a table or with another person in between be so."

The defendants argue that "Plaintiff has alleged is that Mr. Sims made the statement 'I know what you are doing,' loudly." This implies that Mr. Seyoum was the only person who heard defendant Mr. Sims make this statement. But Mr. Thomas, in his affidavit in support of the defendants' Motion for Summary Judgment, also stated that he heard Mr. Sims make the statement to Mr. Seyoum. Para 7. This expressly corroborates Mr. Seyoum's statement and undermines the defendant's argument.

The defendants also argue that "none of Mr. Sims' actions or gestures accompanying this alleged statement were sufficient to elevate that statement to a threat. Mr. Seyoum characterizes this interaction as aggressive. Even if Mr. Seyoum did subjectively perceive Mr. Sims stepping forward as 'aggressively approaching' or his tone as 'angry, unhinged, irrational, and inconsolable,' the first element of the tort of assault is not the plaintiff's subjective apprehension of whether the defendant's conduct was threatening, it is whether that conduct was objectively a threat to cause bodily harm. Here, no reasonable person would have interpreted Mr. Sims' alleged conduct as a threat." The defendants continued that "Saying 'I know what you are doing'— unaccompanied by a raised fist or other act demonstrating an intent to cause bodily harm—does not constitute an objectively reasonable threat of imminent bodily harm under Maryland law. They further argue that "Critically, to prevail on the first element of the tort of assault, Plaintiff is obligated to prove that Defendant "engaged in some threatening behavior."

In both encounters, certain issues stand out. First, while Mr. Sims denies saying anything to Mr. Seyoum in the first encounter, the evidence suggests otherwise. First, Mr.

Sims states that Mr. Sims repeatedly said, "I know what you are doing." Under the summary judgment framework, the court must believe Mr. Seyoum. Nevertheless, Mr. Thomas, a former employee of Mr. Sims, also corroborates that Mr. Sims made this statement. Second, the relationship between the two men began to deteriorate on the first day of trial. Mr. Seyoum narrated this in his affidavit. Mr. Sims himself seemed to agree in his own narrative. Mr. Thomas further corroborates this fact.

If the court must construe or view all facts in the record in the light most favorable to Mr. Seyoum, the must conclude that after the first trial date, the relationship between Mr. Seyoum and Mr. Sims was such that any encounter the following morning would not be cordial, at a minimum. The court should also draw the inference that once Mr. Seyoum made the initial request and Mr. Sims refused, the second repeated request would likely draw a more aggressive response from Mr. Sims.

For the second incident, certain facts also stand out. While Mr. Sims denies making any threatening advances on Mr. Seyoum and argues strenuously that he did not take any action or engage in any conduct a reasonable personable person would consider threatening, these assertions are directly contradicted by their own evidence. For the second incident in the lobby of the courthouse, all parties and witnesses agree that Mr. Seyoum approached Mr. Sims again while Mr. Sims was in conversation with his client and other attorneys. All parties also agree that Mr. Seyoum requested something of Mr. Sims and that Mr. Sims refused.

Some witnesses stated that Mr. Sims left the group to speak to Mr. Seyoum. But two witnesses stated more than that. Mr. Seyoum stated that Mr. Sims advanced towards

him in a threatening manner. Mr. Thomas testified to having to step between Mr. Sims and Mr. Seyoum. Mr. Canter testified to having to physically draw Mr. Sims back into the "huddled" group. Even though the court must at this point believe Mr. Seyoum's version of this evidence (affidavit and Amended Complaint), the conduct of Mr. Thomas and Mr. Canter corroborate Mr. Seyoum's evidence that Mr. Sims advanced towards in a manner that would make a reasonable believe that he was in danger of being struck or harmed. This is the only conclusion unless the plaintiffs would want this court to believe that both Mr. Thomas and Mr. Canter are not truthful or that both lawyers acted unreasonably under the circumstance. If Mr. Seyoum, Mr. Thomas, and Mr. Canter felt the same need to take some physical precaution, Mr. Seyoum's belief that Mr. Sims would harm him was entirely reasonable.

The defendants finally argue that "[t]here is simply no evidence that Mr. Sims, a lawyer in a courtroom surrounded by courtroom staff and Sheriff's deputies, engaged in conduct which could objectively be considered threatening, and there is no evidence at all that Mr. Sims made any threats of physical harm toward Mr. Seyoum under the circumstances the Plaintiff alleges. No reasonable person would deem his behavior threatening under the surrounding circumstances. And even if Plaintiff perceived Mr. Sims speaking sharply to him as threatening, no objective, reasonable person would have found Mr. Sims' conduct to be a "present threat" that Mr. Sims would imminently act upon by committing a battery." They finally argue, among others, that "Where, as here, the alleged conduct occurred in a courtroom or courthouse setting, in view of court personnel and other counsel, and involved non-threatening language, no clinched fists, no

weapon, no physical contact, and no pursuit, no reasonable jury could conclude that Defendant Sims committed an assault. Accordingly, Defendants are entitled to judgment as a matter of law."

This line of argument has no place in summary judgment. First, Mr. Sims' profession is irrelevant to both summary judgment and the torts of assault and battery. Second, the location of the incident is not relevant. Third, the defendants have not submitted any affidavits of any "court personnel." Fourth, "other counsel" were in the courtroom and court premises as adversaries of Mr. Seyoum in one way or another. Fifth and most importantly, this line of argument directly supports the plaintiff's argument that the defendants' Motion for Summary is inappropriately premised on the perceived credibility of the defendants and their witnesses, not because summary judgment is appropriate.

