Affidavit of Yoseph Seyoum

STATE OF __Virginia__

COUNTY OF __Hampton__

I, Yoseph Seyoum, being duly sworn, depose and state under penalty of perjury as follows:

**Identity and purpose:**

1. I submit this Affidavit in support of my claims for assault and battery arising from the conduct of opposing counsel, Mr. Sims, during my civil jury trial, and to document the intimidation and threatening behavior directed at me as a pro se litigant during trial proceedings.

**First Incident: Assault Inside the Courtroom (Second Day of Trial, Morning)**

2. On the morning of the second day of trial, before the judge appeared, I asked the courtroom clerk for a copy of the PowerPoint presentation used by Mr. Sims during his opening statement the prior day. The clerk informed me it had not been submitted to the court and advised me to request it from Mr. Sims directly.

3. Following the clerk's recommendation, I walked a few feet from the clerk's station to Mr. Sims's desk and, in a polite, normal tone, asked him for a copy of the PowerPoint presentation. Without any discussion, Mr. Sims became very agitated, began advancing toward me in a menacing and threatening manner, and stated, "I know what you are doing," repeatedly, as he closed distance on me.

4. Startled and fearing for my safety, I immediately began walking backwards while telling Mr. Sims to calm down and stop his advance. I was forced to walk backwards approximately ten feet from the plaintiff's desk toward the judge's bench to avoid being struck. Mr. Sims ceased advancing only after I had retreated and loudly called for him to stop, which drew the attention of courtroom personnel present. I immediately alerted everyone who was in the court by stating " You saw what he did. You saw what he did" repeatedly completely shocked and intimidated by Mr. Sims aggressive behavior.

5. The courtroom clerks, other court staff and Mr. Sims client and assistants were present and witnessed the incident. I did not raise my voice initially when asking for a copy of the Power Point Presentation, make physical contact, or threaten Mr. Sims. After I called attention to what had occurred, I withdrew and did not

1

escalate the situation. The distance Mr. Sims crossed to confront me spanned a significant portion of the well of the courtroom. I did not need to approach him for any physical exchange; he chose to advance across that distance toward me.

6. The incident left me fearful, embarrassed, confused and humiliated, and it disrupted my concentration and ability to prepare during the ongoing multi-day trial. I spent the next few days calling my advisors and informing them of what happened to me in court. It preoccupied my mind taking away my preparation time.

**Second Incident: Assault Outside the Courtroom (Mid-Trial Break)**

7. After I had exhausted my witness list and believed Mr. Sims was blocking my witnesses from testifying, I approached him during a midday break (on the third or fourth trial day) to ask if he would consent to allowing witnesses to testify, believing court approval might follow if he consented.

8. When I asked to speak with him, Mr. Sims immediately turned, faced me, and began advancing toward me in a threatening manner, again causing me to retreat backwards to avoid confrontation. This occurred in front of his client, his assistants, members of the public, and members of the jury.

9. Mr. Sims's male assistant, Michael Thomas, who noticed My. Sims aggressive advance towards me, rushed forward and physically positioned himself between Mr. Sims and me, blocking Mr. Sims's advance. Mr. Sims attempted to maneuver around Mr. Thomas to continue advancing toward me, and in the process, Mr. Thomas was pushed into me while maintaining his restraint of Mr. Sims.

10. I continued to walk backwards to avoid confrontation. Mr. Thomas did not restrain me; he restrained Mr. Sims, who was advancing toward me. This incident occurred in the presence of witnesses, jurors and members of the public.

11. In both incidents, Mr. Sims intentionally advanced toward me in a menacing and threatening manner, closing distance rapidly and forcing me to retreat to avoid imminent, offensive physical contact. I was very concerned that he was going to hurt me and, during the second incident, physical intervention was required by his assistant to prevent further advance and harm.

12. Both incidents were witnessed by court personnel and others present. Courthouse security camera footage will corroborate that in both incidents I was walking backwards to avoid confrontation while Mr. Sims advanced toward me, and that

Mr. Thomas physically intervened during the second incident to restrain Mr. Sims's advance.

13. My request for a copy of the PowerPoint presentation was made politely and in a normal tone, and I understood I was entitled to seek it as relevant information used in the opening statement. This request was not harassment and was a proper effort to obtain relevant evidence.

14. Non-aggression and de-escalation: At no time did I raise my voice in a threatening manner, make physical contact, or threaten Mr. Sims. In both incidents, I retreated and verbally asked Mr. Sims to calm down and stop. I called attention to the conduct and then withdrew, avoiding escalation.

15. Mr. Sims's conduct caused me fear, humiliation, and emotional distress, interfered with my concentration, and disrupted my preparation and trial strategy during the remaining trial days. The incidents triggered physical symptoms and required me to spend time addressing the situation rather than preparing, resulting in lost preparation time.

16. Based on the course of trial, I believe Mr. Sims's conduct was not a spontaneous reaction to a single request or discussion but arose from accumulated frustration over several trial days as my case progressed on multiple issues. His actions functioned as intimidation by an officer of the court directed at a pro se litigant during ongoing proceedings, intended to unnerve me and impede my effective presentation.

17. Furthermore, during the trial when it was Mr. Sims' turn to cross-examine me, I testified in the court and informed the jury that Mr. Sims assaulted me in the court room. Surprisingly, Mr. Sims did not correct me, did not contradict me, did not call me a liar, did not ask me follow-up questions and clarify to the court and jury members about the incident. He did not ask me any follow up questions nor challenge my claim of assault. Surprisingly, right after I confronted him about the assault in court, he immediately stopped his cross examination despite my insistence urging him to ask me more questions.

**Conclusion**

18. Mr. Sims assaulted me twice during my trial—first inside the courtroom when he advanced on me after my request for a copy of his PowerPoint, and second outside the courtroom during a break when he again advanced and had to be physically restrained by his assistant. In both instances, I reasonably feared imminent harmful or offensive contact, retreated to avoid being struck, and did not escalate the encounters. These incidents were witnessed and are corroborated by security footage.

3

19. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this _____27th_____day of May, 2026 **at** _Silver Spring, MD_.

*Yoseph Seyoum*

Yoseph Seyoum, Affiant
City of Hampton, Commonwealth of Virginia                    2026
SWORN AND SUBSCRIBED before me this _27th_ day of May, 2027. DW
_Dequan Winborne_    Dequan Winborne, Electronic Notary Public
Notary Public
My Commission Expires: 06/30/2029



|  | Dequan Winborne |
| --- | --- |
|  | REGISTRATION NUMBER |
|  | 7940580 |
|  | COMMISSION EXPIRES |
|  | June 30, 2029 |

Notarized remotely online using communication technology via Proof.

4