IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| YOSEPH SEYOUM, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 25-3446-TDC |
| CHARLES M. SIMS, et al., | * | |
| Defendants. | * | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY, TO WITHDRAW OR AMEND ANY DEEMED ADMISSIONS, AND RESPONSE TO DEFENDANTS' ARGUMENT THAT THE BATTERY CLAIM SHOULD BE DISMISSED**

**TO THE HONORABLE COURT:**

Plaintiff Yoseph Seyoum respectfully moves for leave to file this sur-reply and supplemental response, moves under Federal Rule of Civil Procedure 36(b) to withdraw or amend any deemed admissions arising from Defendants' Requests for Admission, and requests that the Court deny Defendants' Motion for Summary Judgment as to assault and battery or, at minimum, defer ruling and reopen limited discovery under Federal Rule of Civil Procedure 56(d).

This filing is necessary because Defendants' Reply raises and relies on a purported Rule 36 deemed-admission argument to contend that Plaintiff admitted there was no battery. Plaintiff has never knowingly, intentionally, or factually admitted that no battery occurred. Battery occurred. Plaintiff's sworn position is that during the second incident Mr. Sims aggressively advanced toward Plaintiff; Mr. Thomas moved between Mr. Sims and Plaintiff to block or restrain the advance; Mr. Canter also pulled or redirected Mr. Sims; and, in that physical intervention, Mr. Thomas was pushed or forced into Plaintiff, causing unwanted physical contact and forcing Plaintiff backward against his will.

Plaintiff does not ask the Court to accept his account as finally proven at this stage. Plaintiff asks only that the Court allow the factfinder to decide the disputed facts after limited discovery. The issue is not whether Defendants and their witnesses deny battery. The issue is whether a reasonable jury could credit Plaintiff's testimony, view the surrounding circumstances, consider the admitted need for physical intervention, and find that Mr. Sims caused an unwanted offensive contact. The answer is yes.

## RELEVANT BACKGROUND

This case arises from two incidents during the July 22-26, 2024 jury trial in the Circuit Court for Montgomery County, Maryland. Plaintiff's Opposition to Defendants' Motion for Summary Judgment identified disputed facts concerning both incidents. Plaintiff alleged that, on the morning of the second day of trial, he requested the PowerPoint presentation that Mr. Sims had shown during opening statement, and Mr. Sims became agitated, advanced toward Plaintiff, and caused Plaintiff to retreat. See Pl.'s Ex. B at 3-4.

Plaintiff further alleged that, during the second incident a few days later, Mr. Sims immediately turned, faced Plaintiff, and began advancing toward him in a threatening manner; Mr. Thomas rushed forward and physically positioned himself between Mr. Sims and Plaintiff; Mr. Sims attempted to maneuver around Mr. Thomas; Mr. Thomas was pushed into Plaintiff while restraining or blocking Mr. Sims; Mr. Canter reached out and drew Mr. Sims back; and Plaintiff continued moving backward to avoid further confrontation. See Pl.'s Ex. B at 4.

Defendants' Reply argues that Plaintiff failed to establish battery because Defendants deny an offensive touching and because, according to Defendants, Requests for Admission Nos. 1-3 should be deemed admitted. Defendants quote the RFAs as requesting admissions that Mr. Sims did not make physical contact with Plaintiff, did not make contact with objects immediately connected to Plaintiff, and did not cause anything to make physical contact with Plaintiff. See Pl.'s Ex. C at 4-5; Pl.'s Ex. D.

Defendants also rely on the fact that the RFAs were served on March 19, 2026, through Plaintiff's former counsel. See Pl.'s Exs. E-F. Plaintiff does not dispute that the documents appear to have been served on counsel. Plaintiff does dispute that he personally, knowingly, or factually admitted that no battery occurred. Plaintiff respectfully submits that any deemed admission resulted from prior counsel's failure to timely respond, not from Plaintiff's acceptance of the truth of the requests.

The security footage and discovery issues are also central. Defendants' Reply acknowledges that Plaintiff sought to obtain alleged security camera footage and requested depositions of Mr. Sims, Mr. Thomas, and Mr. Hoge. See Pl.'s Ex. C at 2 n.1. The attached Sheriff email and related state-court records show that Plaintiff pursued preservation and production of security footage. See Pl.'s Exs. G-H. Limited discovery remains necessary because the central witnesses have not been tested by deposition in this case.

## ARGUMENT

### I. Leave to file a sur-reply is appropriate because Defendants rely on a Rule 36 deemed-admission argument and a "changed story" argument in their Reply.

Under District of Maryland Local Rule 105.2(a), a sur-reply may not be filed without leave of Court. Leave is warranted where a reply brief raises new matters or where a party should be permitted to respond to arguments first meaningfully raised in reply. Defendants' Reply places significant weight on the purported deemed admissions and argues that Plaintiff changed his story to survive summary judgment. See Pl.'s Ex. C at 4-5. Plaintiff respectfully seeks leave to respond to those arguments so the battery claim is decided on the merits rather than by a procedural default caused by prior counsel.

Plaintiff's response is narrow and case-dispositive only in the proper sense: it addresses whether Plaintiff has admitted away his battery claim and whether the battery claim must be dismissed before a jury can evaluate the evidence. Because Defendants' Reply asks the Court to treat the no-battery proposition as conclusively established, fairness requires leave for Plaintiff to explain why that result would be unjust and contrary to Rule 36(b).

### II. Plaintiff does not admit that no battery occurred; any deemed admissions should be withdrawn or amended under Rule 36(b).

Federal Rule of Civil Procedure 36(a)(3) provides that a request for admission may be deemed admitted if no timely answer or objection is served. But Rule 36(b) also provides that a matter admitted is conclusively established only unless the Court permits withdrawal or amendment. The Court may permit withdrawal or amendment if it would promote the presentation of the merits and if the Court is not persuaded that withdrawal or amendment would prejudice the requesting party in maintaining or defending the action on the merits. Fed. R. Civ. P. 36(b).

Both Rule 36(b) factors favor Plaintiff. First, withdrawal or amendment promotes presentation of the merits because RFAs Nos. 1-3 go directly to the heart of the battery claim. If the purported admissions remain in place, they would effectively eliminate Plaintiff's ability to present battery to the jury, even though Plaintiff swears that unwanted contact occurred and that Mr. Sims caused that contact through the physical intervention of Mr. Thomas and Mr. Canter. Rule 36 should narrow undisputed issues, not dispose of a central disputed claim by accident or by prior counsel's nonresponse.

Second, withdrawal or amendment would not unfairly prejudice Defendants in maintaining their defense on the merits. Defendants have known since the complaint and amended complaint that Plaintiff alleges assault and battery arising from the July 2024 trial incidents. Defendants obtained affidavits from their aligned witnesses, relied on those affidavits in summary judgment briefing, and specifically addressed the alleged contact involving Mr. Thomas. Requiring Defendants to defend the battery claim on the evidence is not legal prejudice. At most, it removes a tactical advantage created by an unanswered discovery request.

Plaintiff therefore requests that the Court withdraw or amend any deemed admissions arising from RFAs Nos. 1-3 and deem the following amended responses served:

| Request | Proposed Amended Response |
|---|---|
| RFA No. 1: Admit that Charles Sims did not make physical contact with Plaintiff during the July 22-26, 2024 trial. | **Denied.** Plaintiff does not admit that no battery occurred. Plaintiff contends that Mr. Sims caused unwanted physical contact with Plaintiff during the second incident. |
| RFA No. 2: Admit that Charles Sims did not make physical contact with any objects immediately connected with Plaintiff during the July 22-26, 2024 trial. | **Denied.** Plaintiff denies any admission that would eliminate the battery claim or deny offensive contact caused by Mr. Sims. |
| RFA No. 3: Admit that Charles Sims did not cause anything to make physical contact with Plaintiff or objects connected to Plaintiff during the July 22-26, 2024 trial. | **Denied.** Plaintiff contends that Mr. Sims caused Mr. Thomas to be pushed or forced into Plaintiff, causing unwanted physical contact and forcing Plaintiff backward. |

### III. The battery claim is supported by Plaintiff's testimony and Maryland law permits battery through indirect contact caused by a defendant.

Maryland law recognizes that battery is an intentional harmful or offensive contact without consent. See Nelson v. Carroll, 355 Md. 593, 600 (1999); White Pine Ins. Co. v. Taylor, 233 Md. App. 479, 504 (2017). Importantly, battery is not limited to a defendant placing his own hand directly on the plaintiff. The Maryland Supreme Court has recognized that a battery may occur through a defendant's direct or indirect contact with the plaintiff. Nelson, 355 Md. at 600.

That principle matters here. Plaintiff's claim is not limited to an allegation that Mr. Sims personally touched Plaintiff with his own hands. Plaintiff's claim is that Mr. Sims aggressively advanced toward Plaintiff; Mr. Thomas physically intervened to stop or block Mr. Sims; Mr. Canter also pulled or redirected Mr. Sims; and, in that physical restraint and redirection, Mr. Sims caused Mr. Thomas to be pushed or forced into Plaintiff. If a jury credits Plaintiff's testimony, the contact was unwanted, offensive, and caused by Mr. Sims's affirmative conduct.

Defendants' evidence does not eliminate the dispute. Mr. Thomas may deny that he touched Plaintiff. Plaintiff swears that contact occurred. Defendants' witnesses acknowledge, at minimum, that Mr. Thomas positioned himself between Mr. Sims and Plaintiff and that Mr. Canter became involved in redirecting Mr. Sims. See Pl.'s Ex. B at 4; Pl.'s Ex. C at 4-5. Those facts make Plaintiff's account plausible and present a classic jury question: whether Plaintiff or Mr. Thomas is telling the truth about the unwanted contact and whether Mr. Sims caused it.

At summary judgment, the Court does not weigh credibility or decide whose testimony is more believable. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986). The evidence of the nonmovant must be believed and all justifiable inferences drawn in his favor. Id.; McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014). A jury could reasonably infer from the need for physical intervention by two individuals that Mr. Sims was advancing in a manner likely to cause contact and that Mr. Thomas could have been pushed or forced into Plaintiff during that intervention.

### IV. Plaintiff's clarification of the battery mechanism is not a sham; it is the disputed physical-contact issue Defendants are trying to remove from the jury.

Defendants characterize Plaintiff's battery allegation as a changed story. Plaintiff respectfully disagrees. Plaintiff has consistently alleged that Mr. Sims assaulted him during trial, that the second incident required intervention by Mr. Sims's colleagues, and that Plaintiff retreated to avoid contact. The present explanation identifies the mechanism of the battery: Mr. Thomas was pushed or forced into Plaintiff while trying to stop or block Mr. Sims's aggressive advance. That explanation is based on Plaintiff's personal experience as the person touched and forced backward.

Even if the Court views Defendants' affidavits as contradicting Plaintiff's account, that contradiction does not justify summary judgment. It creates the very factual dispute a jury is meant to resolve. If Mr. Thomas is telling the truth, Defendants can present that testimony. If Plaintiff is telling the truth, Plaintiff should be allowed to present his testimony. If security footage or another witness later confirms Plaintiff's account, Plaintiff would be severely prejudiced if the battery claim were dismissed now.

### V. Summary judgment should be denied or deferred under Rule 56(d) because Plaintiff needs limited discovery to present facts essential to his opposition.

Federal Rule of Civil Procedure 56(d) allows the Court to defer ruling, deny the motion, allow time for discovery, or issue another appropriate order if the nonmovant shows by affidavit or declaration that, for specified reasons, he cannot present facts essential to justify his opposition. Plaintiff submits the attached declaration in support of this request. See Pl.'s Ex. A.