**Non-Moving Party**

Assuming, *arguendo*, that the defendants have demonstrated that there are no genuine issues of material fact, the burden shifts to the plaintiff to demonstrate that specific, material facts exist which give rise to a genuine issue. Celotex Corp., 477 U.S. at 324. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. Celotex Corp., 477 U.S. at 322. See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

To do this, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Having done so, in determining whether a genuine issue of material fact exists, the court must construe or view all the facts in the record and inferences from those facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Glynn, 710 E3d at 213 (citing Bonds v. Leavitt, 629 E.3d 369, 380 (4th Cir. 2011)). Under this standard, the evidence of the non-moving party is to be believed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Mr. Seyoum has filed an affidavit in support of his opposition to the Motion for Summary Judgment. In his affidavit, together with the Amended Complaint, Mr. Seyoum makes out every element of the tort of assault. For the purpose of summary judgment, Mr. Seyoum's evidence is to be believed. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. Also, the court must construe or view all the facts in the record and inferences from those facts in the light most favorable to the non-moving party. See Anderson, 477 U.S. at 255. Glynn, 710 E3d at 213.

The court must believe Mr. Seyoum's version of the events of the first encounter. Also, if the court must construe or view all facts in the record in the light most favorable to Mr. Seyoum, the Court must conclude that after the first trial date, the relationship between Mr. Seyoum and Mr. Sims was such that any encounter the following morning would not be cordial, at a minimum. The court should also draw the inference that once Mr. Seyoum made the initial request and Mr. Sims refused, the second repeated request would likely draw a more aggressive response from Mr. Sims. The court must believe

that Mr. Sims advanced towards Mr. Seyoum in a manner that would cause Mr. Seyoum to believe that Mr. Sims would harm or injure him.

For the second incident, certain facts also stand out. While Mr. Sims denies making any threatening advances on Mr. Seyoum and argues strenuously that he did not take any action or engage in any conduct a reasonable person would consider threatening, these assertions are directly contradicted by the defendants' own evidence. For the second incident in the lobby of the courthouse, all parties and witnesses agree that Mr. Seyoum approached Mr. Sims again while Mr. Sims was in conversation with his client and other attorneys. All parties also agree that Mr. Seyoum requested something of Mr. Sims and that Mr. Sims refused.

Some witnesses stated that Mr. Sims left the group to speak to Mr. Seyoum. But two witnesses stated more than that. Mr. Seyoum stated that Mr. Sims advanced towards him in a threatening manner. Mr. Thomas testified to having to step between Mr. Sims and Mr. Seyoum. Mr. Canter testified to having to physically draw Mr. Sims back into the "huddled" group. Even though the court must at this point believe Mr. Seyoum's version of this evidence (affidavit and Amended Complaint), the conduct of Mr. Thomas and Mr. Canter corroborate Mr. Seyoum's evidence that Mr. Sims advanced towards in a manner that would make a reasonable believe that he was in danger of being struck or harmed. The court must infer that Mr. Sims advanced towards Mr. Seyoum in an unlawfully threatening manner. This is the only conclusion to reach unless the defendants would want this court to believe that both Mr. Thomas and Mr. Canter are not truthful or that both lawyers acted unreasonably under the circumstance. Something caused both

men to step between Mr. Sims and Mr. Seyoum. And what is that something? If Mr. Seyoum, Mr. Thomas, and Mr. Canter felt the same need to take some physical precaution, Mr. Seyoum's belief that Mr. Sims would harm him was entirely reasonable. If the court must view the response of Mr. Thomas and Mr. Seyoum in the light most favorable to Mr. Sims, summary judgment is inappropriate for assault.

The defendant also argue that the tort of battery could not survive summary judgment. At this juncture, the court must believe Mr. Seyoum's evidence. The essence of the tort of battery is a harmful or offensive touching. Mr. Seyoum alleged in his affidavit that while Mr. Thomas was trying to prevent Mr. Sims from reach him, Mr. Sims "attempted to maneuver around Mr. Thomas to continue advancing toward Mr. Seyoum, and in the process Mr. Sims pushed Mr. Thomas who pushed into Mr. Seyoum while he, Mr. Thomas, maintained his physical restraint of Mr. Sims.

## CONCLUSION

By their own affidavits, the defendants failed to demonstrate that there is no issue of material fact in genuine dispute. The defendants also failed to show that they are entitled to judgment as a matter of law on the claims of assault and battery. The plaintiff, for his part, has demonstrated by this Amended Complaint and affidavit, that there are numerous unresolved material facts in genuine dispute between the parties. Finally, the responses of Mr. Canter and Mr. Thomas demonstrate that Mr. Seyoum's fear of injury or harm was reasonable.

WHEREFORE, the plaintiff respectfully requests that the Court deny the defendants' Motion for Summary Judgment.

Respectfully submitted,

**THE ELIRA LAW FIRM, LLC**

/s/ Samuel Q. Elira Sr.,
Samuel Q. Elira Sr., Esquire
Client Protection Fund No.: 22164
5302 East Court Drive
Upper Marlboro, MD 20772
samelira@eliralawfirm.com
(301) 936-1418 (office)
(301) 218-9406 (fax)
(410) 934-4926 (cell)

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May 2026 a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. A copy of the foregoing will also be delivered by email to the following:

Justin S. Dunbar, Esquire (#27699)
**NILES, BARTON & WILMER, LLP**
111 S. Calvert Street
Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
Counsel for Defendants

/s/ Samuel Q. Elira Sr.,
Samuel Q. Elira Sr., Esquire