The needed discovery is limited and directly tied to the assault and battery claims: depositions of Mr. Sims, Mr. Thomas, Mr. Canter, Ms. Wheeler, Mr. Hoge, and any courthouse or Sheriff personnel with knowledge of courtroom and hallway security footage, retention, deletion, backup

systems, or logs. Plaintiff also seeks discovery into whether any security footage, still images, metadata, backup files, incident logs, or retention records can be recovered or authenticated.

This discovery is essential because Defendants ask the Court to decide battery based on affidavits from witnesses aligned with Defendants and on deemed admissions allegedly caused by former counsel's failure to respond. Plaintiff has not had a fair opportunity to depose those witnesses, test their accounts, ask why physical intervention occurred, identify body positioning, or explore whether Mr. Thomas was pushed or forced into Plaintiff.

Reopening discovery for a narrow period would not unfairly prejudice Defendants. It would allow the central factual dispute to be tested. Plaintiff is willing to appear for deposition, serve written amended responses to RFAs Nos. 1-3 immediately, and proceed promptly with limited depositions. If the Court is not prepared to deny summary judgment outright, Plaintiff respectfully requests that the Court defer ruling on the battery issue until limited discovery is complete.

## VI. Dismissing battery now would unfairly prejudice Plaintiff and risk excluding decisive evidence.

Dismissing the battery claim now would prejudice Plaintiff because it would remove from trial the claim that unwanted contact occurred. Plaintiff personally experienced the contact. He has sworn that Mr. Thomas was pushed or forced into him because of Mr. Sims's aggressive advance and the physical attempt to restrain or redirect Mr. Sims. Plaintiff should not lose that claim based on prior counsel's failure to answer RFAs or before Plaintiff can depose the witnesses who claim no contact occurred.

The prejudice is especially serious because security footage or related evidence may still exist in recoverable form, or deposition testimony may reveal that Mr. Thomas was pushed into Plaintiff. If security footage is recovered before trial, or if Mr. Thomas, Mr. Canter, or another witness is confronted with contrary evidence and admits or clarifies that contact occurred, Plaintiff would be barred from presenting the battery claim if it is dismissed now. The safer and fairer course is to withdraw any deemed admissions, allow limited discovery, and let the jury determine credibility and causation.

### REQUESTED RELIEF

For these reasons, Plaintiff respectfully requests that the Court: (1) grant leave to file this sur-reply and supplemental response; (2) withdraw or amend any deemed admissions arising from Defendants' Requests for Admission Nos. 1-3; (3) deem Plaintiff's proposed denials to RFAs Nos. 1-3 served or permit Plaintiff to serve formal amended responses immediately; (4) deny Defendants' Motion for Summary Judgment as to assault and battery; (5) alternatively, defer ruling under Rule 56(d) and reopen discovery for limited depositions and security-footage discovery; and (6) grant such other relief as the Court deems just and proper.


Respectfully submitted,

_____
Yoseph Seyoum

Plaintiff, Pro Se

Date: July 7, 2026

**CERTIFICATE OF SERVICE**

I certify that on this <u>7th</u> day of July, 2026, a copy of the foregoing Plaintiff's Motion for Leave to File Sur-Reply, to Withdraw or Amend Any Deemed Admissions, and Response to Defendants' Argument that the Battery Claim Should Be Dismissed was filed through the Court's website system or otherwise served on counsel of record via email, including counsel for Defendants.

Respectfully submitted,

_____

Yoseph Seyoum
Plaintiff, Pro Se

**PROPOSED ORDER**

Upon consideration of Plaintiff's Motion for Leave to File Sur-Reply, to Withdraw or Amend Any Deemed Admissions, and Response to Defendants' Argument that the Battery Claim Should Be Dismissed, any opposition, and the record, it is this ____ day of _____, 2026, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff's Motion for Leave to File Sur-Reply is GRANTED;

2. Plaintiff's request to withdraw or amend any deemed admissions arising from Defendants' Requests for Admission Nos. 1-3 is GRANTED;

3. Plaintiff's proposed denials to Requests for Admission Nos. 1-3 are deemed served, or Plaintiff shall serve formal amended responses within ____ days;

4. Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's assault and battery claims;

5. Alternatively, ruling on the assault and battery issues is DEFERRED under Federal Rule of Civil Procedure 56(d), and discovery is reopened for the limited purpose of depositions and security-footage discovery concerning the July 22-26, 2024 incidents; and

6. Such further relief is granted as the Court deems just and proper.


_____
UNITED STATES DISTRICT JUDGE

**EXHIBIT INDEX**

| Exhibit | Description |
|---|---|
| A | Plaintiff's Supplemental Declaration Regarding Battery, Requests for Admission, and Limited Discovery |
| B | Plaintiff's Opposition to Defendants Charles M. Sims and O'Hagan Meyer, PLLC's Motion for Summary Judgment |
| C | Defendants' Reply Memorandum in Support of Motion for Summary Judgment |
| D | Defendant Charles M. Sims' Requests for Admission to Plaintiff Yoseph Seyoum |
| E | Certificate of Discovery dated March 19, 2026 |
| F | March 19, 2026 email serving Requests for Admission to Plaintiff's counsel |
| G | January 22, 2025 email with Montgomery County Sheriff regarding courtroom security footage |
| H | SIMS 01178-1185: orders and records concerning security footage and PowerPoint requests |

# PLAINTIFF'S EXHIBIT A

Plaintiff's Supplemental Declaration Regarding Battery, Requests for Admission, and Limited Discovery

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| YOSEPH SEYOUM, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 25-3446-TDC |
| CHARLES M. SIMS, et al., | * | |
| Defendants. | * | |

## PLAINTIFF'S SUPPLEMENTAL DECLARATION REGARDING BATTERY, REQUESTS FOR ADMISSION, AND LIMITED DISCOVERY

I, Yoseph Seyoum, declare under penalty of perjury pursuant to 28 U.S.C. Sec. 1746 as follows:

1. I am the Plaintiff in this action. I have personal knowledge of the matters stated in this declaration except where stated on information learned from case records, filings, or counsel communications, and I am competent to testify to the matters based on my personal observations and experience.

2. I do not admit that no battery occurred. I do not admit that Mr. Sims did not cause unwanted physical contact with me. I do not admit the substance of Defendants' Requests for Admission Nos. 1-3.

3. During the second incident in the July 22-26, 2024 trial, I approached Mr. Sims to discuss trial proceedings and witnesses. Mr. Sims turned toward me and advanced in my direction. I retreated because I feared he intended to reach me or make physical contact.

4. Mr. Michael Thomas moved between Mr. Sims and me to block or restrain Mr. Sims's advance. Mr. Canter also acted to pull or redirect Mr. Sims back toward the group.

5. Based on what I personally saw, felt, and experienced, Mr. Thomas was pushed or forced into me as a result of Mr. Sims's aggressive advance and the effort to restrain or redirect Mr. Sims. The contact was unwanted and offensive to me and forced me to step backward against my will.

6. Plaintiff's position is not that battery is proven solely because Mr. Sims personally touched me with his own hands. Plaintiff's position is that Mr. Sims caused unwanted contact by pushing or forcing Mr. Thomas into me during the physical intervention that resulted from Mr. Sims's conduct.

7. I did not knowingly, intentionally, or voluntarily admit that no battery occurred. Any failure to serve timely responses to Defendants' Requests for Admission occurred while I was represented by prior counsel and was not because I agreed with the requests.

8. I understand that Defendants served Requests for Admission through my former counsel in March 2026. I was not attempting to concede battery, give up my battery claim, or admit that Mr. Sims did not cause physical contact.

9. I ask the Court to withdraw or amend any deemed admissions because the battery claim should be decided on the merits, after discovery, and by a jury.

10. I need limited discovery to present facts essential to oppose summary judgment. The discovery I need includes depositions of Charles Sims, Michael Thomas, Bradley Canter, Ms. Wheeler, Christopher Hoge, and any courthouse or Sheriff's Office witness with knowledge of courtroom or hallway security footage, retention, deletion, backup systems, logs, or recovery.

11. I expect those depositions to address the exact body positions, movements, restraint, redirection, contact, and sequence of events during the second incident; why Mr. Thomas moved between Mr. Sims and me; why Mr. Canter pulled or redirected Mr. Sims; whether Mr. Thomas contacted me; and whether Mr. Sims caused that contact.

12. I also seek limited discovery concerning whether any security footage, still images, metadata, backup files, incident logs, retention records, deletion records, or recoverable data exist. Such evidence may confirm or refute the competing accounts of the battery allegation.

13. If discovery is reopened, I am prepared to promptly serve amended written responses to RFAs Nos. 1-3, appear for deposition, conduct limited depositions, and pursue targeted security-footage discovery.

14. If the battery claim is dismissed now, I will be prejudiced because future deposition testimony, witness admissions, or recovered security footage could confirm that Mr. Thomas was pushed or forced into me as a result of Mr. Sims's conduct, but the claim would no longer be available for trial.

15. All statements in this declaration are true and correct to the best of my personal knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of July, 2026.

_____
Yoseph Seyoum
Declarant

# PLAINTIFF'S EXHIBIT B

Plaintiff's Opposition to Defendants Charles M. Sims and O'Hagan Meyer, PLLC's Motion for Summary Judgment

Case No. 25-3446-TDC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| _____ ) | |
| **YOSEPH SEYOUM,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 25-3446-TDC |
| ) | |
| **CHARLES M. SIMS, et al.** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANTS CHARLES M. SIMS AND O'HAGAN MEYER, PLLC'S MOTION FOR SUMMARY JUDGMENT**</u>

The plaintiff, **Yoseph Seyoum**, by and through undersigned counsel, Samuel Q. Elira Sr. and **THE ELIRA LAW FIRM, LLC.**, pursuant to Fed.R.Civ.P. 56, hereby opposes the defendants Charles M. Sims and O'Hagan Meyer, PLLC's, Motion for Summary Judgment. In support thereof, the plaintiff states the following:

<u>**INTRODUCTION**</u>

The defendants have filed a Motion for Summary Judgment. In support of their motion, the defendants submitted a "Statement of Undisputed Facts." In the said statement, the defendants narrated that on the morning of the second day of trial, Mr. Seyoum approached Mr. Sims as he was setting up for the day again demanding the PowerPoint slides. In response, "Mr. Sims said words to the effect of telling Mr. Seyoum to back away; Mr. Seyoum alleges that Sims stated, "I know what you're doing." According to the Statement, "Mr. Seyoum alleges that Mr. Sims pointed at him and

stepped towards him. The Statement continued that "Later in the week of trial, Mr. Sims was standing in the lobby outside the courtroom with his client, Mr. Hoge, and several other members of the trial team, including Mr. Canter, Mr. Thomas and Ms. Wheeler" when "Mr. Seyoum approached, again demanding the PowerPoint; Mr. Sims again refused." Suddenly and for no reason, "Mr. Thomas stood between Sims and Seyoum and faced Mr. Seyoum with his arms crossed, until Mr. Seyoum stepped away." Nevertheless, Mr. Seyoum had previously filed an Amended Complaint. According to the Amended Complaint, the incident occurred during the trial between Crowley, Hoge & Fein, PC, and Mr. Seyoum. The defendants, Mr. Sims and his employer O'Hagan Meyer, PLLC, represented Crowley, Hoge & Fein. Mr. Sims was trial counsel for his employer, O'Hagan Meyer. According to the Amended Complaint, the two incidents occurred during the week of the trial, between July 22 and July 26, 2024. The Amended Complaint narrated the first incident beginning in paragraph 9, stating that, "During a break, Mr. Seyoum walked outside the courtroom. Mr. Sims was in the hallway. Mr. Seyoum asked Mr. Sims for a copy of the Power Point presentation presented in trial. Defendant Sims grew enraged, pointed his finger at Mr. Seyoum in an aggressive manner, walked toward Mr. Seyoum quickly and yelled 'I know what you are doing.'" Paragraph 9, Amended Complaint. The second incident was described in paragraph 12 of the Amended Complaint, in which Mr. Seyoum alleged that, "During a second break, Mr. Seyoum assumed Mr. Sims' anger had calmed. Mr. Seyoum asked Mr. Sims politely, at a safe distance, for a copy of the witness list offered by Mr. Smith in trial. In this instance, Mr. Sims lunged toward Mr. Seyoum causing one of Mr. Sims colleagues to [restrain] him."

In support of his opposition to the defendants' Motion for Summary Judgment, the plaintiff has submitted the following statement of material facts in genuine dispute and an affidavit that narrates the incidents involved in this case.

## STATEMENT OF MATERIAL FACTS IN GENUINE DISPUTE

1.      On the morning of the second day of trial, before the judge appeared, the plaintiff asked the courtroom clerk for a copy of the PowerPoint presentation used by Mr. Sims during his opening statement the prior day.

2.      The clerk informed the plaintiff that Mr. Sims did not submit the presentation to the court and advised the plaintiff to request it from Mr. Sims directly.

3.      Following the clerk's recommendation, the plaintiff walked a few feet from the clerk's station to Mr. Sims's desk and . . . asked him for a copy of the PowerPoint presentation.

4.      Without any discussion, Mr. Sims became very agitated, began advancing toward the plaintiff in a menacing and threatening manner, and repeatedly stated, "I know what you are doing," as he closed distance on the plaintiff.

5.      Mr. Seyoum continued, "Startled and fearing for my safety, I immediately began walking backwards while telling Mr. Sims to calm down and stop his advance."

6.      Mr. Seyoum "was forced to walk backwards approximately ten feet from the plaintiff's desk toward the judge's bench to avoid being struck. Mr. Sims ceased advancing only after I had retreated and loudly called for him to stop."

7.      The distance Mr. Sims crossed to confront the plaintiff "spanned a significant portion of the well of the courtroom."

8.      A few days later, after Mr. Seyoum "had exhausted his witness list and believed Mr. Sims was blocking my witnesses from testifying, I approached him during a midday break (on the third or fourth trial day) to ask if he would consent to allowing witnesses to testify, believing court approval might follow if he consented."

9.      When Mr. Seyoum asked to speak with Mr. Sims, "Mr. Sims immediately turned, faced me, and began advancing toward me in a threatening manner, again causing me to retreat backwards to avoid confrontation."

10.     Mr. Sims's male assistant, Mr. Michael Thomas, "rushed forward and physically positioned himself between Mr. Sims and me, blocking Mr. Sims's advance."

11.     Mr. Sims attempted to maneuver around Mr. Thomas to continue advancing toward Mr. Seyoum, and in the process Mr. Sims pushed Mr. Thomas pushed into Mr. Seyoum while he maintained his physical restraint of Mr. Sims.

12.     Mr. Canter reached out and grabbed Mr. Sims back into their discussion huddle.

13.     Mr. Seyoum continued to walk backwards away from Mr. Sims and Mr. Thomas to avoid further confrontation.

14.     In both incidents, Mr. Sims intentionally advanced toward me in a menacing and threatening manner, closing distance rapidly and forcing me to retreat to avoid imminent, offensive physical contact.

15.     Mr. Seyoum was very concerned that Mr. Sims was going to injure him and, during the second incident, physical intervention was required by Mr. Thomas and Mr. Canter to prevent further advance and harm.

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a), "a party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Under this standard, summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; and Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Once (or if) a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings but rather must set forth specific facts showing that there is a genuine issue of material fact for trial. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003). The court should "view the evidence in the light most favorable to . . . the nonmovant [] and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." Dennis v Columbia Colleton Med. Ctr, Inc., 290 F.3d 639, 644-45 (4th Cir. 2002); see F.D.I.C. v. Cashion, 720 F.3d 169, 173 (4th Cir. 2013).

Under this standard, the evidence of the non-moving party is to be believed, and all justifiable inferences must be drawn in favor of the non-moving party. Anderson, 477 U.S. at 255. In other words, in determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 E3d at 213 (citing Bonds v. Leavitt, 629 E.3d 369, 380 (4th Cir. 2011)). Indeed, "|i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc, v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam)). Moreover, "|c]redibilitv determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury' functions, not those of a judge." Anderson, 477 U.S. at 255. That is, the court should "view the evidence in the light most favorable to . . . the nonmovant [] and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The trial court may not make credibility determinations on summary judgment. Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 569 (4th Cir. 2015); Mercantile Peninsula Bank v. French, 499 F.3d 345, 352 (4th Cir. 2007); Black & Decker Corp. v. United States, 436 F.3d 431, 442 (4th Cir. 2006); Dennis, 290 F.3d at 644-45. In the face of conflicting evidence raising disputes of material fact, such as competing

affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. See Anderson, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis, 249 F.3d at 265.

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

"In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury' could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 E2d 736, 738 (4th Cir. 1993) (quoting Anderson, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992). If a reasonable jury could

return a verdict for the non-movant, then a genuine factual dispute exists, and summary judgment is improper. Grp. Home on Gibson Island, LLC v. Gibson Island Corp., 144 F.4th 522, 531 (4th Cir. 2025).

A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. Anderson, 477 U.S. at 248-49. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. Id. at 248; Libertarian Party of Virginia v. Judd, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so onesided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

## ARGUMENT

The defendants make two broad arguments. First, they argue that there is no genuine dispute of material fact. Second, they argue that they are entitled to judgment as a matter of law.

### Defendant's Burden - Moving Party

Under Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the party seeking summary judgment bears the initial burden of demonstrating to the Court that there is no genuine issue of material fact and that it (the moving party) is entitled to judgment as a matter of law. Id. at 323. It is only after the movant has made this threshold demonstration that the burden shifts to the non-moving party to demonstrate that specific, material facts exist which give rise to a genuine issue. Id. at 324.

### Genuine Issues

In this instance, the threshold issue is whether the plaintiffs have demonstrated that there is no genuine issue of material fact when their affidavits in support of such assertion directly and extensively contradict each other on almost every relevant issue calls on the court to make credibility decisions? The plaintiff believes that these internal factual inconsistencies in themselves are those genuine issues of material facts that preclude summary judgment. To examine these factual inconsistencies, the court should examine or consider Mr. Sims' state of mind from the first day of trial because it sets the stage for the two encounters that form the basis of the complaint in this case.

Mr. Sims' state of mind can be seen through two witnesses. The first witness is Mr. Sims himself, and the second witness is Mr. Thomas, a former associate of Mr. Sims. Mr. Sims's state of mind can be seen through his response to Mr. Seyoum's Interrogatory Number 4. Mr. Sims narrated that, "On the first day of trial, July 22, 2024, after Plaintiff gave his opening statement to the jury, Defendant Sims made his opening statement to the jury and in so doing, he used a PowerPoint presentation as a demonstrative exhibit. After the parties made their opening statements, Mr. Seyoum read most of the transcript from Rebecca Deucher's deposition to the jury, during which he paused repeatedly in theatrical display of emotions. He then called Mr. Hoge as a witness. During Plaintiff's examination of Mr. Hoge, he repeatedly turned and stared at Defendant Sims." Mr. Seyoum's conduct as viewed by Mr. Sims was sufficient for Mr. Sims to raise the issue with the court.

Nevertheless, "Plaintiff continued to engage in this sort of theatrics throughout the trial – staring at Defendant Sims while examining witnesses, continually pointing his

finger at the witnesses for which the Court repeatedly admonished him, and pausing repeatedly during examination of witnesses while appearing to cry or feigning emotional distress."

Mr. Sims' state of mind can also be seen through the affidavit of Mr. Michael Thomas, a former associate of Mr. Sims. In his Affidavit executed in support of the Motion for Summary Judgment, Mr. Thomas, in paragraph 6, "recall[ed] that Mr. Seyoum believed that Mr. Sims had been aggressive towards him at trial." In paragraph 7, Mr. Thomas "recall[ed] an instance during a court recess . . . where Mr. Seyoum approached Mr. Sims. . . .  Mr. Seyoum said something to Mr. Sims, and Mr. Sims responded by saying, 'I know what you are doing' more than once." Emphasis. Furthermore, in paragraph 8, Mr. Thomas narrated that "[d]uring the trial, when Mr, Seyoum was testifying on cross examination, Mr. Sims had deliberately provoked Mr. Seyoum in a line of questioning about Mr. Seyoum's domestic violence . . .  to undermine Mr. Seyoum's credibility. . . .  I recall Mr. Seyoum becoming agitated on the stand and Mr. Sims slightly raised his voice as he continued questioning." But these set the stage for what would happen the following morning. In response to Interrogatory Number 4, Mr. Sims described what happened the following morning.

> On the morning of the second day of the trial, Defendant Sims was sitting at defense counsel's table in the Courtroom preparing for that day's witnesses. Also present at defense counsel's table were Mr. Hoge, Mr. Canter, Ms. Wheeler, a paralegal employed by O'Hagan Meyer, and Mr. Thomas, an associate attorney employed by O'Hagan Meyer at the time. . . . Plaintiff came to defense counsel's table, stood over Defendant Sims and accused him of misrepresenting the facts in the PowerPoint deck Defendant Sims had used when presenting his opening statement to the jury. Plaintiff demanded that Defendant Sims provide him with a copy of the PowerPoint

that he had used in opening. Defendant responded that the PowerPoint accurately informed the jury of the facts that would be established at trial and that Plaintiff had made no objection to the PowerPoint at anytime during or immediately after Defendant Sims gave his opening statement to the jury. Accordingly, Defendant Sims stated that he would not provide Plaintiff with the PowerPoint slides. As Plaintiff walked away from the Defense table, Defendant got up from the table to retrieve documents from the banker's box behind him. Defendant's back was to Plaintiff's counsel table. Plaintiff again approached Defendant from behind and loudly demanded that Defendant Sims provide him with a copy of the PowerPoint presentation. Defendant turned and told Plaintiff to back away from him. . . . Plaintiff backed away while throwing his hands up and theatrically yelling 'Mr. Sims! Mr. Sims!' repeatedly Defendant did not respond to Plaintiff's theatrics, and took his seat at the defense counsel's table.

Mr. Sims' Response to Plaintiff's Interrogatory Number 4. Emphasis added.

The only witness to have observed this first encounter on the second trial date was Ms. Wheeler, a paralegal at the office of O'Hagan Meyer. In her affidavit in support in support of the Motion for Summary Judgment, Ms. Wheeler in paragraphs 4, 6, and 7, alleged that on July 23, 2024, while she and defendant Mr. Sims were setting up for the second day of trial, "Mr. Seyoum approached the table and asked Mr. Sims for a copy of the PowerPoint accompanying the opening statement the previous day. Mr. Sims declined." In paragraph 7, Ms. Wheeler stated that, "Mr. Seyoum appeared to be upset, and he turned and walked back to his table."

In paragraph 8, however, "thereafter, Mr. Sims stood up to continue setting up his things for the day. His back was to Mr. Seyoum." In paragraph 9, "Mr. Seyoum approached Mr. Sims again and demanded a copy of the PowerPoint presentation again. Mr. Sims turned around to face him." In paragraph 10, "Mr. Seyoum started running

backwards and throwing his hands up while theatrically yelling, 'Mr. Sims! Mr. Sims!' repeatedly.

For Mr. Thomas, he stated in paragraph 7 that he "recall[ed] an instance during a court recess . . . where Mr. Seyoum approached Mr. Sims. . . . Mr. Seyoum said something to Mr. Sims, and Mr. Sims responded by saying, 'I know what you are doing' more than once." In paragraph 8, Mr. Thomas stated that "[d]uring the trial, when Mr, Seyoum was testifying on cross examination, Mr. Sims had deliberately provoked Mr. Seyoum in a line of questioning about Mr. Seyoum's domestic violence . . . to undermine Mr. Seyoum's credibility. . . . I recall Mr. Seyoum becoming agitated on the stand and Mr. Sims slightly raised his voice as he continued questioning."

According to the defendant Mr. Sims, "on either July 24 or 25, 2024, after the trial had concluded for the day, Defendant Sims was conversing about the case with his client, Mr. Hoge, and with Mr. Canter, Ms. Wheeler, and Mr. Thomas. . . . Plaintiff approached Defendant from behind and, once again, demanded a copy of the PowerPoint. Plaintiff refused to drop the matter, was clearly agitated, and continued to badger Defendant Sims to provide him with the PowerPoint. <u>At this time, Mr. Thomas placed himself between Defendant and Plaintiff and stood facing Plaintiff with his arms crossed</u>. Mr. Thomas then turned towards Defendant Sims, who resumed the conversation with other noted counsel. Plaintiff walked away. Emphasis added.

The other witness who observed the second incident was Ms. Wheeler. On July 24, or July 25, 2024, Ms. Wheeler was outside the courtroom in the courthouse lobby and in a "<u>huddle</u> conversing with Mr. Sims, Christopher Hoge, Bradley Canter, Michael

Thomas" when Mr. Seyoum approached the group and "again demanded that Mr. Sims provide him a copy of the PowerPoint presentation. Mr. Sims refused again." Paragraph 15. In paragraph 16, "Mr. Seyoum was unhappy with Mr. Sims' refusal and continued to badger Mr. Sims. Mr. Sims stepped out of the group to speak to Mr. Seyoum; he was standing a distance of at least two to three people away." In paragraph 17, "Mr. Sims once again refused to provide a copy of the PowerPoint. Mr. Sims spoke firmly but did not threaten Ms. Seyoum." In paragraph 18, Ms. Wheeler stated that "<u>Michael Thomas placed himself between Mr. Sims and Mr. Seyoum</u>." Emphasis added.

In paragraph 9 of his affidavit, Mr. Thomas for his part recalled "an occasion in the hallway . . . when Mr. Seyoum approached Mr. Sims and demanded something from him." In paragraph 10, Mr. Thomas recalled that "Mr. Sims refused to back down on the disagreement; <u>both he and Mr. Seyoum were emotional</u>." In paragraph 11, Mr. Thomas "<u>stood between them and faced Mr. Seyoum with my arms crossed until both he and Mr. Sims settled down</u>." Emphasis added. In paragraph 12, Mr. Thomas stated that he "did not restrain Mr. Sims or touch him. I also did not touch Mr. Seyoum. The two settled down quickly and moved to opposite ends of the hallway."

In his affidavit, Mr. Canter stated in paragraph 10 that "during one of the breaks during the trial . . . he was standing in a circle outside the courtroom with Mr. Sims, Mr. Hoge, and Mr. Sims' associate, Michael Thomas." "Mr. Seyoum approached and demanded the PowerPoint presentation again. Paragraph 11. In paragraph 12, "Mr. Sims said no, and words to the effect of 'get away from us,' more sternly than he had previously." More importantly, Mr. Canter stated in paragraph 13 that "<u>Mr. Thomas put</u>

<u>his arm around Mr. Sims to draw him back into the circle and redirect any focus away from Mr. Seyoum</u>." Emphasis added.

Mr. Hoge, for his part, in paragraph 12 stated that "at some point during the trial of that case, I recall that Mr. Seyoum got into Mr. Sims' face demanding a document of some kind." In paragraph 13, "Mr. Sims responded that he was not entitled to it and said words to the effect of 'get out of my face.'" Mr. Seyoum, in response, "said something to the effect of 'look everyone, Mr. Sims is assaulting me.'' Paragraph 14. It is not clear from this affidavit whether Mr. Hoge was referring to the incident inside the courtroom or in the lobby of the courthouse. But the affidavit makes clear that if Mr. Hoge observed anything at all, he only observed one of the two encounters between Mr. Sims and Mr. Seyoum and not both. There is also a good argument that Mr. Hoge's affidavit does not satisfy the requirements of Rule 56(c)(4), for failing to show that Mr. Hoge had personal knowledge of the facts in the affidavit and that his affidavit sets out facts that would be admissible in evidence.

It is clear that the affidavits of the defendants' witnesses are almost entirely in conflict with one another. When the defendants' own evidence is contradictory, it is difficult to see how the defendants can show that no factual dispute exists. These internal inconsistencies directly undermine the defendant's burden of showing that there be "no genuine dispute as to any material fact."

**Judgment as a Matter of Law**

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment. Assuming there is no genuine issue, the defendants

argue that they are entitled to judgment as a matter of law. The defendants argue that the plaintiff cannot maintain an action for battery or an action for assault.

Assault

The defendants also argue that based on the undisputed facts, no reasonable fact-finder could conclude that Defendant Sims threatened Plaintiff. They argue that "[d]rawing all reasonable inferences in Plaintiff's favor, no reasonable fact finder could grant him relief for assault as a matter of law. No juror could reasonably conclude from the undisputed facts that Defendant Sims threatened Plaintiff, and Plaintiff's assault claim must therefore fail."

According to the plaintiffs, "[f]or tort liability for assault to lie in Maryland, the plaintiff must prove 1) that they were threatened by a defendant who possessed the apparent present ability to carry out that threat, and 2) the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm." Citing Lee v. Pfeifer, 916 F. Supp. 501, 505-06 (D. Md. 1996). They further argue that "Whether the defendant's behavior is threatening is viewed from the perspective of a reasonable person, not the plaintiff's subjective interpretation." "Viewed in the most favorable light to Plaintiff, for the purpose of a motion for summary judgment, all Plaintiff has alleged is that Mr. Sims made the statement 'I know what you are doing,' loudly," which Mr. Seyoum "subjectively interpreted as threatening and aggressive." They continued that, "[t]he words 'I know what you are doing' are not inherently threatening and could not reasonably be viewed as implying a threat. Nor would a finger point from a distance across a table or with another person in between be so."

The defendants argue that "Plaintiff has alleged is that Mr. Sims made the statement 'I know what you are doing,' loudly." This implies that Mr. Seyoum was the only person who heard defendant Mr. Sims make this statement. But Mr. Thomas, in his affidavit in support of the defendants' Motion for Summary Judgment, also stated that he heard Mr. Sims make the statement to Mr. Seyoum. Para 7. This expressly corroborates Mr. Seyoum's statement and undermines the defendant's argument.

The defendants also argue that "none of Mr. Sims' actions or gestures accompanying this alleged statement were sufficient to elevate that statement to a threat. Mr. Seyoum characterizes this interaction as aggressive. Even if Mr. Seyoum did subjectively perceive Mr. Sims stepping forward as 'aggressively approaching' or his tone as 'angry, unhinged, irrational, and inconsolable,' the first element of the tort of assault is not the plaintiff's subjective apprehension of whether the defendant's conduct was threatening, it is whether that conduct was objectively a threat to cause bodily harm. Here, no reasonable person would have interpreted Mr. Sims' alleged conduct as a threat." The defendants continued that "Saying 'I know what you are doing'— unaccompanied by a raised fist or other act demonstrating an intent to cause bodily harm—does not constitute an objectively reasonable threat of imminent bodily harm under Maryland law. They further argue that "Critically, to prevail on the first element of the tort of assault, Plaintiff is obligated to prove that Defendant "engaged in some threatening behavior."

In both encounters, certain issues stand out. First, while Mr. Sims denies saying anything to Mr. Seyoum in the first encounter, the evidence suggests otherwise. First, Mr.

Sims states that Mr. Sims repeatedly said, "I know what you are doing." Under the summary judgment framework, the court must believe Mr. Seyoum. Nevertheless, Mr. Thomas, a former employee of Mr. Sims, also corroborates that Mr. Sims made this statement. Second, the relationship between the two men began to deteriorate on the first day of trial. Mr. Seyoum narrated this in his affidavit. Mr. Sims himself seemed to agree in his own narrative. Mr. Thomas further corroborates this fact.

If the court must construe or view all facts in the record in the light most favorable to Mr. Seyoum, the must conclude that after the first trial date, the relationship between Mr. Seyoum and Mr. Sims was such that any encounter the following morning would not be cordial, at a minimum. The court should also draw the inference that once Mr. Seyoum made the initial request and Mr. Sims refused, the second repeated request would likely draw a more aggressive response from Mr. Sims.

For the second incident, certain facts also stand out. While Mr. Sims denies making any threatening advances on Mr. Seyoum and argues strenuously that he did not take any action or engage in any conduct a reasonable personable person would consider threatening, these assertions are directly contradicted by their own evidence. For the second incident in the lobby of the courthouse, all parties and witnesses agree that Mr. Seyoum approached Mr. Sims again while Mr. Sims was in conversation with his client and other attorneys. All parties also agree that Mr. Seyoum requested something of Mr. Sims and that Mr. Sims refused.

Some witnesses stated that Mr. Sims left the group to speak to Mr. Seyoum. But two witnesses stated more than that. Mr. Seyoum stated that Mr. Sims advanced towards

him in a threatening manner. Mr. Thomas testified to having to step between Mr. Sims and Mr. Seyoum. Mr. Canter testified to having to physically draw Mr. Sims back into the "huddled" group. Even though the court must at this point believe Mr. Seyoum's version of this evidence (affidavit and Amended Complaint), the conduct of Mr. Thomas and Mr. Canter corroborate Mr. Seyoum's evidence that Mr. Sims advanced towards in a manner that would make a reasonable believe that he was in danger of being struck or harmed. This is the only conclusion unless the plaintiffs would want this court to believe that both Mr. Thomas and Mr. Canter are not truthful or that both lawyers acted unreasonably under the circumstance. If Mr. Seyoum, Mr. Thomas, and Mr. Canter felt the same need to take some physical precaution, Mr. Seyoum's belief that Mr. Sims would harm him was entirely reasonable.

The defendants finally argue that "[t]here is simply no evidence that Mr. Sims, a lawyer in a courtroom surrounded by courtroom staff and Sheriff's deputies, engaged in conduct which could objectively be considered threatening, and there is no evidence at all that Mr. Sims made any threats of physical harm toward Mr. Seyoum under the circumstances the Plaintiff alleges. No reasonable person would deem his behavior threatening under the surrounding circumstances. And even if Plaintiff perceived Mr. Sims speaking sharply to him as threatening, no objective, reasonable person would have found Mr. Sims' conduct to be a "present threat" that Mr. Sims would imminently act upon by committing a battery." They finally argue, among others, that "Where, as here, the alleged conduct occurred in a courtroom or courthouse setting, in view of court personnel and other counsel, and involved non-threatening language, no clinched fists, no

weapon, no physical contact, and no pursuit, no reasonable jury could conclude that Defendant Sims committed an assault. Accordingly, Defendants are entitled to judgment as a matter of law."

This line of argument has no place in summary judgment. First, Mr. Sims' profession is irrelevant to both summary judgment and the torts of assault and battery. Second, the location of the incident is not relevant. Third, the defendants have not submitted any affidavits of any "court personnel." Fourth, "other counsel" were in the courtroom and court premises as adversaries of Mr. Seyoum in one way or another. Fifth and most importantly, this line of argument directly supports the plaintiff's argument that the defendants' Motion for Summary is inappropriately premised on the perceived credibility of the defendants and their witnesses, not because summary judgment is appropriate.

**<u>Non-Moving Party</u>**

Assuming, *arguendo*, that the defendants have demonstrated that there are no genuine issues of material fact, the burden shifts to the plaintiff to demonstrate that specific, material facts exist which give rise to a genuine issue. <u>Celotex Corp.</u>, 477 U.S. at 324. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. <u>Celotex Corp.</u>, 477 U.S. at 322. See also <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

To do this, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Having done so, in determining whether a genuine issue of material fact exists, the court must construe or view all the facts in the record and inferences from those facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Glynn, 710 E3d at 213 (citing Bonds v. Leavitt, 629 E.3d 369, 380 (4th Cir. 2011)). Under this standard, the evidence of the non-moving party is to be believed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Mr. Seyoum has filed an affidavit in support of his opposition to the Motion for Summary Judgment. In his affidavit, together with the Amended Complaint, Mr. Seyoum makes out every element of the tort of assault. For the purpose of summary judgment, Mr. Seyoum's evidence is to be believed. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. Also, the court must construe or view all the facts in the record and inferences from those facts in the light most favorable to the non-moving party. See Anderson, 477 U.S. at 255. Glynn, 710 E3d at 213.

The court must believe Mr. Seyoum's version of the events of the first encounter. Also, if the court must construe or view all facts in the record in the light most favorable to Mr. Seyoum, the Court must conclude that after the first trial date, the relationship between Mr. Seyoum and Mr. Sims was such that any encounter the following morning would not be cordial, at a minimum. The court should also draw the inference that once Mr. Seyoum made the initial request and Mr. Sims refused, the second repeated request would likely draw a more aggressive response from Mr. Sims. The court must believe

that Mr. Sims advanced towards Mr. Seyoum in a manner that would cause Mr. Seyoum to believe that Mr. Sims would harm or injure him.

For the second incident, certain facts also stand out. While Mr. Sims denies making any threatening advances on Mr. Seyoum and argues strenuously that he did not take any action or engage in any conduct a reasonable person would consider threatening, these assertions are directly contradicted by the defendants' own evidence. For the second incident in the lobby of the courthouse, all parties and witnesses agree that Mr. Seyoum approached Mr. Sims again while Mr. Sims was in conversation with his client and other attorneys. All parties also agree that Mr. Seyoum requested something of Mr. Sims and that Mr. Sims refused.

Some witnesses stated that Mr. Sims left the group to speak to Mr. Seyoum. But two witnesses stated more than that. Mr. Seyoum stated that Mr. Sims advanced towards him in a threatening manner. Mr. Thomas testified to having to step between Mr. Sims and Mr. Seyoum. Mr. Canter testified to having to physically draw Mr. Sims back into the "huddled" group. Even though the court must at this point believe Mr. Seyoum's version of this evidence (affidavit and Amended Complaint), the conduct of Mr. Thomas and Mr. Canter corroborate Mr. Seyoum's evidence that Mr. Sims advanced towards in a manner that would make a reasonable believe that he was in danger of being struck or harmed. The court must infer that Mr. Sims advanced towards Mr. Seyoum in an unlawfully threatening manner. This is the only conclusion to reach unless the defendants would want this court to believe that both Mr. Thomas and Mr. Canter are not truthful or that both lawyers acted unreasonably under the circumstance. Something caused both

men to step between Mr. Sims and Mr. Seyoum. And what is that something? If Mr. Seyoum, Mr. Thomas, and Mr. Canter felt the same need to take some physical precaution, Mr. Seyoum's belief that Mr. Sims would harm him was entirely reasonable. If the court must view the response of Mr. Thomas and Mr. Seyoum in the light most favorable to Mr. Sims, summary judgment is inappropriate for assault.

The defendant also argue that the tort of battery could not survive summary judgment. At this juncture, the court must believe Mr. Seyoum's evidence. The essence of the tort of battery is a harmful or offensive touching. Mr. Seyoum alleged in his affidavit that while Mr. Thomas was trying to prevent Mr. Sims from reach him, Mr. Sims "attempted to maneuver around Mr. Thomas to continue advancing toward Mr. Seyoum, and in the process Mr. Sims pushed Mr. Thomas who pushed into Mr. Seyoum while he, Mr. Thomas, maintained his physical restraint of Mr. Sims.

## **CONCLUSION**

By their own affidavits, the defendants failed to demonstrate that there is no issue of material fact in genuine dispute. The defendants also failed to show that they are entitled to judgment as a matter of law on the claims of assault and battery. The plaintiff, for his part, has demonstrated by this Amended Complaint and affidavit, that there are numerous unresolved material facts in genuine dispute between the parties. Finally, the responses of Mr. Canter and Mr. Thomas demonstrate that Mr. Seyoum's fear of injury or harm was reasonable.

WHEREFORE, the plaintiff respectfully requests that the Court deny the defendants' Motion for Summary Judgment.

Respectfully submitted,

**THE ELIRA LAW FIRM, LLC**

/s/ Samuel Q. Elira Sr.,
Samuel Q. Elira Sr., Esquire
Client Protection Fund No.: 22164
5302 East Court Drive
Upper Marlboro, MD 20772
samelira@eliralawfirm.com
(301) 936-1418 (office)
(301) 218-9406 (fax)
(410) 934-4926 (cell)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of May 2026 a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. A copy of the foregoing will also be delivered by email to the following:

Justin S. Dunbar, Esquire (#27699)
**NILES, BARTON & WILMER, LLP**
111 S. Calvert Street
Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
Counsel for Defendants

/s/ Samuel Q. Elira Sr.,
Samuel Q. Elira Sr., Esquire

# PLAINTIFF'S EXHIBIT C

Defendants' Reply Memorandum in Support of Motion for Summary Judgment

Case No. 25-3446-TDC

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| YOSEPH SEYOUM, | * | |
| *Plaintiff,* | * | |
| v. | * | **Case No.: 25-3446-TDC** |
| CHARLES M. SIMS, et al., | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CHARLES M. SIMS AND O'HAGAN MEYER, PLLC'S MOTION FOR SUMMARY JUDGMENT

Defendants, Charles M. Sims and O'Hagan Meyer, PLLC (hereinafter "O'Hagan Meyer"), by their attorney, Justin S. Dunbar, and Niles, Barton & Wilmer, LLC, hereby submit this Reply Memorandum of Law in support of their Motion for Summary Judgment:

## OBJECTIONS TO OPPOSITION

Defendant objects to Plaintiff's Affidavit filed with his Opposition, which failed to comply with F.R.Civ.P. 56(c)(4). The Rule states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." F.R.Civ.P. 56(c)(4). Throughout Plaintiff's Affidavit, he sets forth alleged facts that are not within his personal knowledge, new allegations for the first time in this litigation, and testimony regarding his opinion and belief of the motivations and intentions of others for which he has no personal knowledge, is not competent to state and would not be admissible at trial. Affidavits submitted to oppose a motion for summary judgment must contain admissible evidence and be based on personal knowledge. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Such Affidavits cannot be conclusory. *Id.*

Here, Plaintiff's Affidavit in to support his Opposition to Defendants' Motion for Summary Judgment fails to meet the applicable standard and contains his belief of the observations, impressions and intentions of other witnesses, many of whom are unnamed, as well as reference to the contents of security camera footage that is not a part of the record in the case.[1]  For example, Plaintiff alleges that "[t]he courtroom clerks, other court staff and Mr. Sims client and assistant were present and witnessed the incident."  *See* Plaintiff;s Affidavit at ¶ 3. Plaintiff also states "Mr. Sims's male assistant, Michael Thomas, who noticed Mr. Sims aggressive advance toward me, rushed forward and physically positioned himself between Mr. Sims and me, blocking his advances."  *See* Plaintiff's Affidavit ¶ 9. Next, Plaintiff states "[t]his incident occurred in the presence of witnesses, jurors and members of the public."  *See* Plaintiff's Affidavit ¶ 10.  Plaintiff then states "physical intervention was required by his assistant to prevent further advance and harm." *See* Plaintiff's Affidavit ¶ 11. Plaintiff also conclusively and without knowledge states that "[c]ourthouse security camera footage will corroborate" the incident as he alleges, although Plaintiff has never produced any footage during discovery. *See*

---

[1] It should be noted that Plaintiff has filed a Notice of Intent to File a Motion to Extend Discovery for which this Court has scheduled a pre-motion conference for June 29, 2026, in part to obtain alleged security camera footage as well as to conduct depositions of witnesses Christopher Hoge and Michael Thomas, and deposition of Defendant Sims (Document No. 35).  However, Plaintiff has provided no Affidavit required by F.R. Civ. P. 56(d) and/or 56(f) citing to any specific facts of the contents of the alleged video, its current existence, its unavailability prior to the close of discovery on March 12, 2026, or his attempts to obtain the alleged video prior to the filing of Defendant's Motion for Judgment despite clear knowledge of its potential existence.  In fact, the record of the underlying case is clear that Plaintiff attempted to obtain an alleged security camera video of both the subject courtroom and lobby area outside the courtroom in post-trial and appellate motions.  *See* **Reply Exhibit 1**, BATES-Stamped SIMS 01178-1185 containing the Circuit Court's denial of Mr. Seyoum's Motion for Court Order to Release Trial Dates Security Camera Footage and for Sanctions; the Appellate Court's denial of Mr. Seyoum's Motion to Compel Trial Court Action on Security Camera Footage Request; and Mr. Seyoum's previously filed Affidavit dated December 9, 2024 relevant to his motions, as well as **Reply Exhibit 2**, Plaintiff's January 22, 2025 email with Montgomery County Sheriff in which the Sheriff's Office notifies Mr. Seyoum that any requested video in no longer available.

Likewise, as it relates to the depositions of Defendant Sims and witnesses Hoge and Thomas, each of whom has provided sworn Answers to Interrogatories and sworn Affidavits, respectively, based on their personal knowledge in support of Defendants' Motion for Summary Judgment.  The record is clear that each of these individuals were known to Plaintiff and named in Plaintiff's Amended Complaint.  Nevertheless, Plaintiff made no attempt to depose them during the discovery period and has only requested them in response to Defendants' Motion for Summary Judgment.

These issues will be addressed in further detail with this Court at the scheduled pre-hearing conference.  However, for purposes of Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment, there is no basis whatsoever for the court to re-open discovery and the conclusive references to these subjects in Plaintiff's Affidavit submitted to oppose summary judgment are entirely insufficient and improper.

Plaintiff's Affidavit at ¶ 12. In another illustrative example of his Affidavit in general, Plaintiff states that "I believe Mr. Sim's conduct was not a spontaneous reaction…but arose from accumulated frustration[.] His actions functioned as intimidation by an officer of the court directed at a pro se litigant during ongoing proceedings, intended to unnerve me and impede my effective presentation." *Id.* at ¶ 16.   Another example of Plaintiff's irrelevant speculation insufficient under Rule 56(c): "Furthermore, during the trial when it was Mr. Sims's turn to cross-examine me, I testified in the court and informed the jury that Mr. Sims assaulted me in the courtroom.  Surprisingly, Mr. Sims did not correct me, did not contradict me, did not call me a liar, did not ask me follow-up questions and clarify to the court and jury members about the incident.  He did not ask me any follow up questions nor challenge my claim of assault.  Surprisingly, right after I confronted him about the assault in court, he immediately stopped his cross-examination despite my insistence urging him to ask me more questions." See Plaintiff's Affidavit ¶ 17.  And finally, in paragraph 18 of his Affidavit, which Plaintiff entitles "conclusion," he states: "Mr. Sims assaulted me twice during my trial – first inside the courtroom when he advanced on me after my request for a copy of his PowerPoint, and second outside the courtroom during a break when he again advanced and had to be physically restrained by his assistant….These incidents were witnessed and are corroborated by security footage."

In total, Plaintiff's Affidavit attempts to present self-serving evidence that would not be admissible in a last effort to survive summary judgment. Because the Affidavit fails to comply with the Rule so completely, this Court should strike Plaintiff's Affidavit or afford it no weight.  See also *Minnesota Mining & Manufacturing Co. v. U.S. Rubber Co.*, 279 F.2d 409 (4th Cir. 1960); *Barwick v. Celetox*, 736 F.2d946 (4th Cir. 1984).

## REPLY ARGUMENT

### I.     Plaintiff Has Failed to Establish a Prima Facie Case for Battery

Plaintiff has failed to establish a *prima facie* claim against O'Hagan Meyer for battery. He has failed to allege facts to support an essential element to his claim for battery – an offensive touching – in his Amended Complaint or in his Opposition to Defendants' Motion for Summary Judgment. To reiterate, a plaintiff must show an "intentional touching of a person without that person's consent" to support a claim of battery. *White Pine Ins. Co. v. Taylor*, 233 Md. App. 479, 504 (2017) (quoting Maryland Pattern Jury Instructions § 15:2 (5th ed. 2017)).

In his most recent iteration of the facts, Plaintiff has again altered his story as can be seen in his Affidavit compared to his Amended Complaint or in his previous Affidavit dated December 9, 2024 attached herein in Reply Exhibit 1. He alleges that Mr. Michael Thomas, Mr. Sims' associate, was pushed into him while restraining Mr. Sims. It should be noted that this fact was not alleged in Plaintiff's Amended Complaint or his previous Affidavit. Instead, Plaintiff presents this fact in an untimely effort to survive summary judgment. This fact is expressly contradicted by Michael Thomas' Affidavit, which stated that he never touched Mr. Seyoum. *See* **Exhibit F** to Defendants' Motion for Summary Judgment at ¶ 12. Plaintiff has changed his story now in an attempt to generate a material fact in dispute, which this Court should expressly deny.

Additionally, it is conclusively established, pursuant to F.R. Civ.P. Rule 36(b), that Defendant Sims did not make contact with Plaintiff, did not make physical contact with any objects connected to Plaintiff, and did not cause anything to make physical contact with Plaintiff.  On March 19, 2026, Defendant Sims timely served Requests for Admissions on Plaintiff through Counsel.  *See* **Reply Exhibit 3**, Certificate of Discovery, as well as **Reply Exhibit 4**, email from Defense Counsel to Plaintiff's Counsel dated March 19, 2026, serving Requests for Admissions on Plaintiff.

4

Defendant's Request for Admission No. 1 states:

"Admit that Charles Sims did not make physical contact with you during the trial of July 22-26, 2024, as alleged in your Amended Complaint."

Defendant's Request for Admission No. 2 states:

"Admit that Charles Sims did not make physical contact with any objects immediately connected with your person during the trial of July 22-26, 2024, as alleged in your Amended Complaint."

Defendant's Request for Admission No. 3 states:

"Admit that Charles Sims did not cause anything to make physical contact with you, or with any objects connected to your person, during the trial of July 22-26, 2024, as alleged in your Amended Complaint.

*See* **Reply Exhibit 5.**

Pursuant to F.R. Civ.P. 36(a)(3), "a matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." To date, after 80 days since being served with the requests, neither Plaintiff nor Plaintiff's counsel has served an answer or objection to these matters and they are deemed admitted and conclusively established under the Federal Rules.

Notwithstanding the fact that Mr. Thomas contradicts Plaintiff's bald assertions, assuming all facts as true, Plaintiff has failed to articulate a claim of battery against any of the named Defendant. There are no allegations to support a claim of battery and no allegations that any of the Defendants committed an offensive touching against him. Moreover, the fact that no physical contact was made or caused to be made by anything else upon Plaintiff is a conclusively established fact under the Federal Rules. As a matter of law, Defendants are entitled to judgment as a matter of law on Plaintiff's claim for battery.

5

## II.    Plaintiff Has Not Stated a Legally Cognizable Claim for Assault

There are no facts to support Plaintiff's meritless allegation that an assault occurred. Plaintiff again relies on his self-serving affidavit in a scheme to survive summary judgment by continuing to change the facts and manufacture new facts at this late stage in the case. As set forth in Defendants' Motion for Summary Judgment, Plaintiff must prove 1) that he was threatened by a defendant who possessed the apparent present ability to carry out that threat, and 2) the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm. *Lee v. Pfeifer*, 916 F. Supp. 501, 505-06 (D. Md. 1996).

Plaintiff's response to Defendants' argument for summary judgment relies on Plaintiff's subjective recounting of the facts, instead of analyzing the perspective of a reasonable person. *See id.* at 506. Additionally, Plaintiff attempts to distinguish the surrounding circumstances of the setting of his allegations because it does not favor his subjective characterization of the facts. The surrounding circumstances are highly relevant to the objective standard of a reasonable person. The uncontroverted facts are that Plaintiff was within a court of law with Mr. Sims, a duly appointed officer of the court, while surrounded by courtroom staff and Sheriff's deputies when he allegedly was assaulted. Plaintiff's unsubstantiated assertions fly in the face of reason.

Even assuming Plaintiff's allegations as true under the standard for summary judgment, the statement "I know what you are doing" does not show intimidating behavior. No reasonable person would have interpreted Mr. Sims' alleged conduct as a threat. Saying "I know what you are doing"— unaccompanied by any other act demonstrating an intent to cause bodily harm—does not constitute an objectively reasonable threat of imminent bodily harm. At no point does Plaintiff allege that Mr. Sims threatened physical harm, used language threatening to cause harm, or took action suggesting imminent bodily harm to substantiate his claim for assault. Plaintiff's Opposition presents no genuine dispute fact to establish an assault under the law.

6

Even drawing all reasonable inferences in Plaintiff's favor, no reasonable fact finder could grant him relief for assault as a matter of law. No juror could reasonably conclude from the undisputed facts that Defendant Sims threatened Plaintiff, and Plaintiff's assault claim must therefore fail.

**III.    Plaintiff Has Conceded that Defendants are Entitled to Summary Judgment on his Intentional Infliction of Emotional Distress by Failing to Respond**

Defendants argued that Plaintiff's claim for intentional infliction of emotional distress failed as a matter of law in its Motion for Summary Judgment. Plaintiff failed to respond to this argument in his Opposition or address this count at all. "It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded." *Wilkins v. Jackson*, 750 F.Supp. 2d 160, 162 (2010) (citations omitted). Based on Plaintiff's failure to even respond to Defendant's argument, Defendant is entitled to judgment as a matter of law as to Plaintiff's claim for intentional infliction of emotional distress.

**IV.    Plaintiff's claimed damages are speculative and not causally related to his claims.**

Moreover, Plaintiff has also failed to respond to Defendant's argument that his damages are all speculative and not recoverable. This Court should treat this issue as conceded as well. *See Wilkins*, 750 F.Supp. 2d at 162. To the extent that this Court reaches Plaintiff's claim for damages, Defendants reiterate that Plaintiff's claimed damages are unsupported by evidence and lack a legally cognizable causal connection to the alleged conduct. Plaintiff's claims are not cognizable under Maryland law and are foreclosed by the Appellate Court of Maryland's decision affirming the judgment against him. Defendants are entitled to judgment as a matter of law that Plaintiff's claimed damages are unsubstantiated and not recoverable.

**CONCLUSION**

WHEREFORE, Defendants, Charles M. Sims and O'Hagan Meyer, PLLC, respectfully

request that this Honorable Court enter summary judgment in their favor as requested in their Motion,

and grant such other and further relief as the Court deems appropriate.

/s/ Justin S. Dunbar
Justin S. Dunbar, Esq. (# 27699)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this  10th  day of June 2026, a copy of the foregoing Reply

Memorandum of Law was sent via PACER and electronic mail to:

Samuel Elira, Esquire
Patricia Peterson, Esquire
5302 E. Court Drive
Upper Marlboro, Maryland 20774
Tel.: (301) 936-1418
sqelaw@gmail.com
ppetersoneliralaw@gmail.com
*Counsel for Plaintiff*

/s/ Justin S. Dunbar
Justin S. Dunbar, Esq. (# 27699)

8

# PLAINTIFF'S EXHIBIT D

Defendant Charles M. Sims' Requests for Admission to Plaintiff Yoseph
Seyoum

Original label: Exhibit 5

Case No. 25-3446-TDC

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

YOSEPH SEYOUM,                        *

        *Plaintiff*,                  *

v.                                    *        **Case No.: 25-3446-TDC**

CHARLES M. SIMS, et al.,              *

        *Defendants.*                 *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANT CHARLES M. SIMS' REQUESTS FOR ADMISSION TO PLAINTIFF YOSEPH SEYOUM

**TO:**      Yoseph Seyoum, *Plaintiff*

**FROM:**   Charles M. Sims, *Defendant*

## INSTRUCTIONS

1. Defendant is required to respond to each and every Request for Admission. A failure to admit to one Request for Admission does not excuse Defendant from responding to any or all other Requests for Admission.

2. In accordance with Rule 36 of the Federal Rules of Civil Procedure, for each Request for Admission, if Defendant's answer is anything other than an unqualified admission, the answer shall specifically deny the matter or set forth in detail the reasons Defendant cannot truthfully answer or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that Defendant qualify an answer or deny only a part of the matter of which an admission is requested, Defendant shall specify so much of it as is true and qualify or deny the remainder.

3. These Requests shall be deemed continuing so as to require further and supplemental response if Defendant locate or obtain additional information which may impact Defendants responses hereto between the time of initial response and the time of any hearing or trial in the above-captioned matter.

## DEFINITIONS

As used in these Requests for Admission, the following terms are to be interpreted in accordance with these definitions:

(a) The term "person" includes any individual, joint stock company, unincorporated association or society, municipal or other corporation, the State, its agencies or political subdivisions, any court, or any other governmental entity.

EXHIBIT 5

(b)    The terms "you" and "your" include the person(s) to whom these Requests for Admission are addressed, and all of that person's agents, representatives, employees, insurers, attorneys, predecessors, parent organizations, and subsidiary and affiliate organizations.

(c)    The terms "document" or "documents" include all writings, drawings, graphs, charts, photographs, recordings, and other data compilations from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form.

(d)    The terms "identify," "identity" or "identification," when used in reference to a natural person, require you to state that person's full name, last known address, home and business telephone numbers, and present business affiliation.  When used in reference to a person other than a natural person, the terms "identify," "identity" or "identification" require you to describe the nature of such person (that is, whether it is a corporation, partnership, etc. under the definition of "person" above), and to state that person's last known address, telephone number, and principal place of business.  Once any person has been identified properly, it shall be sufficient thereafter when identifying that same person to state the name only.

(e)    The terms "identify," "identity" or "identification," when used in reference to a document, require you to state the date, title, present custodian, the author (or, if different, the signor or signors), the addressee, and the type of document (e.g., letter, memoranda, telegram, chart, etc.).  If any such document was, but is no longer in your possession or subject to your control, state what disposition was made of it and the reason for such disposition.  In lieu of so identifying a document, at your option you may attach an accurate copy of it to your Answers to these Requests for Admission, appropriately labeled to correspond to the Request in response to which it is being produced.

(f)    Unless otherwise indicated, these Requests for Admission refer to the time, place and circumstances of the accident or occurrence mentioned or complained of in the pleading.

(g)    The term "photograph" as used herein includes still photographs, moving pictures, and videotapes.

(h)    Present tense should be construed as also including the past tense if appropriate.

(i)    The singular should be construed as also including the plural and the plural should be construed as also including the singular if appropriate.

(j)    If you are unable to answer any of these Requests completely, answer to the extent possible, specifically, and state whatever information or knowledge you have concerning the unanswered portion.

(k)    A document "relating" or "related to" any given subject matter means any document that pertains, refers, or discusses in any way, directly or indirectly, the subject requested, including document concerning the preparation of such documents.

(l)    The word "including" means by way of example and not by way of limitation.

2

(m)    The word "Occurrence(s)" means the alleged incidents giving rise to your claims which occurred between July 22 and July 26, 2024, and which is the subject of your Complaint.

--------------------------------------

1.    Admit that Charles Sims did not make physical contact with you during the trial of July 22 – 26, 2024, as alleged in your Amended Complaint.

2.    Admit that Charles Sims did not make physical contact with any objects intimately connected with your person during the trial of July 22-26, 2024, as alleged in your Amended Complaint.

3.    Admit that Charles Sims did not cause anything to make physical contact with you, or with any objects intimately connected with your person, during the trial of July 22-26, 2024 as alleged in your Amended Complaint.

4.    Admit that the copy of the jury trial transcript produced by Defendant as Bates SIMS 00001-00954 is a true, authentic, and genuine copy of the original.

5.    Admit that the copy of Motion for Court Order to Release Trial Dates Security Camera Footage and For Sanctions produced by Defendant as Bates SIMS 00954-00990 is a true, authentic, and genuine copy of the original.

6.    Admit that the copy of Motion to Compel Trial Documents Used by Plaintiff/Counterclaim Defendant and for Sanctions produced by Defendant as Bates SIMS 00991-01026 is a true, authentic, and genuine copy of the original.

7.    Admit that the copy of Defendant/Counterclaim Plaintiff's Reply to Opposition to Motion to Compel Trial Documents and for Sanctions produced by Defendant as Bates SIMS 01027-01044 is a true, authentic, and genuine copy of the original.

8.    Admit that the copy of Appellant's Motion to Compel Trial Court Action on Security Camera Footage Request produced by Defendant as Bates SIMS 01045-01086 is a true, authentic, and genuine copy of the original.

3

9. Admit that the copy of Appellees' Opposition to Appellant's Motion to Compel Production of Powerpoint Presentation for Record Extract produced by Defendant as Bates SIMS 01087-01089 is a true, authentic, and genuine copy of the original.

10. Admit that the copy of Appellant's Motion to Compel Trial Court Action on Pending Motion to Compel Production of Powerpoint Presentation produced by Defendant as Bates SIMS 01090-01128 is a true, authentic, and genuine copy of the original.

11. Admit that the copy of Appellant's Reply to Appellees' Opposition to Motion to Compel Trial Court Action on Security Camera Footage Request and Powerpoint Presentation produced by Defendant as Bates SIMS 01129-01139 is a true, authentic, and genuine copy of the original.

12. Admit that the copy of Defendant/Counterclaim Plaintiff's Motion to Expedite Hearing on Motion for Court Order to Release Trial Dates Security Camera Footage and for Sanctions produced by Defendant as Bates SIMS 01140-01149 is a true, authentic, and genuine copy of the original.

13. Admit that the copy of Defendant/Counterclaim Plaintiff's Emergency Motion to Compel Ruling on Pending Motions and for Immediate Preservation Order produced by Defendant as Bates SIMS 01150-01163 is a true, authentic, and genuine copy of the original.

14. Admit that the copy of Defendant/Counterclaim Plaintiff's Amended Emergency Motion to Compel Ruling on Pending Motions and for Immediate Preservation Order with Rule 1-351(B) Certification produced by Defendant as Bates SIMS 01164-01177 is a true, authentic, and genuine copy of the original.

15. Admit that the copy of Defendant/Counterclaim Plaintiff's Amended Emergency Motion to Compel Ruling on Pending Motions and for Immediate Preservation Order with Rule 1-

4

351(B) Certification produced by Defendant as Bates SIMS 01164-01177 is a true, authentic, and genuine copy of the original.

16.    Admit that the copy of Affidavit of Yoseph Seyoum produced by Defendant as Bates SIMS 01180-01210 is a true, authentic, and genuine copy of the original.

/s/ Justin S. Dunbar
Justin S. Dunbar, Esq. (# 27699)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2026, a copy of the foregoing Requests for Admission was sent via electronic mail to:

Samuel Elira, Esquire
Patricia Peterson, Esquire
5302 E. Court Drive
Upper Marlboro, Maryland 20774
Tel.: (301) 936-1418
sqelaw@gmail.com
ppetersoneliralaw@gmail.com
*Counsel for Plaintiff*

/s/ Justin S. Dunbar
Justin S. Dunbar, Esq. (# 27699)

5

# PLAINTIFF'S EXHIBIT E

Certificate of Discovery dated March 19, 2026

Original label: Exhibit 3

Case No. 25-3446-TDC

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| YOSEPH SEYOUM, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 25-3446-TDC |
| CHARLES M. SIMS, *et al.*, | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### CERTIFICATE OF DISCOVERY

I HEREBY CERTIFY that on this 19th day of March 2026, copies of the foregoing were electronically served via secured electronic mail to Plaintiff's counsel:

1. Defendant Charles M. Sims' Requests for Admission to Plaintiff Yoseph Seyoum; and

2. This Certificate of Discovery.

Respectfully submitted,

/s/ *Justin S. Dunbar*

Justin S. Dunbar, Esq. (# 27699)
Joshua B. Keyser, Esq. (#31406)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
jbkeyser@nilesbarton.com
*Counsel for Defendants*

EXHIBIT 3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March 2026 a copy of Defendant's Certificate

of Discovery was electronically served on:

Samuel Elira, Esquire
5302 E. Court Drive
Upper Marlboro, Maryland 20774
Tel.: (301) 936-1418
sqelaw@gmail.com
*Counsel for Plaintiff*

*/s/ Justin S. Dunbar*
Justin S. Dunbar, Esq. (# 27699)

2

# PLAINTIFF'S EXHIBIT F

March 19, 2026 email serving Requests for Admission to Plaintiff's counsel

Original label: Exhibit 4

Case No. 25-3446-TDC

## Justin S. Dunbar

| | |
|---|---|
| **From:** | Joshua B. Keyser |
| **Sent:** | Thursday, March 19, 2026 5:20 PM |
| **To:** | sqelaw@gmail.com |
| **Cc:** | Justin S. Dunbar; Mary F. Greenberg |
| **Subject:** | Seyoum v. Sims, et al. - Requests for Admission |
| **Attachments:** | Requests for Admission to Plaintiff Seyoum from Defendant Sims.pdf; COS - Requests for Admission to Plaintiff Seyoum from Defendant Sims.pdf |

| | |
|---|---|
| **Categories:** | ND: Filed |

Mr. Elira,

Please find attached Defendant Charles Sims' Requests for Admission to Plaintiff.

Best,
Josh Keyser

Joshua B. Keyser, Esq. | Associate Attorney

NILES·BARTON&WILMER LLP
Trusted Legal Advisors Since 1838

**Niles, Barton & Wilmer, LLP**
111 South Calvert Street, Suite 1400
Baltimore, Maryland 21202
Direct: (410) 783-6465 | Fax: (410) 783-6449
jbkeyser@nilesbarton.com | www.nilesbarton.com
**Admitted to practice in Maryland, Virginia, and the District of Columbia**

NOTICE:  This message and any attachments may constitute a confidential attorney-client communication, protected attorney work-product, or other privileged or confidential information.  It is intended only for the designated and intended recipient(s).  It is not intended for transmission to, or receipt by, any unauthorized persons.  If you have received this communication in error or are not an intended recipient, do not review, disseminate, distribute or copy it.  Notify the sender by reply e-mail or by calling (410)783-6300, and delete it from your system.  Thank you.

1

EXHIBIT 4

# PLAINTIFF'S EXHIBIT G

January 22, 2025 email with Montgomery County Sheriff regarding courtroom security footage

Original label: Exhibit 2

Case 8:25-cv-03446-AAQ    Document 46    Filed 07/07/26    Page 59 of 70

3/7/26, 9:47 PM                PhantomALERT Inc. Mail - Re: 2023 MPIA 0013 -- Request for Courtroom Security Footage (Yoseph Seyoum v. Carlos Salvado et al.



**Joe Scott <joe.scott@phantomalert.com>**

---

## Re: 2023 MPIA 0013 -- Request for Courtroom Security Footage (Yoseph Seyoum v. Carlos Salvado et al.

---

**Joe Scott** <Joe.Scott@phantomalert.com>                    Wed, Jan 22, 2025 at 5:47 PM
To: "Feldenzer, Christopher M." <Christopher.Feldenzer@montgomerycountymd.gov>

Dear Lt. Col. Christopher M. Feldenzer,

My name is Yoseph Seyoum, and I am a Pro Se Plaintiff/Counter Defendant in Circuit Court Case No. C-15-CV-22-004124. The case was set for a 5-day jury trial starting Monday, July 22, 2024, and was assigned to and heard by Judge Rubin in Courtroom 7, South Tower. The case is now on appeal with the Appellate Court of Maryland, Case No. ACM-REG-1435-2024.

I am writing to formally request a copy of the security camera footage for the dates of July 22–26, 2024, covering inside and outside Courtroom 7 in the South Tower. This footage is critical for my appeal.

**I filed the attached motion with the Circuit Court on December 9, 2024, requesting the same, but I have not received any response.** I kindly ask for your guidance on how to proceed to obtain the footage. Additionally, I request that you ensure the security camera footage is preserved to prevent its deletion while this matter is being addressed.

Thank you for your attention to this matter. I greatly appreciate your assistance.

Respectfully,


Yoseph Seyoum

(Attachment: Motion filed on December 9, 2024)


On Mon, Jul 10, 2023 at 3:30 PM Feldenzer, Christopher M. <Christopher.Feldenzer@montgomerycountymd.gov> wrote:

> Dear Mr. Seyoum –
>
>
> This e-mail is a follow-up to our initial telephone conversation on June 26, 2023, and a subsequent voice mail message that I left for you on June 28, 2023. As I have noted in my June 26 voice mail message, the security camera video footage that you sought in your written request covering the trial in which you were the plaintiff, *Yoseph Seyoum v. Carlos Salvado et al.,* CSA-Reg-1007-2022 (Courtroom 8A), and that is currently on appeal, was no longer available at the time of your request. Typically, such security video footage is available for approximately six (6) months and, even assuming it is available for release under the Maryland Public Information Act, such requests are subject to indivdual approval by the presiding judge for the case and/or the Circuit Court Administrative Judge.
>
>
> If you have any further questions regarding this request, please contact the undersigned. Thank you.
>
>
> *Lt. Col. Christopher M. Feldenzer*
>
> *Assistant Sheriff*
>
> Montgomery County Sheriff's Office

EXHIBIT 2

50 Maryland Ave., Room 4226 North

Rockville, MD 20850

Office # (240) 777-7120  Cell # (410) 206-1464

Christopher.Feldenzer@montgomerycountymd.gov


*This communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system.*


*Metadata: This e-mail transmission and any accompanying material may contain embedded metadata. Any included metadata is confidential or privileged information and is not intended to be viewed by any recipient.*



**For more helpful Cybersecurity Resources, visit: https://www.montgomerycountymd.gov/cybersecurity**


--
Joseph Seyoum |CEO | PhantomALERT INC. |Joe.Scott@PhantomALERT.com |
Direct: 703.975.8957 | Land: 800. 725. 8425 |  www.PhantomALERT.com |


Now responding to the global call to action to stop Coronavirus Pandemic.

PhantomALERT's Coronavirus real-time reporting, tracking, viewing & mapping tool.


Please comment & share.

Free Demo Videos:

https://youtu.be/dj-idJPR_nw

https://youtu.be/k06IVSMNzTM?t=83


Please support PhantomALERT in

PhantomALERT v Apple, Inc.
https://www.openappmarketsact.org/

DOJ v Apple, Inc.

https://www.justice.gov/d9/2024-03/420763.pdf

'Even stronger' than imagined: DOJ's sweeping Apple lawsuit draws expert praise
https://www.theverge.com/2024/3/22/24109033/doj-apple-antitrust-lawsuit-legal-expert-praise

Our story. Part 1.
https://youtu.be/VUptyABtEVs?si=7ByJvl0gMKcrPbl6

Part 2.
https://youtu.be/NXy056OF_b8?si=3WrMMHQkdB8nVwhY

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

**Motion for Court Order Decemner 9 2024.pdf**
159K

# PLAINTIFF'S EXHIBIT H

SIMS 01178-1185: orders and records concerning security footage and PowerPoint requests

Original label: Exhibit 1

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| CROWLEY, HOGE & FEIN, P.C. | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant | ) | |
| | ) | |
| v. | ) | Case No. C-15-CV-22-004124 |
| | ) | |
| YOSEPH SEYOUM | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER G. HOGE | ) | |
| | ) | |
| Counterclaim Defendant | ) | |

### ORDER AS TO AMENDED EMERGENCY MOTION AND MOTION TO COMPEL

**UPON CONSIDERATION** and review of the Defendant/Counterclaim Plaintiff's Amended Emergency Motion to Compel Ruling on Pending Motions and for Immediate Preservation Order ("Emergency Motion") and Defendant/Counterclaim Plaintiff's Motion for Court Order to Release Trial Dates Security Camera Footage and for Sanctions ("Camera Preservation Motion"), it is this ___ day of July, 2025,

31st of July, 2025

07/31/2025 7:45:27 AM

**Ordered**, that the Emergency Motion and Camera Preservation Motion be, and hereby are **DENIED**.

_____
Judge

**Ronald B. Rubin**

Entered: Clerk, Circuit Court for
Montgomery County, MD
July 31, 2025

**SIMS 01178**

EXHIBIT 1

E-FILED
Rachel Dombrowski, Clerk
Appellate Court of Maryland
2/10/2025 8:45 AM

| | | |
|---|---|---|
| YOSEPH SEYOUM, | * | IN THE |
| Appellant, | * | APPELLATE COURT |
| v. | * | OF MARYLAND |
| CROWLEY, HOGE & FEIN, P.C., *et al.*, | * | No. 1435, September Term 2024 |
| Appellees. | * | MDEC: ACM-REG-1435-2024 |
| | * | (Cir. Ct. No. C-15-CV-22-004124) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

Upon consideration of appellant's "Motion to Compel Trial Court Action on Security Camera Footage Request" and "Motion to Compel Trial Court Action on Pending Motion to Compel Production of PowerPoint Presentation," the appellees' "Opposition to Appellant's Motion to Compel Production of PowerPoint Presentation for Record Extract" and "Opposition to Appellant's Motion to Compel Trial Court Action on Security Camera Footage Request and to Compel Trial Court Action on Pending Motion to Compel Production of PowerPoint Presentation," and the appellant's Reply thereto, it is, this 10th day of February 2025, by the Appellate Court of Maryland,

ORDERED that the appellant's motions are denied.



Judge's Signature Appears on
Original Order

Gregory Wells, Chief Judge

SIMS 01179

**IN THE CIRCUIT COURT**
**FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| **CROWLEY, HOGE & FEIN, P.C.** )<br>)<br>    **Plaintiff/Counterclaim Defendant** )<br>)<br>**v.**                                              )<br>)<br>**YOSEPH SEYOUM**                     )<br>)<br>    **Defendant/Counterclaim Plaintiff,** )<br>    **Pro se**                                     )<br>**v.**                                              )<br>)<br>**CHRISTOPHER G. HOGE**           )<br>)<br>    **Counterclaim Defendant**          ) | **Case No. C-15-CV-22-004124** |

**AFFIDAVIT OF YOSEPH SEYOUM**

I, Yoseph Seyoum, being duly sworn, depose and state as follows:

**I. Background**

1. I am the Defendant/Counterclaim Plaintiff in the above-captioned matter and am competent to testify to the matters stated herein.

2. I represent myself *pro se* in this case, which is now on appeal, which involves significant factual and procedural issues requiring a complete and accurate record for appellate review.

3. I submit this affidavit in support of the following motions:

- Motion to compel Trial Documents Used by Plaintiff/Counterclaim Defendant, filed on December 9, 2024; and

- Motion for Court Order to Release Trial Dates Security Camera Footage, filed on December 9, 2024.

**SIMS 01180**

4. The facts stated herein provide evidence supporting the allegations of misconduct by Plaintiff's counsel, Charles Sims, and establish the necessity of the relief requested in both motions.

## II. Efforts to Obtain Trial Documents

5. During the trial proceedings, Plaintiff's counsel, Charles Sims, used a PowerPoint presentation during his opening statement. This presentation contained visual materials and arguments that I believe misrepresented key facts critical to the case.

6. On July 23, 2024, I requested a copy of the PowerPoint presentation directly from Mr. Sims during trial. My request was ignored.

7. Following the trial, I sent written follow-up requests to Mr. Sims on October 1, 2024, and December 4, 2024, asking for a copy of the PowerPoint presentation. Copies of these emails are attached hereto as **Exhibits A and B.**

8. As of the date of this affidavit, Mr. Sims has failed to respond to my emails or provide the requested document, necessitating the filing of the Motion to Compel.

## III. Incidents of Misconduct and Aggression

### A. First Incident: July 22, 2024

9. On or about July 23, 2024, during the second day of trial, I approached Mr. Sims and politely asked for a copy of the PowerPoint presentation he had used during his opening statement.

10. Mr. Sims immediately turned toward me, pointing his fingers and aggressively stating, "I know what you are doing" repeatedly. Startled by his verbal and physical response, I stepped backward, raising my hands and calmly stating, "Mr. Sims, what are you doing? Calm down." He continued to approach me, forcing me to

SIMS 01181

walk backward approximately 6-10 feet toward the judge's chambers. I was shocked and in fear for my safety.

11. I immediately notified everyone in the room of Mr. Sims's aggressive behavior, but no one acknowledged the incident or intervened. This left me feeling humiliated, disrespected, and emotionally distressed. Despite this, I gathered myself and continued with the trial.

### B. Second Incident: July 24, 2024

12. In or around July 24, 2024, on or about July 24, 2024, during a midday break, I approached Mr. Sims - this time outside the courtroom - to discuss my witness list and the PowerPoint presentation.

13. He again responded aggressively, walking toward me in a threatening manner, stating, "I know what you are up to," and admonishing me.

14. Startled, I took a few steps backward. Mr. Sims's assistant, Mr. Thomas, intervened, physically restraining Mr. Sims and preventing the situation from escalating further. Jurors and others witnessed this incident, which I believe was a deliberate attempt to provoke me and create a false perception of aggression.

15. Witnesses to this incident included Mr. Hoge, Mr. Canter, Mr. Thomas, and others, including the jurors.

16. This incident was particularly distressing as it occurred in the presence of jurors, which I believe unfairly influenced their perception of me and the case. Despite the provocation, I remained calm and attempted to de-escalate the situation.

17. I believe that Mr. Sims's behavior was not only aggressive but also intentionally provocative. His actions seemed designed to try paint me as an "angry black man" and to discredit me in the eyes of the court and jury. This tactic, I believe,

SIMS 01182

was a dehumanizing attempt to provoke an emotional reaction, which I resisted by remaining calm and composed.

18. I find it deeply insulting that Mr. Sims would presume I could not control my emotions. His actions were unprofessional and indicative of his inability to maintain composure during the trial, particularly as his case weakened. This pattern of behavior disrupted the proceedings and undermined the fairness of the trial environment.

19. This confirmed for me that Mr. Sims's actions were not only unprofessional but also dehumanizing, as they were designed to exploit stereotypes and provoke me into reacting emotionally, which I resisted.

20. Throughout the trial, Mr. Sims continuously objected to my motions, witnesses, and even his own client's witnesses and experts.

21. Despite my efforts to present my case, I was repeatedly obstructed by Mr. Sims and opposing counsel, with the judge often siding with them. It became clear that I was not being allowed to put on my case as I wanted because I was winning. This entire experience was dehumanizing, unprofessional, and unfair.

## IV. Impact on My Case

22. The repeated acts of aggression by Mr. Sims during trial disrupted the decorum of the proceedings and hindered my ability to focus on presenting my defense effectively.

23. I believe these incidents were intentional attempts to provoke me into reacting emotionally in a way that could discredit me in front of the court and jury.

24. Despite these challenges, I maintained composure throughout the trial and continued to pursue justice through lawful and procedural means.

SIMS 01183

25. I raised these incidents with the Court during trial to ensure they were part of the record, specifically on pages 68 and 69 of the transcript of the trial, a true and correct copy of which is attached hereto as **Exhibit C.** Despite these efforts, no corrective action was taken to address the impact of opposing counsel's misconduct.

## V. Need for Security Footage

26. Security camera footage from the trial days is essential to corroborate my account of these incidents and demonstrate the pattern of aggressive and obstructive behavior by Mr. Sims.

27. The footage will also serve as critical evidence for my appeal, ensuring that the appellate court has a complete record of the trial's proceedings and irregularities.

28. The security footage is particularly important to verify the second incident, which occurred in front of jurors and likely influenced their perception of me, thereby prejudicing the outcome of the trial.

29. I respectfully request that the Montgomery County Sheriff's Office preserve and release the security footage from July 22, 2024, through July 26, 2024.

30. The failure to preserve and release this footage promptly will irreparably harm my ability to substantiate my claims on appeal and address the procedural irregularities that occurred during the trial.

## VI. Good Faith Efforts

31. I have made every reasonable effort to resolve these issues without court intervention, including multiple written requests to Plaintiff's counsel for the PowerPoint presentation.

SIMS 01184

32. My emails dated October 1, 2024, and December 4, 2024, clearly outline my requests and the urgency of the matter. Despite these efforts, I have received no response from Plaintiff's counsel.

## VII. Conclusion

33. The relief sought is necessary to ensure a fair and complete appellate process and to address the misconduct and procedural irregularities that occurred during trial.

I declare under penalty of perjury under the laws of the State of Maryland that the foregoing is true and correct.

Dated: December 9, 2024

*Yoseph Seyoum*
/s/ Yoseph Seyoum
Yoseph Seyoum
Defendant/Counterclaim Plaintiff, *pro se*

STATE OF TEXAS COUNTY OF TARRANT
Sworn and subscribed before me this 9th day of December, 2024.

Jerry W Johnson
Notary Public: Notary Public, State of Texas

My Commission Expires: 07/28/2026

Jerry W Johnson
ID NUMBER
568607-3
COMMISSION EXPIRES
July 28, 2026

Electronically signed and notarized online using the Proof platform.

SIMS 01185