YOSEPH SEYOUM,        \*    IN THE UNITED STATES DISTRICT COURT

Plaintiff,               \*    FOR THE DISTRICT OF MARYLAND

v.                     \*    SOUTHERN DIVISION

CHARLES M. SIMS, et al.,     \*    Case No.: 25-3446-TDC

Defendants.            \*

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION, REQUEST TO REOPEN LIMITED DISCOVERY UNDER RULE 56(d), AND SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Yoseph Seyoum respectfully moves for leave to file the attached Supplemental Declaration, requests limited discovery under Federal Rule of Civil Procedure 56(d), and supplements his opposition to Defendants Charles M. Sims and O'Hagan Meyer, PLLC's Motion for Summary Judgment. This filing is submitted in response to Defendants' reply arguments attacking Plaintiff's affidavit under Rule 56(c)(4), opposing limited discovery, relying on purported Requests for Admission, and arguing that Plaintiff cannot prove assault or battery.

This motion is not filed for delay. It is filed so the case can be decided on sworn testimony, cross-examination, admissible evidence, and a jury's credibility determinations - not on untested affidavits from Defendants' own witnesses, missed discovery by prior counsel, or a technical deemed-admission argument that Plaintiff did not personally authorize and factually disputes.

## TABLE OF AUTHORITIES

| Authority | Proposition |
|---|---|
| Fed. R. Civ. P. 56(a), (c)(4), (d) | Summary judgment standard; affidavits/declarations; deferral to permit discovery. |
| Fed. R. Civ. P. 36(b) | Withdrawal or amendment of admissions when merits are promoted and no prejudice results. |
| Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-55 (1986) | Genuine disputes and credibility issues are for the jury, not the court on summary judgment. |
| Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986) | Summary judgment generally follows adequate time for discovery; burden shifting. |
| Tolan v. Cotton, 572 U.S. 650, 656-57 (2014) | Court must credit nonmovant's evidence and draw reasonable inferences in nonmovant's favor. |
| Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 569 (4th Cir. 2015) | Courts may not weigh evidence or make credibility determinations at summary judgment. |
| McCray v. Md. Dep't of Transp., 741 F.3d 480, 483-84 (4th Cir. 2014) | Summary judgment before meaningful discovery is disfavored where essential facts are unavailable. |
| Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244-45 (4th Cir. 2002) | Rule 56(d) affidavit/functionally equivalent showing; need for discovery. |

| Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014) | Court should hesitate before denying discovery where needed information is possessed by movant. |
|---|---|
| Nelson v. Carroll, 355 Md. 593, 600-01 (1999) | Battery may occur through direct or indirect contact; setting force in motion may suffice. |
| White Pine Ins. Co. v. Taylor, 233 Md. App. 479, 504 (2017) | Maryland battery involves intentional touching without consent. |
| Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 F. App'x 169, 172-73 (4th Cir. 2005) | Rule 36 admissions narrow issues but court has discretion on scope and withdrawal. |

## EXHIBIT INDEX

| Exhibit | Description |
|---|---|
| A | Supplemental Declaration of Yoseph Seyoum in Support of Plaintiff's Opposition to Summary Judgment and Request to Reopen Limited Discovery |
| B | Plaintiff's Opposition to Defendants Charles M. Sims and O'Hagan Meyer, PLLC's Motion for Summary Judgment |
| C | Defendants' Reply Memorandum in Support of Motion for Summary Judgment |
| D | Defendant Charles M. Sims' Requests for Admission to Plaintiff |
| E | Certificate of Discovery serving Requests for Admission |
| F | March 19, 2026 email serving Requests for Admission on Plaintiff's former counsel |
| G | SIMS 01178-1185: orders and records concerning requests for courthouse security footage and PowerPoint materials |
| H | January 22, 2025 email with the Montgomery County Sheriff's Office concerning courtroom security footage |

## BACKGROUND

Defendants' Reply argues that Plaintiff's prior affidavit should be stricken or afforded no weight because it allegedly contained speculation, legal conclusions, and statements outside personal knowledge. Defendants also argue that Plaintiff failed to provide a Rule 56(d) or Rule 56(f) affidavit identifying the discovery needed, why it is essential, and why the information was unavailable before discovery closed. See Ex. C.

The Supplemental Declaration attached as Exhibit A responds directly to those objections. It states the facts in timeline order, identifies the portions based on Plaintiff's personal observations, and separately identifies matters Plaintiff learned from filed papers or other sources. It also identifies the limited discovery Plaintiff needs: depositions of Mr. Sims, Michael Thomas, Bradley Canter, Christopher G. Hoge, Ms. Wheeler, courtroom personnel, and Sheriff's Office personnel, as well as documents concerning security footage retention, preservation, deletion, access logs, audit logs, backups, vendor records, and related communications. Ex. A paragraphs 90-95.

Defendants' own Reply confirms that the requested discovery concerns the exact disputed issues Defendants ask the Court to decide: whether Mr. Sims advanced toward Plaintiff; whether Plaintiff retreated; why Mr. Thomas positioned himself between Mr. Sims and Plaintiff; whether Mr. Canter intervened; whether there was unwanted contact or forced movement; what happened

to courthouse security footage; and whether any admissions should be treated as conclusive. See Ex. C.

## ARGUMENT

### I. Leave should be granted because Defendants' Reply raised new objections that the Supplemental Declaration directly cures.

District of Maryland Local Rule 105.2(a) does not permit a surreply without leave of Court. Plaintiff seeks leave because Defendants' Reply does more than repeat their opening motion: it attacks Plaintiff's affidavit under Rule 56(c)(4), argues that a Rule 56(d) showing is absent, relies on Requests for Admission allegedly served on prior counsel, and asks the Court to decide assault and battery based on untested witness affidavits.

The attached Supplemental Declaration is therefore appropriate. It does not unfairly surprise Defendants. It narrows the issues, removes unnecessary speculation, states what Plaintiff personally saw and experienced, and identifies the specific discovery needed. The Court should grant leave and deem Exhibit A filed as Plaintiff's Rule 56(c)(4) and Rule 56(d) declaration.

### II. The Supplemental Declaration satisfies Rule 56(c)(4).

Rule 56(c)(4) requires a declaration used to oppose summary judgment to be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify. Exhibit A satisfies that standard. Plaintiff is the person who experienced the alleged assault and battery. He is competent to testify about what he saw, heard, felt, and did in response.

For the first incident, Plaintiff states that he asked the courtroom clerk for the PowerPoint, was directed to ask Mr. Sims, politely requested a copy, saw Mr. Sims become visibly agitated, heard Mr. Sims say words to the effect of 'I know what you are doing,' and retreated approximately eight to ten feet as Mr. Sims advanced. Ex. A paragraphs 22-30.

For the second incident, Plaintiff states that he approached Mr. Sims about trial-related issues, saw Mr. Sims turn and advance toward him, retreated, saw Mr. Thomas quickly position himself between them, observed Mr. Thomas use his body to block Mr. Sims, and felt/observed Mr. Thomas come into his personal space and make contact or cause forced backward movement. Ex. A paragraphs 38-48.

Those are not speculative matters. They are eyewitness facts based on Plaintiff's personal perception. To the extent Defendants dispute them, that dispute creates a jury question; it does not authorize summary judgment.

### III. Genuine disputes of material fact preclude summary judgment on assault and battery.

Summary judgment may be granted only where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At this stage, the evidence of the nonmovant must be credited, reasonable inferences must be drawn in his favor, and credibility determinations must be left for the jury. Anderson, 477 U.S. at 248, 255; Tolan, 572 U.S. at 656-57; Jacobs, 780 F.3d at 569.

Under Maryland law, battery may occur through direct or indirect contact. Nelson v. Carroll, 355 Md. 593, 600-01 (1999). The issue is not limited to whether Mr. Sims personally placed his

hand on Plaintiff. The jury may consider whether Mr. Sims set in motion the events that caused unwanted contact or forced movement through Mr. Thomas's intervention.

Plaintiff's evidence creates at least the following genuine disputes: (1) whether Mr. Sims advanced toward Plaintiff in a threatening manner; (2) whether Plaintiff retreated because harmful or offensive contact appeared imminent; (3) why Mr. Thomas intervened between Mr. Sims and Plaintiff; (4) whether Mr. Canter also pulled or redirected Mr. Sims; (5) whether Mr. Thomas contacted Plaintiff or forced him backward while blocking Mr. Sims; and (6) whether courthouse security records can corroborate either side's account.

Defendants' affidavits do not eliminate these disputes. They are interested or aligned witnesses whose credibility can be tested only through deposition and trial testimony. The Court should not decide at summary judgment whether Plaintiff is telling the truth or whether Mr. Thomas, Mr. Canter, Mr. Sims, or other defense witnesses are telling the truth.

## IV. Limited discovery should be reopened or summary judgment deferred under Rule 56(d).

Rule 56(d) authorizes the Court to defer ruling on summary judgment, deny the motion, allow time for discovery, or issue another appropriate order when a nonmovant cannot present facts essential to justify opposition. The Fourth Circuit recognizes that summary judgment before meaningful discovery is disfavored where essential facts are unavailable. McCray, 741 F.3d at 483-84; Harrods, 302 F.3d at 244-45.

The requested discovery is limited, targeted, and material. Plaintiff seeks depositions of the people who witnessed or participated in the encounters, and documents or subpoenas relating to security footage, retention, preservation, deletion, access logs, audit logs, backups, and vendor records. Ex. A paragraphs 90-95. These facts are essential because they go directly to assault, battery, credibility, causation, and the availability or destruction of objective evidence.

The information cannot be obtained from Plaintiff's memory alone. It is held by Defendants, Defendants' colleagues, court personnel, the Sheriff's Office, or courthouse security vendors. A court should hesitate before denying Rule 56(d) relief when the necessary information is possessed by the movant or third parties. Pisano, 743 F.3d at 931.

Plaintiff also explains why the discovery was not obtained earlier. After filing pro se, Plaintiff retained The Elira Law Firm and instructed counsel to develop the case, interview witnesses, obtain security footage and related records, and depose Mr. Sims and key witnesses. Plaintiff then faced a family emergency involving his seriously ill mother and relied on counsel to protect his interests. After discovery closed, Plaintiff learned depositions had not been taken and witness interviews had not been completed. Ex. A paragraphs 75-89. Plaintiff is now pro se and asks for limited relief to prevent a merits claim from being decided without the discovery he sought and expected counsel to pursue.

## V. Any deemed admissions should not defeat the merits and should be withdrawn or amended if necessary.

Defendants also rely on Requests for Admission allegedly served on Plaintiff's former counsel on March 19, 2026. See Exs. D-F. Plaintiff's Supplemental Declaration states that he did not personally receive, review, sign, or authorize any failure to respond to those Requests before the response deadline, and that he never intended to admit that Mr. Sims did not cause physical contact or forced movement. Ex. A paragraphs 96-100.

Rule 36(b) allows withdrawal or amendment of an admission when doing so promotes presentation of the merits and the Court is not persuaded that the requesting party will be prejudiced in maintaining or defending the action on the merits. Both conditions are satisfied. The alleged admissions would eliminate core issues - assault, battery, contact, causation, and credibility - without a merits determination. Defendants cannot claim unfair prejudice from litigating facts they have known since the case was filed and that their own summary judgment papers address.

Accordingly, if the Court concludes any matter was deemed admitted, Plaintiff requests withdrawal or amendment and leave to serve complete responses immediately.

**VI. The Court should deny summary judgment or defer ruling until limited discovery is completed.**

Plaintiff's sworn declaration, prior opposition, Defendants' own reply arguments, and the attached exhibits demonstrate that this case turns on disputed facts and credibility. Defendants ask the Court to accept their witnesses' version over Plaintiff's eyewitness account. Rule 56 does not permit that result. The assault and battery claims should proceed to discovery and, if factual disputes remain, to a jury.

**REQUESTED RELIEF**

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) grant leave to file the attached Supplemental Declaration; (2) deem the Supplemental Declaration filed as Plaintiff's Rule 56(c)(4) and Rule 56(d) declaration; (3) deny Defendants' Motion for Summary Judgment; (4) alternatively defer ruling under Rule 56(d) and reopen limited discovery for depositions and security-footage-related document discovery; (5) permit withdrawal or amendment of any deemed admissions and allow Plaintiff to serve responses to the Requests for Admission; and (6) grant any further relief the Court deems just and proper.

Respectfully submitted,

_____
Yoseph Seyoum
Plaintiff, Pro Se
Date: _____

| | | |
|---|---|---|
| YOSEPH SEYOUM, | * | IN THE UNITED STATES DISTRICT COURT |
| Plaintiff, | * | FOR THE DISTRICT OF MARYLAND |
| v. | * | SOUTHERN DIVISION |
| CHARLES M. SIMS, et al., | * | Case No.: 25-3446-TDC |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PROPOSED ORDER**

Upon consideration of Plaintiff's Motion for Leave to File Supplemental Declaration, Request to Reopen Limited Discovery Under Rule 56(d), and Supplemental Opposition to Defendants' Motion for Summary Judgment, any opposition, and the record in this matter, it is this _____ day of _____, 2026, hereby ORDERED that:

1. Plaintiff's Motion is GRANTED;

2. The Supplemental Declaration of Yoseph Seyoum attached as Exhibit A is deemed filed and considered for purposes of Federal Rules of Civil Procedure 56(c)(4) and 56(d);

3. Defendants' Motion for Summary Judgment is DENIED; or, in the alternative, ruling is DEFERRED pending completion of limited discovery;

4. Limited discovery is reopened for _____ days for depositions of Charles M. Sims, Michael Thomas, Bradley Canter, Christopher G. Hoge, Ms. Wheeler, identified courtroom personnel, and Sheriff's Office or courthouse personnel with knowledge of security footage, retention, preservation, deletion, access logs, audit logs, backup systems, vendor records, or communications relating to the July 22-26, 2024 trial footage;

5. Plaintiff may serve limited subpoenas or document requests concerning courthouse security footage, preservation requests, deletion dates, access logs, audit logs, backup systems, vendor records, and communications concerning the July 22-26, 2024 courtroom or lobby footage;

6. To the extent any Requests for Admission are deemed admitted by operation of Rule 36, Plaintiff is granted leave under Rule 36(b) to withdraw or amend those admissions and to serve responses within _____ days; and

7. The Court grants such other relief as justice requires.


_____

United States District Judge

| | | |
|---|---|---|
| YOSEPH SEYOUM, | * | IN THE UNITED STATES DISTRICT COURT |
| Plaintiff, | * | FOR THE DISTRICT OF MARYLAND |
| v. | * | SOUTHERN DIVISION |
| CHARLES M. SIMS, et al., | * | Case No.: 25-3446-TDC |
| Defendants. | * | |

* * * * * * * * * * * * *

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _____ day of _____, 2026, a copy of the foregoing Plaintiff's Motion for Leave to File Supplemental Declaration, Request to Reopen Limited Discovery Under Rule 56(d), and Supplemental Opposition to Defendants' Motion for Summary Judgment, together with exhibits, was served through the Court's CM/ECF system and/or by electronic mail upon counsel of record.


_____

Yoseph Seyoum

# EXHIBIT A

**Supplemental Declaration of Yoseph Seyoum in Support of Plaintiff's Opposition to Summary Judgment and Request to Reopen Limited Discovery**

Yoseph Seyoum v. Charles M. Sims, et al.

Case No. 25-3446-TDC

| YOSEPH SEYOUM, | * | IN THE UNITED STATES DISTRICT COURT |
|---|---|---|
| Plaintiff, | * | FOR THE DISTRICT OF MARYLAND |
| v. | * | SOUTHERN DIVISION |
| CHARLES M. SIMS, et al., | * | Case No.: 25-3446-TDC |
| Defendants. | * | |

* * * * * * * * * * * * *

### SUPPLEMENTAL DECLARATION OF YOSEPH SEYOUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT AND REQUEST TO REOPEN LIMITED DISCOVERY

I, Yoseph Seyoum, declare under penalty of perjury as follows:

1. I am the Plaintiff in this action. I am competent to testify to the matters stated in this Declaration, and the facts stated below are based on my personal knowledge unless otherwise stated.

2. I submit this Supplemental Declaration to clarify the facts supporting my claims for assault and battery arising from the July 22-26, 2024 jury trial in the Circuit Court for Montgomery County, Maryland, and to explain why limited discovery should be reopened and why Defendants' Motion for Summary Judgment should be denied.

3. I understand that Defendants have argued that my prior affidavit contained speculation, legal conclusions, and matters outside my personal knowledge. I have therefore tried to state the events in this Declaration in the sequence in which they occurred and to distinguish what I personally observed from what I later learned from filed papers or other sources.

4. Before the July 22-26, 2024 trial, Defendant Charles M. Sims deposed me for several hours while I was seated only a short distance from him.

5. During that deposition, Mr. Sims questioned me in an aggressive, hostile, and adversarial manner. I became emotional and cried during portions of the deposition.

6. Although I was upset during the deposition, I did not threaten Mr. Sims, advance toward him, or act physically aggressive toward him.

7. Attorney Andrew Lawrance and others were present during the deposition and observed my demeanor.

8. Before trial, my communications with Mr. Sims concerning routine litigation matters, settlement, scheduling, and other case-related issues were generally professional and civil.

9. Before trial, I attempted to settle the case with Mr. Sims and his client. I also contacted the Alternative Dispute Resolution Division of the Appellate Court of Maryland to request assistance in settling the matter.

10. The settlement efforts did not resolve the case, and the July 2024 trial proceeded.

1

1. On the morning of the first day of trial, before the trial began, I approached Mr. Sims, Christopher G. Hoge, Michael Thomas, Ms. Wheeler, and Mr. Bradley Canter outside the courtroom. I discussed settlement in a calm and professional manner.

2. I told Mr. Sims and his client that, although Crowley, Hoge & Fein had sued me first and I had counterclaimed, I was willing to dismiss my counterclaim, allow them to keep the approximately $90,000 I had already paid, and end the dispute without their pursuing the approximately $120,000 they claimed I owed.

3. My offer was declined. I was told, in substance, that this was a complicated case and that I would not be able to handle it as a pro se litigant. The case then proceeded to trial.

4. During the trial, I testified that I had offered to resolve the case and walk away. I wanted the Court and jury to know that I had tried to avoid a trial and was not proceeding pro se by choice.

5. On the first day of trial, I had several pending motions, including motions relating to continuance, the order of proof, and witnesses. I pleaded with the court stating it was not fair that I present first and asked for additional trial days to cover everything I could imagine was going to come at me after going first. Mr. Sims and his client objected and the judge sustained.Despite these obstacles, and opposing counsel objecting to my motions, I went forward and made my opening statement claiming that not only was I victim of legal malpractice, but that I was a victim on intentional, malicious, self-serving breach of contract and not only did I not owe the fees but I was owed a refund and damages. After presenting my opening statement it was the plaintiff's chance to present their opening statement and Mr. Sims used a power point presentation detailing the crux of his case against me. Mr. Sims opening statement and the power point presentation he used gave me the heads up of how they were going to come after me at trial. I noticed the power point presentation was full of errors. Errors that would work in my favor if I exposed it the judge and jury. The power point presentation and Mr. Sims opening statement basically told me that they were going to argue and use all the evidence and testimony I presented to my legal malpractice attorney in confidence against me. The power point presentation was full of information I provided in confidence, now twisted and it was being weaponized against me in a fee dispute. Mr. Sims and client basically told the judge and jury I did not have a legal malpractice case and that it was my fault that I lost the underlying, original legal malpractice case and protective order trial despite telling me I had a winning case, hired experts testifying I was a victim of legal malpractice case in the underlying protective order trial. I was billed over $232,000 developing a legal malpractice claim with damages without damages expert designated on time. My reason for disputing the legal fees was as a result of my legal malpractice attorney, Mr. Hoge, Mr. Sims client failure to designate damages expert in time before discovery deadline closed in the underlying case. At trial, I argued it was legal malpractice and breach of contract as a defense to the fee dispute since missing discovery deadline is legal malpractice. I also developed the damages claim, hired damages experts and subpoenaed the first liability damages expert that Mr. Sims client hired for me and made me paid for me. To my surprise Mr. Sims and his client objected to their own liability witness they hired for me, objected to my damages expert and expert damages reports. Which was

a total surprise to me as I was led to believe that I was a victim of legal malpractice case and Mr. Sims client billed me over $232,000 in pursuit of justice and to clear my name. Now that I am defending the fee claim by exposing the incompetent representation I received in the legal malpractice case, by developing and the case Mr. Sims client should have done in the underlying case, Mr. Sims and his clients strategy was obstruct, object and use all of the confidential information I provided in confidence and weaponized it against me the former client who was billed over $232,000 under false representation. All of a sudden, during the trial they flipped the script on me and argued I did not have a valid malpractice case despite telling me I did have a meritorious case initially. It was all laid out in the power point presentation. I realized if I could get the case over to the jury not only will I beat the fee dispute but I can recover the over $90,000 I already paid and the jury may even award me considerable damages.

16. Despite my objections, I was required to present my case first. As a pro se litigant defending against a fee claim and presenting a counterclaim, being required to proceed first placed me at a substantial disadvantage because I did not yet know the full theory Mr. Sims and his client would present against me.

17. I asked the Court for additional trial time because the case was complex and I was representing myself. Mr. Sims and his client opposed my requests, and the requests were denied.

18. I nevertheless proceeded with my opening statement and presented my position that I had been the victim of legal malpractice and wrongful billing, that I did not owe additional fees, and that I was entitled to a refund and damages.

19. After my opening statement, Mr. Sims gave his opening statement for his client and used a PowerPoint presentation.

20. The PowerPoint presentation and Mr. Sims's opening statement were important to me because they revealed how Mr. Sims and his client intended to present their case against me. I believed the presentation contained errors, omissions, and information that had been provided by me in confidence to my former counsel and was now being used against me in the fee dispute.

21. Because I was representing myself, I needed the PowerPoint presentation to understand the points being made against me and to respond accurately during the trial.

22. On the morning of the second day of trial, before the judge entered the courtroom, I asked the courtroom clerk for a copy of the PowerPoint presentation Mr. Sims had used during opening statement.

23. The courtroom clerk informed me that Mr. Sims had not submitted the PowerPoint presentation as an exhibit and directed me to ask Mr. Sims for a copy.

24. Following the clerk's direction, I walked only a short distance from the clerk's area toward Mr. Sims and politely asked for a copy of the PowerPoint presentation.

25. Mr. Sims became visibly agitated. He repeatedly said words to the effect of, "I know what you are doing," and advanced toward me.

26. Mr. Sims's tone, facial expression, body language, and rapid advance caused me to believe that he was angry and that harmful or offensive physical contact was imminent.

27. I immediately began moving backward and repeatedly told Mr. Sims to stop and to calm down.

28. Mr. Sims continued advancing while I retreated from the area near counsel's table toward the judge's bench. I estimate that I moved backward approximately eight to ten feet to avoid physical contact.

29. Mr. Sims stopped only after I had retreated and loudly told him to stop.

30. I did not advance toward Mr. Sims during this incident. I did not threaten him. I retreated because I feared he was about to make physical contact with me.

31. The incident occurred inside the courtroom during an active jury trial in which I was representing myself. Courtroom personnel, members of the opposing side, and others were present.

32. I was embarrassed, shaken, and distracted by the incident. I was responsible for presenting evidence, examining witnesses, responding to objections, organizing exhibits, and preparing my case without an attorney or legal assistant.

33. After the first incident, I experienced anxiety and difficulty concentrating on trial preparation and trial strategy.

34. Instead of focusing only on witnesses and exhibits, I kept thinking about why Mr. Sims reacted so strongly to my request for the PowerPoint presentation and whether another

confrontation might occur.

5. Because I was pro se, I could not simply have another attorney communicate with Mr. Sims for me. I still had to deal with opposing counsel about trial issues.

6. After the first incident, I contacted trusted advisors and friends, including attorney Sylvia Adam, Sean R. Day, Robert Lazzaro, Andrew Lawrance, and others, to report what had happened and seek guidance.

7. In those communications, I described Mr. Sims's conduct and the fear, anxiety, and confusion I experienced because of the encounter.

8. Several days later, during a trial recess, a second incident occurred outside or near the courtroom.

9. At that point in the trial, I was concerned about witness and evidentiary issues, including objections to witnesses and evidence. I approached Mr. Sims to discuss trial-related matters.

40. When I attempted to speak with Mr. Sims, he again turned toward me and advanced in my direction in a manner that I perceived as threatening.

41. I again retreated because I feared that Mr. Sims intended to make physical contact with me.

42. Michael Thomas quickly positioned himself between Mr. Sims and me. From my perspective, Mr. Thomas moved between us to block Mr. Sims from continuing to advance toward me but unfortunately Mr. Thomas was pushed on to me making contact forcing me to step backwards. Had it not been for Mr. Sims aggressive advance and Mr. Thomas trying to block him Mr. Thomas would not have invaded my personal space, making contact with me forcing me to step backwards to retreat.

43. I observed Mr. Thomas use his body position to keep Mr. Sims from reaching me. My view of Mr. Sims was partially blocked because Mr. Thomas was between us.

44. As Mr. Thomas moved into the space between Mr. Sims and me, I felt and observed Mr. Thomas come into my personal space, make contact with me with his body and I was forced to step backward to avoid further contact or confrontation.

5. I did not consent to having my personal space invaded and being forced backward or to any contact or intrusion into my personal space caused by Mr. Sims's advance and Mr. Thomas's intervention.

6. I later learned from the materials filed by Defendants that Mr. Bradley Canter also described that Mr. Canter had to jump in to action to restrain Mr. Sims by pulling or guiding him back toward the group with whom Mr. Sims had been standing.

7. The fact that Mr. Thomas placed himself between us, and that Mr. Canter became involved, is consistent with what I observed: Mr. Sims was advancing toward me aggressively and intervention by two of his collogues was required to stop or redirect the assault and battery.

8. During the second incident, I again did not advance toward Mr. Sims, threaten him, or seek physical confrontation. I retreated.

9. After the second incident, my concern about any future interaction with Mr. Sims increased substantially.

0. The two incidents caused me stress, anxiety, distraction, fear, embarrassment, and difficulty sleeping during portions of the trial week.

1. The incidents affected my ability to focus on witness preparation, trial strategy, and the presentation of my case.

2. Despite my fear and anxiety, I continued to follow the Court's orders, conduct myself respectfully, and participate in the trial process.

3. Later during the same trial, Mr. Sims cross-examined me while I was testifying before the jury.

4. During my sworn testimony, I described to the Court and jury the incident in which Mr. Sims advanced toward me inside the courtroom.

5. I testified under oath that Mr. Sims had chased or advanced on me inside the courtroom and that I had retreated.

56. The fact that I raised the issue during the trial itself shows that my concern was immediate and contemporaneous, not something I invented after the trial ended.

57. After I described the incident during my testimony, Mr. Sims did not ask me detailed follow-up questions about my description of the encounter.

58. When Mr. Sims attempted to portray me as emotional or aggressive, I responded by explaining that Mr. Sims had been the person who advanced toward me and that I had retreated. At no time during my testimony did Mr. Sims try to refute my allegation of assault and battery. He did not confront me or set the record straight. How could he. It happened it was being recorded by the security camera. The footage was still there undeleted showing exactly what happened just I described it.

59. I made those statements under oath during trial because the incidents had occurred and because they affected me during the proceedings and it cost me the trial.

60. After the trial, I filed motions to compel. Motions seeking investigation, sanctions and written requests concerning the incidents, the PowerPoint presentation, and courthouse security footage.

61. I also raised the incidents in connection with post-trial and appellate efforts because I believed they were serious and relevant to what had occurred during the trial.

62. I made contemporaneous notes and preserved information about the incidents because I believed the events were significant and might later become relevant to court proceedings.

63. Because the incidents occurred in and around the courthouse during an active trial, I believed courthouse security footage may have existed and could have objectively shown what occurred.

64. I took steps to request preservation and production of any available courthouse security footage depicting the trial dates and the relevant courtroom and lobby areas. On the contrary defendant's never attempted to secure the security footage as admitted my defendant's attorney Mr. Dunbar at the June 29th hearing. Despite the defendants legal knowledge, his law firms and legal malpractice carriers unlimited resourced, defendats did not even attempt to secure the security camera footage that would settle this case once and for all.

65.

5. On or about December 9, 2024, I filed motions in the underlying case seeking, among other relief, preservation or release of trial-date security camera footage and action relating to the PowerPoint presentation.

6. On or about January 22, 2025, I emailed Lt. Col. Christopher M. Feldenzer of the Montgomery County Sheriff's Office requesting courthouse security footage for July 22-26, 2024 and requesting that any available footage be preserved.

7. In that email, I explained that I had already filed a motion with the Circuit Court on December 9, 2024, seeking the footage, and that I had not received a response.

8. The Sheriff's Office had previously advised me in a separate matter that security video footage was generally available for approximately six months, subject to approval by the presiding judge or court administrator. That prior information increased my concern that the footage could be lost if no action was taken promptly.

9. I understand from documents filed in this case that the Appellate Court of Maryland denied my motion relating to the security camera footage on or about February 10, 2025.

10. I understand from documents filed in this case that the Circuit Court denied my emergency motion and motion to compel concerning security camera footage on or about July 31, 2025.

11. I also understand from documents filed by Defendants that the Sheriff's Office later took the position that the requested security footage was no longer available.

12. I do not know whether any backup copies, vendor archives, deletion logs, access logs, still images, metadata, or other records relating to the footage still exist. Limited discovery is needed to determine that.

73. At no time did I intend to abandon my request for the footage or my claim that the incidents occurred.

74. Right before the one-year anniversary of the July 2024 incidents, after exhausting the avenues I knew to pursue, I filed complaints and this lawsuit as a pro se litigant describing what had happened to me.

75. After filing the lawsuit pro se, I consulted with The Elira Law Firm in or around August 2025. The firm reviewed my complaint, listened to my account, evaluated the statute of limitations, and agreed to represent me.

76. I instructed The Elira Law Firm to develop the case, interview witnesses, seek courthouse security footage and related records, and depose Defendant Sims and key witnesses.

77. In or around September 2025, my elderly mother became seriously ill. I had to travel out of the country and attend to a family emergency.

78. From approximately September 2025 forward, I was focused on caring for my mother and relied on The Elira Law Firm to handle this lawsuit and protect my interests.

79. After discovery had closed, I learned that depositions of Defendant Sims and key witnesses had not been conducted and that witness interviews had not been completed.

80. I was also informed that an attorney involved with my case had experienced a serious medical issue or medical leave, which affected the handling of my case.

81. I did not knowingly choose to allow discovery to close without depositions of Defendant Sims, Michael Thomas, Bradley Canter, Christopher G. Hoge, Ms. Wheeler, court personnel, or Sheriff's Office personnel.

2. I did not instruct my counsel to forgo those depositions. To the contrary, I wanted those depositions taken.

8

3. After I learned that discovery had closed without the necessary depositions, I urged my counsel to seek reopening of discovery so that witnesses could be interviewed and depositions could be conducted.

8

4. At the scheduling conference or related proceedings, I understand that my former counsel sought additional time to respond to summary judgment rather than timely and specifically seeking the limited discovery that I believed was needed.

8

5. Any failure to request depositions or timely seek limited discovery was not caused by a lack of interest or diligence on my part. I wanted the case developed and believed my counsel was doing so while I was dealing with my mother's illness.

8

6. The Elira Law Firm did send a subpoena or request to the Sheriff's Office seeking security camera footage, but I understand that the response came after discovery closed and stated that the footage had been deleted or was no longer available.

8

7. I later learned that depositions could have been taken without my personal presence, and that my travel and family emergency did not prevent counsel from proceeding with discovery.

8

8. I also later learned that Defendants were not seeking to depose me and did not request my availability for deposition.

8

9. During the June 29, 2026 hearing, I explained to the Court that The Elira Law Firm had withdrawn and that the case had not been developed through witness interviews and depositions as I had expected.

9

0. I understand from Defendants' Reply that they argue I failed to provide an affidavit under Rule 56(d) or Rule 56(f) identifying the specific discovery needed, the unavailable facts, and why the information was not obtained before the close of discovery.

9

1. The discovery I need is limited and specific: the depositions of Charles M. Sims, Michael Thomas, Bradley Canter, Christopher G. Hoge, Ms. Wheeler, the court room clerks who witnesses the first assault and any identified courtroom personnel or Sheriff's Office personnel with knowledge of the incidents, the security footage, preservation requests, retention policies, or deletion of footage.

2. I also need document discovery or subpoenas concerning courthouse security video retention policies, preservation requests, deletion dates, access logs, audit logs, vendor records, backup systems, communications about my requests, and any records showing whether the July 22-26, 2024 courtroom or lobby footage was viewed, preserved, copied, deleted, or could still be recovered.

3. I need this discovery because the witnesses are central to whether Mr. Sims advanced toward me, whether I retreated, why Mr. Thomas physically positioned himself between us, whether Mr. Canter pulled Mr. Sims back, whether any contact or forced movement occurred, and whether objective video or related records existed or still exist.

4. I cannot obtain these facts from my own memory alone because the key witnesses are Defendants, their colleagues, court personnel, and Sheriff's Office personnel, and because records concerning security footage are controlled by the courthouse, Sheriff's Office, vendors, or Defendants.

5. I am prepared to proceed promptly with limited discovery and will make myself available for any deposition Defendants seek.

6. I understand from Defendants' Reply that Defendants contend Requests for Admission were served on my former counsel on March 19, 2026.

7. I did not personally receive, review, sign, or authorize any failure to respond to those Requests for Admission before the response deadline.

8. I did not intend to admit that Mr. Sims did not make physical contact, did not cause anything to make physical contact with me, or did not cause any contact with objects or persons connected to me during the July 22-26, 2024 trial.

9. Had I known those Requests for Admission were pending and unanswered, I would have denied or qualified them because my position has consistently been that Mr. Sims advanced toward me in a threatening manner, caused me to retreat, and during the second incident caused or

contributed to Mr. Thomas moving into me or into my personal space while blocking Mr. Sims's advance.

1

0

0. I am prepared to serve complete responses to the Requests for Admission immediately if permitted by the Court.

1

0

1. The incidents have always been central to this lawsuit. My request for limited discovery is not made for delay, but to allow the case to be decided on testimony and evidence rather than on missed discovery caused by circumstances outside my control.

1

0

2. Summary judgment should not be granted before limited discovery because there are factual disputes concerning what Mr. Sims did, what I did in response, what Mr. Thomas and Mr. Canter did, what witnesses observed, whether contact or forced movement occurred, and what happened to any available security footage or related records.

1

0

3. All statements in this Declaration are based on my personal knowledge, personal observations, or my stated understanding of documents and filings in this case.

1

0

4. I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of July,

2

0

2

6. _____ Yoseph Seyoum Declarant

# EXHIBIT B

**Plaintiff's Opposition to Defendants Charles M. Sims and O'Hagan Meyer, PLLC's Motion for Summary Judgment**

Yoseph Seyoum v. Charles M. Sims, et al.

Case No. 25-3446-TDC

_____
                                        )
**YOSEPH SEYOUM,**                      )
                                        )
      Plaintiff,                       )
                                        )
      v.                               )    Case No.: 25-3446-TDC
                                        )
**CHARLES M. SIMS, et al.**             )
                                        )
      Defendants.                      )
_____)

### PLAINTIFF'S OPPOSITION TO DEFENDANTS CHARLES M. SIMS AND O'HAGAN MEYER, PLLC'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, **Yoseph Seyoum**, by and through undersigned counsel, Samuel Q. Elira Sr. and **THE ELIRA LAW FIRM, LLC.**, pursuant to Fed.R.Civ.P. 56, hereby opposes the defendants Charles M. Sims and O'Hagan Meyer, PLLC's, Motion for Summary Judgment. In support thereof, the plaintiff states the following:

### INTRODUCTION

The defendants have filed a Motion for Summary Judgment. In support of their motion, the defendants submitted a "Statement of Undisputed Facts." In the said statement, the defendants narrated that on the morning of the second day of trial, Mr. Seyoum approached Mr. Sims as he was setting up for the day again demanding the PowerPoint slides. In response, "Mr. Sims said words to the effect of telling Mr. Seyoum to back away; Mr. Seyoum alleges that Sims stated, "I know what you're doing." According to the Statement, "Mr. Seyoum alleges that Mr. Sims pointed at him and

stepped towards him. The Statement continued that "Later in the week of trial, Mr. Sims was standing in the lobby outside the courtroom with his client, Mr. Hoge, and several other members of the trial team, including Mr. Canter, Mr. Thomas and Ms. Wheeler" when "Mr. Seyoum approached, again demanding the PowerPoint; Mr. Sims again refused." Suddenly and for no reason, "Mr. Thomas stood between Sims and Seyoum and faced Mr. Seyoum with his arms crossed, until Mr. Seyoum stepped away." Nevertheless, Mr. Seyoum had previously filed an Amended Complaint. According to the Amended Complaint, the incident occurred during the trial between Crowley, Hoge & Fein, PC, and Mr. Seyoum. The defendants, Mr. Sims and his employer O'Hagan Meyer, PLLC, represented Crowley, Hoge & Fein. Mr. Sims was trial counsel for his employer, O'Hagan Meyer. According to the Amended Complaint, the two incidents occurred during the week of the trial, between July 22 and July 26, 2024. The Amended Complaint narrated the first incident beginning in paragraph 9, stating that, "During a break, Mr. Seyoum walked outside the courtroom. Mr. Sims was in the hallway. Mr. Seyoum asked Mr. Sims for a copy of the Power Point presentation presented in trial. Defendant Sims grew enraged, pointed his finger at Mr. Seyoum in an aggressive manner, walked toward Mr. Seyoum quickly and yelled 'I know what you are doing.'" Paragraph 9, Amended Complaint. The second incident was described in paragraph 12 of the Amended Complaint, in which Mr. Seyoum alleged that, "During a second break, Mr. Seyoum assumed Mr. Sims' anger had calmed. Mr. Seyoum asked Mr. Sims politely, at a safe distance, for a copy of the witness list offered by Mr. Smith in trial. In this instance, Mr. Sims lunged toward Mr. Seyoum causing one of Mr. Sims colleagues to [restrain] him."

In support of his opposition to the defendants' Motion for Summary Judgment, the plaintiff has submitted the following statement of material facts in genuine dispute and an affidavit that narrates the incidents involved in this case.

## STATEMENT OF MATERIAL FACTS IN GENUINE DISPUTE

1. On the morning of the second day of trial, before the judge appeared, the plaintiff asked the courtroom clerk for a copy of the PowerPoint presentation used by Mr. Sims during his opening statement the prior day.

2. The clerk informed the plaintiff that Mr. Sims did not submit the presentation to the court and advised the plaintiff to request it from Mr. Sims directly.

3. Following the clerk's recommendation, the plaintiff walked a few feet from the clerk's station to Mr. Sims's desk and . . . asked him for a copy of the PowerPoint presentation.

4. Without any discussion, Mr. Sims became very agitated, began advancing toward the plaintiff in a menacing and threatening manner, and repeatedly stated, "I know what you are doing," as he closed distance on the plaintiff.

5. Mr. Seyoum continued, "Startled and fearing for my safety, I immediately began walking backwards while telling Mr. Sims to calm down and stop his advance."

6. Mr. Seyoum "was forced to walk backwards approximately ten feet from the plaintiff's desk toward the judge's bench to avoid being struck. Mr. Sims ceased advancing only after I had retreated and loudly called for him to stop."

7. The distance Mr. Sims crossed to confront the plaintiff "spanned a significant portion of the well of the courtroom."

8.     A few days later, after Mr. Seyoum "had exhausted his witness list and believed Mr. Sims was blocking my witnesses from testifying, I approached him during a midday break (on the third or fourth trial day) to ask if he would consent to allowing witnesses to testify, believing court approval might follow if he consented."

9.     When Mr. Seyoum asked to speak with Mr. Sims, "Mr. Sims immediately turned, faced me, and began advancing toward me in a threatening manner, again causing me to retreat backwards to avoid confrontation."

10.     Mr. Sims's male assistant, Mr. Michael Thomas, "rushed forward and physically positioned himself between Mr. Sims and me, blocking Mr. Sims's advance."

11.     Mr. Sims attempted to maneuver around Mr. Thomas to continue advancing toward Mr. Seyoum, and in the process Mr. Sims pushed Mr. Thomas pushed into Mr. Seyoum while he maintained his physical restraint of Mr. Sims.

12.     Mr. Canter reached out and grabbed Mr. Sims back into their discussion huddle.

13.     Mr. Seyoum continued to walk backwards away from Mr. Sims and Mr. Thomas to avoid further confrontation.

14.     In both incidents, Mr. Sims intentionally advanced toward me in a menacing and threatening manner, closing distance rapidly and forcing me to retreat to avoid imminent, offensive physical contact.

15.     Mr. Seyoum was very concerned that Mr. Sims was going to injure him and, during the second incident, physical intervention was required by Mr. Thomas and Mr. Canter to prevent further advance and harm.

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a), "a party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Under this standard, summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; and Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Once (or if) a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings but rather must set forth specific facts showing that there is a genuine issue of material fact for trial. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003). The court should "view the evidence in the light most favorable to . . . the nonmovant [] and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." Dennis v Columbia Colleton Med. Ctr, Inc., 290 F.3d 639, 644-45 (4th Cir. 2002); see F.D.I.C. v. Cashion, 720 F.3d 169, 173 (4th Cir. 2013).

Under this standard, the evidence of the non-moving party is to be believed, and all justifiable inferences must be drawn in favor of the non-moving party. Anderson, 477 U.S. at 255. In other words, in determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 E3d at 213 (citing Bonds v. Leavitt, 629 E.3d 369, 380 (4th Cir. 2011)). Indeed, "|i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc, v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam)). Moreover, "|c]redibilitv determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury' functions, not those of a judge." Anderson, 477 U.S. at 255. That is, the court should "view the evidence in the light most favorable to . . . the nonmovant [] and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The trial court may not make credibility determinations on summary judgment. Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 569 (4th Cir. 2015); Mercantile Peninsula Bank v. French, 499 F.3d 345, 352 (4th Cir. 2007); Black & Decker Corp. v. United States, 436 F.3d 431, 442 (4th Cir. 2006); Dennis, 290 F.3d at 644-45. In the face of conflicting evidence raising disputes of material fact, such as competing

affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. <u>See</u> <u>Anderson</u>, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. <u>Anderson</u>, 477 U.S. at 248; <u>see</u> <u>also</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>Hooven-Lewis</u>, 249 F.3d at 265.

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. <u>Anderson</u>, 477 U.S. at 248. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

"In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury' could find for the nonmoving party on the evidence before it." <u>Moss v.</u> <u>Parks Corp.</u>, 985 E2d 736, 738 (4th Cir. 1993) (quoting Anderson, 477 U.S. at 248). <u>Even</u> <u>when facts are not in dispute, the court cannot grant summary judgment unless there is</u> <u>"no genuine issue as to the inferences to be drawn from" those facts</u>. <u>World-Wide Rights</u> <u>Ltd. P'ship v. Combe Inc.</u>, 955 F.2d 242, 244 (4th Cir. 1992). If a reasonable jury could

return a verdict for the non-movant, then a genuine factual dispute exists, and summary judgment is improper. Grp. Home on Gibson Island, LLC v. Gibson Island Corp., 144 F.4th 522, 531 (4th Cir. 2025).

A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. Anderson, 477 U.S. at 248-49. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. Id. at 248; Libertarian Party of Virginia v. Judd, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so onesided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

## ARGUMENT

The defendants make two broad arguments. First, they argue that there is no genuine dispute of material fact. Second, they argue that they are entitled to judgment as a matter of law.

### Defendant's Burden - Moving Party

Under Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the party seeking summary judgment bears the initial burden of demonstrating to the Court that there is no genuine issue of material fact and that it (the moving party) is entitled to judgment as a matter of law. Id. at 323. It is only after the movant has made this threshold demonstration that the burden shifts to the non-moving party to demonstrate that specific, material facts exist which give rise to a genuine issue. Id. at 324.

### Genuine Issues

In this instance, the threshold issue is whether the plaintiffs have demonstrated that there is no genuine issue of material fact when their affidavits in support of such assertion directly and extensively contradict each other on almost every relevant issue calls on the court to make credibility decisions? The plaintiff believes that these internal factual inconsistencies in themselves are those genuine issues of material facts that preclude summary judgment. To examine these factual inconsistencies, the court should examine or consider Mr. Sims' state of mind from the first day of trial because it sets the stage for the two encounters that form the basis of the complaint in this case.

Mr. Sims' state of mind can be seen through two witnesses. The first witness is Mr. Sims himself, and the second witness is Mr. Thomas, a former associate of Mr. Sims. Mr. Sims's state of mind can be seen through his response to Mr. Seyoum's Interrogatory Number 4. Mr. Sims narrated that, "On the first day of trial, July 22, 2024, after Plaintiff gave his opening statement to the jury, Defendant Sims made his opening statement to the jury and in so doing, he used a PowerPoint presentation as a demonstrative exhibit. After the parties made their opening statements, Mr. Seyoum read most of the transcript from Rebecca Deucher's deposition to the jury, during which he paused repeatedly in theatrical display of emotions. He then called Mr. Hoge as a witness. During Plaintiff's examination of Mr. Hoge, he repeatedly turned and stared at Defendant Sims." Mr. Seyoum's conduct as viewed by Mr. Sims was sufficient for Mr. Sims to raise the issue with the court.

Nevertheless, "Plaintiff continued to engage in this sort of theatrics throughout the trial – staring at Defendant Sims while examining witnesses, continually pointing his

finger at the witnesses for which the Court repeatedly admonished him, and pausing repeatedly during examination of witnesses while appearing to cry or feigning emotional distress."

Mr. Sims' state of mind can also be seen through the affidavit of Mr. Michael Thomas, a former associate of Mr. Sims. In his Affidavit executed in support of the Motion for Summary Judgment, Mr. Thomas, in paragraph 6, "recall[ed] that Mr. Seyoum believed that Mr. Sims had been aggressive towards him at trial." In paragraph 7, Mr. Thomas "recall[ed] an instance during a court recess . . . where Mr. Seyoum approached Mr. Sims. . . . Mr. Seyoum said something to Mr. Sims, and <u>Mr. Sims responded by saying, 'I know what you are doing' more than once</u>." Emphasis. Furthermore, in paragraph 8, Mr. Thomas narrated that "[d]uring the trial, when Mr, Seyoum was testifying on cross examination, Mr. Sims had deliberately provoked Mr. Seyoum in a line of questioning about Mr. Seyoum's domestic violence . . . to undermine Mr. Seyoum's credibility. . . . I recall Mr. Seyoum becoming agitated on the stand and Mr. Sims slightly raised his voice as he continued questioning." But these set the stage for what would happen the following morning. In response to Interrogatory Number 4, Mr. Sims described what happened the following morning.

> On the morning of the second day of the trial, Defendant Sims was sitting at defense counsel's table in the Courtroom preparing for that day's witnesses. Also present at defense counsel's table were Mr. Hoge, Mr. Canter, Ms. Wheeler, a paralegal employed by O'Hagan Meyer, and Mr. Thomas, an associate attorney employed by O'Hagan Meyer at the time. . . . Plaintiff came to defense counsel's table, stood over Defendant Sims and <u>accused him of misrepresenting the facts in the PowerPoint deck Defendant Sims had used when presenting his opening statement to the jury</u>. Plaintiff demanded that Defendant Sims provide him with a copy of the PowerPoint

that he had used in opening. Defendant responded that the PowerPoint accurately informed the jury of the facts that would be established at trial and that Plaintiff had made no objection to the PowerPoint at anytime during or immediately after Defendant Sims gave his opening statement to the jury. Accordingly, Defendant Sims stated that he would not provide Plaintiff with the PowerPoint slides. As Plaintiff walked away from the Defense table, Defendant got up from the table to retrieve documents from the banker's box behind him. Defendant's back was to Plaintiff's counsel table. Plaintiff again approached Defendant from behind and loudly demanded that Defendant Sims provide him with a copy of the PowerPoint presentation. Defendant turned and told Plaintiff to back away from him. . . . Plaintiff backed away while throwing his hands up and theatrically yelling 'Mr. Sims! Mr. Sims!' repeatedly Defendant did not respond to Plaintiff's theatrics, and took his seat at the defense counsel's table.

Mr. Sims' Response to Plaintiff's Interrogatory Number 4. Emphasis added.

The only witness to have observed this first encounter on the second trial date was Ms. Wheeler, a paralegal at the office of O'Hagan Meyer. In her affidavit in support in support of the Motion for Summary Judgment, Ms. Wheeler in paragraphs 4, 6, and 7, alleged that on July 23, 2024, while she and defendant Mr. Sims were setting up for the second day of trial, "Mr. Seyoum approached the table and asked Mr. Sims for a copy of the PowerPoint accompanying the opening statement the previous day. Mr. Sims declined." In paragraph 7, Ms. Wheeler stated that, "Mr. Seyoum appeared to be upset, and he turned and walked back to his table."

In paragraph 8, however, "thereafter, Mr. Sims stood up to continue setting up his things for the day. His back was to Mr. Seyoum." In paragraph 9, "Mr. Seyoum approached Mr. Sims again and demanded a copy of the PowerPoint presentation again. Mr. Sims turned around to face him." In paragraph 10, "Mr. Seyoum started running

backwards and throwing his hands up while theatrically yelling, 'Mr. Sims! Mr. Sims!' repeatedly.

For Mr. Thomas, he stated in paragraph 7 that he "recall[ed] an instance during a court recess . . . where Mr. Seyoum approached Mr. Sims. . . . Mr. Seyoum said something to Mr. Sims, and Mr. Sims responded by saying, 'I know what you are doing' more than once." In paragraph 8, Mr. Thomas stated that "[d]uring the trial, when Mr, Seyoum was testifying on cross examination, Mr. Sims had deliberately provoked Mr. Seyoum in a line of questioning about Mr. Seyoum's domestic violence . . . to undermine Mr. Seyoum's credibility. . . . I recall Mr. Seyoum becoming agitated on the stand and Mr. Sims slightly raised his voice as he continued questioning."

According to the defendant Mr. Sims, "on either July 24 or 25, 2024, after the trial had concluded for the day, Defendant Sims was conversing about the case with his client, Mr. Hoge, and with Mr. Canter, Ms. Wheeler, and Mr. Thomas. . . . Plaintiff approached Defendant from behind and, once again, demanded a copy of the PowerPoint. Plaintiff refused to drop the matter, was clearly agitated, and continued to badger Defendant Sims to provide him with the PowerPoint. <u>At this time, Mr. Thomas placed himself between Defendant and Plaintiff and stood facing Plaintiff with his arms crossed</u>. Mr. Thomas then turned towards Defendant Sims, who resumed the conversation with other noted counsel. Plaintiff walked away. Emphasis added.

The other witness who observed the second incident was Ms. Wheeler. On July 24, or July 25, 2024, Ms. Wheeler was outside the courtroom in the courthouse lobby and in a "<u>huddle</u> conversing with Mr. Sims, Christopher Hoge, Bradley Canter, Michael

Thomas" when Mr. Seyoum approached the group and "again demanded that Mr. Sims provide him a copy of the PowerPoint presentation. Mr. Sims refused again." Paragraph 15. In paragraph 16, "Mr. Seyoum was unhappy with Mr. Sims' refusal and continued to badger Mr. Sims. Mr. Sims stepped out of the group to speak to Mr. Seyoum; he was standing a distance of at least two to three people away." In paragraph 17, "Mr. Sims once again refused to provide a copy of the PowerPoint. Mr. Sims spoke firmly but did not threaten Ms. Seyoum." In paragraph 18, Ms. Wheeler stated that "<u>Michael Thomas placed himself between Mr. Sims and Mr. Seyoum</u>." Emphasis added.

In paragraph 9 of his affidavit, Mr. Thomas for his part recalled "an occasion in the hallway . . . when Mr. Seyoum approached Mr. Sims and demanded something from him." In paragraph 10, Mr. Thomas recalled that "Mr. Sims refused to back down on the disagreement; <u>both he and Mr. Seyoum were emotional</u>." In paragraph 11, Mr. Thomas "<u>stood between them and faced Mr. Seyoum with my arms crossed until both he and Mr. Sims settled down</u>." Emphasis added. In paragraph 12, Mr. Thomas stated that he "did not restrain Mr. Sims or touch him. I also did not touch Mr. Seyoum. The two settled down quickly and moved to opposite ends of the hallway."

In his affidavit, Mr. Canter stated in paragraph 10 that "during one of the breaks during the trial . . . he was standing in a circle outside the courtroom with Mr. Sims, Mr. Hoge, and Mr. Sims' associate, Michael Thomas." "Mr. Seyoum approached and demanded the PowerPoint presentation again. Paragraph 11. In paragraph 12, "Mr. Sims said no, and words to the effect of 'get away from us,' more sternly than he had previously." More importantly, Mr. Canter stated in paragraph 13 that "<u>Mr. Thomas put</u>

his arm around Mr. Sims to draw him back into the circle and redirect any focus away from Mr. Seyoum." Emphasis added.

Mr. Hoge, for his part, in paragraph 12 stated that "at some point during the trial of that case, I recall that Mr. Seyoum got into Mr. Sims' face demanding a document of some kind." In paragraph 13, "Mr. Sims responded that he was not entitled to it and said words to the effect of 'get out of my face.'" Mr. Seyoum, in response, "said something to the effect of 'look everyone, Mr. Sims is assaulting me.'" Paragraph 14. It is not clear from this affidavit whether Mr. Hoge was referring to the incident inside the courtroom or in the lobby of the courthouse. But the affidavit makes clear that if Mr. Hoge observed anything at all, he only observed one of the two encounters between Mr. Sims and Mr. Seyoum and not both. There is also a good argument that Mr. Hoge's affidavit does not satisfy the requirements of Rule 56(c)(4), for failing to show that Mr. Hoge had personal knowledge of the facts in the affidavit and that his affidavit sets out facts that would be admissible in evidence.

It is clear that the affidavits of the defendants' witnesses are almost entirely in conflict with one another. When the defendants' own evidence is contradictory, it is difficult to see how the defendants can show that no factual dispute exists. These internal inconsistencies directly undermine the defendant's burden of showing that there be "no genuine dispute as to any material fact."

**Judgment as a Matter of Law**

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment. Assuming there is no genuine issue, the defendants

argue that they are entitled to judgment as a matter of law. The defendants argue that the plaintiff cannot maintain an action for battery or an action for assault.

Assault

The defendants also argue that based on the undisputed facts, no reasonable fact-finder could conclude that Defendant Sims threatened Plaintiff. They argue that "[d]rawing all reasonable inferences in Plaintiff's favor, no reasonable fact finder could grant him relief for assault as a matter of law. No juror could reasonably conclude from the undisputed facts that Defendant Sims threatened Plaintiff, and Plaintiff's assault claim must therefore fail."

According to the plaintiffs, "[f]or tort liability for assault to lie in Maryland, the plaintiff must prove 1) that they were threatened by a defendant who possessed the apparent present ability to carry out that threat, and 2) the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm." Citing Lee v. Pfeifer, 916 F. Supp. 501, 505-06 (D. Md. 1996). They further argue that "Whether the defendant's behavior is threatening is viewed from the perspective of a reasonable person, not the plaintiff's subjective interpretation." "Viewed in the most favorable light to Plaintiff, for the purpose of a motion for summary judgment, all Plaintiff has alleged is that Mr. Sims made the statement 'I know what you are doing,' loudly," which Mr. Seyoum "subjectively interpreted as threatening and aggressive." They continued that, "[t]he words 'I know what you are doing' are not inherently threatening and could not reasonably be viewed as implying a threat. Nor would a finger point from a distance across a table or with another person in between be so."

The defendants argue that "Plaintiff has alleged is that Mr. Sims made the statement 'I know what you are doing,' loudly." This implies that Mr. Seyoum was the only person who heard defendant Mr. Sims make this statement. But Mr. Thomas, in his affidavit in support of the defendants' Motion for Summary Judgment, also stated that he heard Mr. Sims make the statement to Mr. Seyoum. Para 7. This expressly corroborates Mr. Seyoum's statement and undermines the defendant's argument.

The defendants also argue that "none of Mr. Sims' actions or gestures accompanying this alleged statement were sufficient to elevate that statement to a threat. Mr. Seyoum characterizes this interaction as aggressive. Even if Mr. Seyoum did subjectively perceive Mr. Sims stepping forward as 'aggressively approaching' or his tone as 'angry, unhinged, irrational, and inconsolable,' the first element of the tort of assault is not the plaintiff's subjective apprehension of whether the defendant's conduct was threatening, it is whether that conduct was objectively a threat to cause bodily harm. Here, no reasonable person would have interpreted Mr. Sims' alleged conduct as a threat." The defendants continued that "Saying 'I know what you are doing'— unaccompanied by a raised fist or other act demonstrating an intent to cause bodily harm—does not constitute an objectively reasonable threat of imminent bodily harm under Maryland law. They further argue that "Critically, to prevail on the first element of the tort of assault, Plaintiff is obligated to prove that Defendant "engaged in some threatening behavior."

In both encounters, certain issues stand out. First, while Mr. Sims denies saying anything to Mr. Seyoum in the first encounter, the evidence suggests otherwise. First, Mr.

Sims states that Mr. Sims repeatedly said, "I know what you are doing." Under the summary judgment framework, the court must believe Mr. Seyoum. Nevertheless, Mr. Thomas, a former employee of Mr. Sims, also corroborates that Mr. Sims made this statement. Second, the relationship between the two men began to deteriorate on the first day of trial. Mr. Seyoum narrated this in his affidavit. Mr. Sims himself seemed to agree in his own narrative. Mr. Thomas further corroborates this fact.

If the court must construe or view all facts in the record in the light most favorable to Mr. Seyoum, the must conclude that after the first trial date, the relationship between Mr. Seyoum and Mr. Sims was such that any encounter the following morning would not be cordial, at a minimum. The court should also draw the inference that once Mr. Seyoum made the initial request and Mr. Sims refused, the second repeated request would likely draw a more aggressive response from Mr. Sims.

For the second incident, certain facts also stand out. While Mr. Sims denies making any threatening advances on Mr. Seyoum and argues strenuously that he did not take any action or engage in any conduct a reasonable personable person would consider threatening, these assertions are directly contradicted by their own evidence. For the second incident in the lobby of the courthouse, all parties and witnesses agree that Mr. Seyoum approached Mr. Sims again while Mr. Sims was in conversation with his client and other attorneys. All parties also agree that Mr. Seyoum requested something of Mr. Sims and that Mr. Sims refused.

Some witnesses stated that Mr. Sims left the group to speak to Mr. Seyoum. But two witnesses stated more than that. Mr. Seyoum stated that Mr. Sims advanced towards

him in a threatening manner. Mr. Thomas testified to having to step between Mr. Sims and Mr. Seyoum. Mr. Canter testified to having to physically draw Mr. Sims back into the "huddled" group. Even though the court must at this point believe Mr. Seyoum's version of this evidence (affidavit and Amended Complaint), the conduct of Mr. Thomas and Mr. Canter corroborate Mr. Seyoum's evidence that Mr. Sims advanced towards in a manner that would make a reasonable believe that he was in danger of being struck or harmed. This is the only conclusion unless the plaintiffs would want this court to believe that both Mr. Thomas and Mr. Canter are not truthful or that both lawyers acted unreasonably under the circumstance. If Mr. Seyoum, Mr. Thomas, and Mr. Canter felt the same need to take some physical precaution, Mr. Seyoum's belief that Mr. Sims would harm him was entirely reasonable.

The defendants finally argue that "[t]here is simply no evidence that Mr. Sims, a lawyer in a courtroom surrounded by courtroom staff and Sheriff's deputies, engaged in conduct which could objectively be considered threatening, and there is no evidence at all that Mr. Sims made any threats of physical harm toward Mr. Seyoum under the circumstances the Plaintiff alleges. No reasonable person would deem his behavior threatening under the surrounding circumstances. And even if Plaintiff perceived Mr. Sims speaking sharply to him as threatening, no objective, reasonable person would have found Mr. Sims' conduct to be a "present threat" that Mr. Sims would imminently act upon by committing a battery." They finally argue, among others, that "Where, as here, the alleged conduct occurred in a courtroom or courthouse setting, in view of court personnel and other counsel, and involved non-threatening language, no clinched fists, no

weapon, no physical contact, and no pursuit, no reasonable jury could conclude that Defendant Sims committed an assault. Accordingly, Defendants are entitled to judgment as a matter of law."

This line of argument has no place in summary judgment. First, Mr. Sims' profession is irrelevant to both summary judgment and the torts of assault and battery. Second, the location of the incident is not relevant. Third, the defendants have not submitted any affidavits of any "court personnel." Fourth, "other counsel" were in the courtroom and court premises as adversaries of Mr. Seyoum in one way or another. Fifth and most importantly, this line of argument directly supports the plaintiff's argument that the defendants' Motion for Summary is inappropriately premised on the perceived credibility of the defendants and their witnesses, not because summary judgment is appropriate.

**<u>Non-Moving Party</u>**

Assuming, *arguendo*, that the defendants have demonstrated that there are no genuine issues of material fact, the burden shifts to the plaintiff to demonstrate that specific, material facts exist which give rise to a genuine issue. <u>Celotex Corp.</u>, 477 U.S. at 324. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. <u>Celotex Corp.</u>, 477 U.S. at 322. See also <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

To do this, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Having done so, in determining whether a genuine issue of material fact exists, the court must construe or view all the facts in the record and inferences from those facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Glynn, 710 E3d at 213 (citing Bonds v. Leavitt, 629 E.3d 369, 380 (4th Cir. 2011)). Under this standard, the evidence of the non-moving party is to be believed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Mr. Seyoum has filed an affidavit in support of his opposition to the Motion for Summary Judgment. In his affidavit, together with the Amended Complaint, Mr. Seyoum makes out every element of the tort of assault. For the purpose of summary judgment, Mr. Seyoum's evidence is to be believed. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. Also, the court must construe or view all the facts in the record and inferences from those facts in the light most favorable to the non-moving party. See Anderson, 477 U.S. at 255. Glynn, 710 E3d at 213.

The court must believe Mr. Seyoum's version of the events of the first encounter. Also, if the court must construe or view all facts in the record in the light most favorable to Mr. Seyoum, the Court must conclude that after the first trial date, the relationship between Mr. Seyoum and Mr. Sims was such that any encounter the following morning would not be cordial, at a minimum. The court should also draw the inference that once Mr. Seyoum made the initial request and Mr. Sims refused, the second repeated request would likely draw a more aggressive response from Mr. Sims. The court must believe

that Mr. Sims advanced towards Mr. Seyoum in a manner that would cause Mr. Seyoum to believe that Mr. Sims would harm or injure him.

For the second incident, certain facts also stand out. While Mr. Sims denies making any threatening advances on Mr. Seyoum and argues strenuously that he did not take any action or engage in any conduct a reasonable person would consider threatening, these assertions are directly contradicted by the defendants' own evidence. For the second incident in the lobby of the courthouse, all parties and witnesses agree that Mr. Seyoum approached Mr. Sims again while Mr. Sims was in conversation with his client and other attorneys. All parties also agree that Mr. Seyoum requested something of Mr. Sims and that Mr. Sims refused.

Some witnesses stated that Mr. Sims left the group to speak to Mr. Seyoum. But two witnesses stated more than that. Mr. Seyoum stated that Mr. Sims advanced towards him in a threatening manner. Mr. Thomas testified to having to step between Mr. Sims and Mr. Seyoum. Mr. Canter testified to having to physically draw Mr. Sims back into the "huddled" group. Even though the court must at this point believe Mr. Seyoum's version of this evidence (affidavit and Amended Complaint), the conduct of Mr. Thomas and Mr. Canter corroborate Mr. Seyoum's evidence that Mr. Sims advanced towards in a manner that would make a reasonable believe that he was in danger of being struck or harmed. The court must infer that Mr. Sims advanced towards Mr. Seyoum in an unlawfully threatening manner. This is the only conclusion to reach unless the defendants would want this court to believe that both Mr. Thomas and Mr. Canter are not truthful or that both lawyers acted unreasonably under the circumstance. Something caused both

men to step between Mr. Sims and Mr. Seyoum. And what is that something? If Mr. Seyoum, Mr. Thomas, and Mr. Canter felt the same need to take some physical precaution, Mr. Seyoum's belief that Mr. Sims would harm him was entirely reasonable. If the court must view the response of Mr. Thomas and Mr. Seyoum in the light most favorable to Mr. Sims, summary judgment is inappropriate for assault.

The defendant also argue that the tort of battery could not survive summary judgment. At this juncture, the court must believe Mr. Seyoum's evidence. The essence of the tort of battery is a harmful or offensive touching. Mr. Seyoum alleged in his affidavit that while Mr. Thomas was trying to prevent Mr. Sims from reach him, Mr. Sims "attempted to maneuver around Mr. Thomas to continue advancing toward Mr. Seyoum, and in the process Mr. Sims pushed Mr. Thomas who pushed into Mr. Seyoum while he, Mr. Thomas, maintained his physical restraint of Mr. Sims.

## **CONCLUSION**

By their own affidavits, the defendants failed to demonstrate that there is no issue of material fact in genuine dispute. The defendants also failed to show that they are entitled to judgment as a matter of law on the claims of assault and battery. The plaintiff, for his part, has demonstrated by this Amended Complaint and affidavit, that there are numerous unresolved material facts in genuine dispute between the parties. Finally, the responses of Mr. Canter and Mr. Thomas demonstrate that Mr. Seyoum's fear of injury or harm was reasonable.

WHEREFORE, the plaintiff respectfully requests that the Court deny the defendants' Motion for Summary Judgment.

Respectfully submitted,

**THE ELIRA LAW FIRM, LLC**

/s/ Samuel Q. Elira Sr.,
Samuel Q. Elira Sr., Esquire
Client Protection Fund No.: 22164
5302 East Court Drive
Upper Marlboro, MD 20772
samelira@eliralawfirm.com
(301) 936-1418 (office)
(301) 218-9406 (fax)
(410) 934-4926 (cell)

# CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May 2026 a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. A copy of the foregoing will also be delivered by email to the following:

Justin S. Dunbar, Esquire (#27699)
**NILES, BARTON & WILMER, LLP**
111 S. Calvert Street
Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
Counsel for Defendants

/s/ Samuel Q. Elira Sr.,
Samuel Q. Elira Sr., Esquire

# EXHIBIT C

**Defendants' Reply Memorandum in Support of Motion for Summary Judgment**

Yoseph Seyoum v. Charles M. Sims, et al.

Case No. 25-3446-TDC

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **YOSEPH SEYOUM,** | * | |
| *Plaintiff*, | * | |
| v. | * | **Case No.: 25-3446-TDC** |
| **CHARLES M. SIMS, et al.,** | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CHARLES M. SIMS AND O'HAGAN MEYER, PLLC'S MOTION FOR SUMMARY JUDGMENT**

Defendants, Charles M. Sims and O'Hagan Meyer, PLLC (hereinafter "O'Hagan Meyer"), by their attorney, Justin S. Dunbar, and Niles, Barton & Wilmer, LLC, hereby submit this Reply Memorandum of Law in support of their Motion for Summary Judgment:

**OBJECTIONS TO OPPOSITION**

Defendant objects to Plaintiff's Affidavit filed with his Opposition, which failed to comply with F.R.Civ.P. 56(c)(4). The Rule states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." F.R.Civ.P. 56(c)(4). Throughout Plaintiff's Affidavit, he sets forth alleged facts that are not within his personal knowledge, new allegations for the first time in this litigation, and testimony regarding his opinion and belief of the motivations and intentions of others for which he has no personal knowledge, is not competent to state and would not be admissible at trial. Affidavits submitted to oppose a motion for summary judgment must contain admissible evidence and be based on personal knowledge. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Such Affidavits cannot be conclusory. *Id.*

Here, Plaintiff's Affidavit in to support his Opposition to Defendants' Motion for Summary Judgment fails to meet the applicable standard and contains his belief of the observations, impressions and intentions of other witnesses, many of whom are unnamed, as well as reference to the contents of security camera footage that is not a part of the record in the case.[1] For example, Plaintiff alleges that "[t]he courtroom clerks, other court staff and Mr. Sims client and assistant were present and witnessed the incident." *See* Plaintiff;s Affidavit at ¶ 3. Plaintiff also states "Mr. Sims's male assistant, Michael Thomas, who noticed Mr. Sims aggressive advance toward me, rushed forward and physically positioned himself between Mr. Sims and me, blocking his advances." *See* Plaintiff's Affidavit ¶ 9. Next, Plaintiff states "[t]his incident occurred in the presence of witnesses, jurors and members of the public." *See* Plaintiff's Affidavit ¶ 10. Plaintiff then states "physical intervention was required by his assistant to prevent further advance and harm." *See* Plaintiff's Affidavit ¶ 11. Plaintiff also conclusively and without knowledge states that "[c]ourthouse security camera footage will corroborate" the incident as he alleges, although Plaintiff has never produced any footage during discovery. *See*

---

[1] It should be noted that Plaintiff has filed a Notice of Intent to File a Motion to Extend Discovery for which this Court has scheduled a pre-motion conference for June 29, 2026, in part to obtain alleged security camera footage as well as to conduct depositions of witnesses Christopher Hoge and Michael Thomas, and deposition of Defendant Sims (Document No. 35). However, Plaintiff has provided no Affidavit required by F.R. Civ. P. 56(d) and/or 56(f) citing to any specific facts of the contents of the alleged video, its current existence, its unavailability prior to the close of discovery on March 12, 2026, or his attempts to obtain the alleged video prior to the filing of Defendant's Motion for Judgment despite clear knowledge of its potential existence. In fact, the record of the underlying case is clear that Plaintiff attempted to obtain an alleged security camera video of both the subject courtroom and lobby area outside the courtroom in post-trial and appellate motions. *See* **Reply Exhibit 1**, BATES-Stamped SIMS 01178-1185 containing the Circuit Court's denial of Mr. Seyoum's Motion for Court Order to Release Trial Dates Security Camera Footage and for Sanctions; the Appellate Court's denial of Mr. Seyoum's Motion to Compel Trial Court Action on Security Camera Footage Request; and Mr. Seyoum's previously filed Affidavit dated December 9, 2024 relevant to his motions, as well as **Reply Exhibit 2**, Plaintiff's January 22, 2025 email with Montgomery County Sheriff in which the Sheriff's Office notifies Mr. Seyoum that any requested video in no longer available.

Likewise, as it relates to the depositions of Defendant Sims and witnesses Hoge and Thomas, each of whom has provided sworn Answers to Interrogatories and sworn Affidavits, respectively, based on their personal knowledge in support of Defendants' Motion for Summary Judgment. The record is clear that each of these individuals were known to Plaintiff and named in Plaintiff's Amended Complaint. Nevertheless, Plaintiff made no attempt to depose them during the discovery period and has only requested them in response to Defendants' Motion for Summary Judgment.

These issues will be addressed in further detail with this Court at the scheduled pre-hearing conference. However, for purposes of Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment, there is no basis whatsoever for the court to re-open discovery and the conclusive references to these subjects in Plaintiff's Affidavit submitted to oppose summary judgment are entirely insufficient and improper.

Plaintiff's Affidavit at ¶ 12. In another illustrative example of his Affidavit in general, Plaintiff states that "I believe Mr. Sim's conduct was not a spontaneous reaction…but arose from accumulated frustration[.] His actions functioned as intimidation by an officer of the court directed at a pro se litigant during ongoing proceedings, intended to unnerve me and impede my effective presentation." *Id.* at ¶ 16. Another example of Plaintiff's irrelevant speculation insufficient under Rule 56(c): "Furthermore, during the trial when it was Mr. Sims's turn to cross-examine me, I testified in the court and informed the jury that Mr. Sims assaulted me in the courtroom. Surprisingly, Mr. Sims did not correct me, did not contradict me, did not call me a liar, did not ask me follow-up questions and clarify to the court and jury members about the incident. He did not ask me any follow up questions nor challenge my claim of assault. Surprisingly, right after I confronted him about the assault in court, he immediately stopped his cross-examination despite my insistence urging him to ask me more questions." See Plaintiff's Affidavit ¶ 17. And finally, in paragraph 18 of his Affidavit, which Plaintiff entitles "conclusion," he states: "Mr. Sims assaulted me twice during my trial – first inside the courtroom when he advanced on me after my request for a copy of his PowerPoint, and second outside the courtroom during a break when he again advanced and had to be physically restrained by his assistant….These incidents were witnessed and are corroborated by security footage."

In total, Plaintiff's Affidavit attempts to present self-serving evidence that would not be admissible in a last effort to survive summary judgment. Because the Affidavit fails to comply with the Rule so completely, this Court should strike Plaintiff's Affidavit or afford it no weight. See also *Minnesota Mining & Manufacturing Co. v. U.S. Rubber Co.*, 279 F.2d 409 (4th Cir. 1960); *Barwick v. Celetox*, 736 F.2d946 (4th Cir. 1984).

**REPLY ARGUMENT**

**I.      Plaintiff Has Failed to Establish a Prima Facie Case for Battery**

Plaintiff has failed to establish a *prima facie* claim against O'Hagan Meyer for battery. He has failed to allege facts to support an essential element to his claim for battery – an offensive touching – in his Amended Complaint or in his Opposition to Defendants' Motion for Summary Judgment. To reiterate, a plaintiff must show an "intentional touching of a person without that person's consent" to support a claim of battery. *White Pine Ins. Co. v. Taylor*, 233 Md. App. 479, 504 (2017) (quoting Maryland Pattern Jury Instructions § 15:2 (5th ed. 2017)).

In his most recent iteration of the facts, Plaintiff has again altered his story as can be seen in his Affidavit compared to his Amended Complaint or in his previous Affidavit dated December 9, 2024 attached herein in Reply Exhibit 1. He alleges that Mr. Michael Thomas, Mr. Sims' associate, was pushed into him while restraining Mr. Sims. It should be noted that this fact was not alleged in Plaintiff's Amended Complaint or his previous Affidavit. Instead, Plaintiff presents this fact in an untimely effort to survive summary judgment. This fact is expressly contradicted by Michael Thomas' Affidavit, which stated that he never touched Mr. Seyoum. *See* **Exhibit F** to Defendants' Motion for Summary Judgment at ¶ 12. Plaintiff has changed his story now in an attempt to generate a material fact in dispute, which this Court should expressly deny.

Additionally, it is conclusively established, pursuant to F.R. Civ.P. Rule 36(b), that Defendant Sims did not make contact with Plaintiff, did not make physical contact with any objects connected to Plaintiff, and did not cause anything to make physical contact with Plaintiff.  On March 19, 2026, Defendant Sims timely served Requests for Admissions on Plaintiff through Counsel.  *See* **Reply Exhibit 3**, Certificate of Discovery, as well as **Reply Exhibit 4**, email from Defense Counsel to Plaintiff's Counsel dated March 19, 2026, serving Requests for Admissions on Plaintiff.

Defendant's Request for Admission No. 1 states:

"Admit that Charles Sims did not make physical contact with you during the trial of July 22-26, 2024, as alleged in your Amended Complaint."

Defendant's Request for Admission No. 2 states:

"Admit that Charles Sims did not make physical contact with any objects immediately connected with your person during the trial of July 22-26, 2024, as alleged in your Amended Complaint."

Defendant's Request for Admission No. 3 states:

"Admit that Charles Sims did not cause anything to make physical contact with you, or with any objects connected to your person, during the trial of July 22-26, 2024, as alleged in your Amended Complaint.

*See* **Reply Exhibit 5.**

Pursuant to F.R. Civ.P. 36(a)(3), "a matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  To date, after 80 days since being served with the requests, neither Plaintiff nor Plaintiff's counsel has served an answer or objection to these matters and they are deemed admitted and conclusively established under the Federal Rules.

Notwithstanding the fact that Mr. Thomas contradicts Plaintiff's bald assertions, assuming all facts as true, Plaintiff has failed to articulate a claim of battery against any of the named Defendant. There are no allegations to support a claim of battery and no allegations that any of the Defendants committed an offensive touching against him. Moreover, the fact that no physical contact was made or caused to be made by anything else upon Plaintiff is a conclusively established fact under the Federal Rules.  As a matter of law, Defendants are entitled to judgment as a matter of law on Plaintiff's claim for battery.

## II. Plaintiff Has Not Stated a Legally Cognizable Claim for Assault

There are no facts to support Plaintiff's meritless allegation that an assault occurred. Plaintiff again relies on his self-serving affidavit in a scheme to survive summary judgment by continuing to change the facts and manufacture new facts at this late stage in the case. As set forth in Defendants' Motion for Summary Judgment, Plaintiff must prove 1) that he was threatened by a defendant who possessed the apparent present ability to carry out that threat, and 2) the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm. *Lee v. Pfeifer*, 916 F. Supp. 501, 505-06 (D. Md. 1996).

Plaintiff's response to Defendants' argument for summary judgment relies on Plaintiff's subjective recounting of the facts, instead of analyzing the perspective of a reasonable person. *See id.* at 506. Additionally, Plaintiff attempts to distinguish the surrounding circumstances of the setting of his allegations because it does not favor his subjective characterization of the facts. The surrounding circumstances are highly relevant to the objective standard of a reasonable person. The uncontroverted facts are that Plaintiff was within a court of law with Mr. Sims, a duly appointed officer of the court, while surrounded by courtroom staff and Sheriff's deputies when he allegedly was assaulted. Plaintiff's unsubstantiated assertions fly in the face of reason.

Even assuming Plaintiff's allegations as true under the standard for summary judgment, the statement "I know what you are doing" does not show intimidating behavior. No reasonable person would have interpreted Mr. Sims' alleged conduct as a threat. Saying "I know what you are doing"—unaccompanied by any other act demonstrating an intent to cause bodily harm—does not constitute an objectively reasonable threat of imminent bodily harm. At no point does Plaintiff allege that Mr. Sims threatened physical harm, used language threatening to cause harm, or took action suggesting imminent bodily harm to substantiate his claim for assault. Plaintiff's Opposition presents no genuine dispute fact to establish an assault under the law.

6

Even drawing all reasonable inferences in Plaintiff's favor, no reasonable fact finder could grant him relief for assault as a matter of law. No juror could reasonably conclude from the undisputed facts that Defendant Sims threatened Plaintiff, and Plaintiff's assault claim must therefore fail.

**III.   Plaintiff Has Conceded that Defendants are Entitled to Summary Judgment on his Intentional Infliction of Emotional Distress by Failing to Respond**

Defendants argued that Plaintiff's claim for intentional infliction of emotional distress failed as a matter of law in its Motion for Summary Judgment. Plaintiff failed to respond to this argument in his Opposition or address this count at all. "It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded." *Wilkins v. Jackson*, 750 F.Supp. 2d 160, 162 (2010) (citations omitted). Based on Plaintiff's failure to even respond to Defendant's argument, Defendant is entitled to judgment as a matter of law as to Plaintiff's claim for intentional infliction of emotional distress.

**IV.   Plaintiff's claimed damages are speculative and not causally related to his claims.**

Moreover, Plaintiff has also failed to respond to Defendant's argument that his damages are all speculative and not recoverable. This Court should treat this issue as conceded as well. *See Wilkins*, 750 F.Supp. 2d at 162. To the extent that this Court reaches Plaintiff's claim for damages, Defendants reiterate that Plaintiff's claimed damages are unsupported by evidence and lack a legally cognizable causal connection to the alleged conduct. Plaintiff's claims are not cognizable under Maryland law and are foreclosed by the Appellate Court of Maryland's decision affirming the judgment against him. Defendants are entitled to judgment as a matter of law that Plaintiff's claimed damages are unsubstantiated and not recoverable.

## CONCLUSION

WHEREFORE, Defendants, Charles M. Sims and O'Hagan Meyer, PLLC, respectfully request that this Honorable Court enter summary judgment in their favor as requested in their Motion, and grant such other and further relief as the Court deems appropriate.

/s/ Justin S. Dunbar
Justin S. Dunbar, Esq. (# 27699)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  10th  day of June 2026, a copy of the foregoing Reply Memorandum of Law was sent via PACER and electronic mail to:

Samuel Elira, Esquire
Patricia Peterson, Esquire
5302 E. Court Drive
Upper Marlboro, Maryland 20774
Tel.: (301) 936-1418
sqelaw@gmail.com
ppetersoneliralaw@gmail.com
*Counsel for Plaintiff*

/s/ Justin S. Dunbar
Justin S. Dunbar, Esq. (# 27699)

# EXHIBIT D

**Defendant Charles M. Sims' Requests for Admission to Plaintiff**

Yoseph Seyoum v. Charles M. Sims, et al.

Case No. 25-3446-TDC

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| YOSEPH SEYOUM, | * | |
| *Plaintiff*, | * | |
| v. | * | **Case No.: 25-3446-TDC** |
| CHARLES M. SIMS, et al., | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT CHARLES M. SIMS' REQUESTS FOR ADMISSION TO PLAINTIFF YOSEPH SEYOUM

**TO:**  Yoseph Seyoum, *Plaintiff*

**FROM:**  Charles M. Sims, *Defendant*

## INSTRUCTIONS

1. Defendant is required to respond to each and every Request for Admission. A failure to admit to one Request for Admission does not excuse Defendant from responding to any or all other Requests for Admission.

2. In accordance with Rule 36 of the Federal Rules of Civil Procedure, for each Request for Admission, if Defendant's answer is anything other than an unqualified admission, the answer shall specifically deny the matter or set forth in detail the reasons Defendant cannot truthfully answer or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that Defendant qualify an answer or deny only a part of the matter of which an admission is requested, Defendant shall specify so much of it as is true and qualify or deny the remainder.

3. These Requests shall be deemed continuing so as to require further and supplemental response if Defendant locate or obtain additional information which may impact Defendants responses hereto between the time of initial response and the time of any hearing or trial in the above-captioned matter.

## DEFINITIONS

As used in these Requests for Admission, the following terms are to be interpreted in accordance with these definitions:

(a) The term "person" includes any individual, joint stock company, unincorporated association or society, municipal or other corporation, the State, its agencies or political subdivisions, any court, or any other governmental entity.

EXHIBIT 5

(b)  The terms "you" and "your" include the person(s) to whom these Requests for Admission are addressed, and all of that person's agents, representatives, employees, insurers, attorneys, predecessors, parent organizations, and subsidiary and affiliate organizations.

(c)  The terms "document" or "documents" include all writings, drawings, graphs, charts, photographs, recordings, and other data compilations from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form.

(d)  The terms "identify," "identity" or "identification," when used in reference to a natural person, require you to state that person's full name, last known address, home and business telephone numbers, and present business affiliation. When used in reference to a person other than a natural person, the terms "identify," "identity" or "identification" require you to describe the nature of such person (that is, whether it is a corporation, partnership, etc. under the definition of "person" above), and to state that person's last known address, telephone number, and principal place of business. Once any person has been identified properly, it shall be sufficient thereafter when identifying that same person to state the name only.

(e)  The terms "identify," "identity" or "identification," when used in reference to a document, require you to state the date, title, present custodian, the author (or, if different, the signor or signors), the addressee, and the type of document (e.g., letter, memoranda, telegram, chart, etc.). If any such document was, but is no longer in your possession or subject to your control, state what disposition was made of it and the reason for such disposition. In lieu of so identifying a document, at your option you may attach an accurate copy of it to your Answers to these Requests for Admission, appropriately labeled to correspond to the Request in response to which it is being produced.

(f)  Unless otherwise indicated, these Requests for Admission refer to the time, place and circumstances of the accident or occurrence mentioned or complained of in the pleading.

(g)  The term "photograph" as used herein includes still photographs, moving pictures, and videotapes.

(h)  Present tense should be construed as also including the past tense if appropriate.

(i)  The singular should be construed as also including the plural and the plural should be construed as also including the singular if appropriate.

(j)  If you are unable to answer any of these Requests completely, answer to the extent possible, specifically, and state whatever information or knowledge you have concerning the unanswered portion.

(k)  A document "relating" or "related to" any given subject matter means any document that pertains, refers, or discusses in any way, directly or indirectly, the subject requested, including document concerning the preparation of such documents.

(l)  The word "including" means by way of example and not by way of limitation.

(m)     The word "Occurrence(s)" means the alleged incidents giving rise to your claims which occurred between July 22 and July 26, 2024, and which is the subject of your Complaint.

----------------------------------------

1.      Admit that Charles Sims did not make physical contact with you during the trial of July 22 – 26, 2024, as alleged in your Amended Complaint.

2.      Admit that Charles Sims did not make physical contact with any objects intimately connected with your person during the trial of July 22-26, 2024, as alleged in your Amended Complaint.

3.      Admit that Charles Sims did not cause anything to make physical contact with you, or with any objects intimately connected with your person, during the trial of July 22-26, 2024 as alleged in your Amended Complaint.

4.      Admit that the copy of the jury trial transcript produced by Defendant as Bates SIMS 00001-00954 is a true, authentic, and genuine copy of the original.

5.      Admit that the copy of Motion for Court Order to Release Trial Dates Security Camera Footage and For Sanctions produced by Defendant as Bates SIMS 00954-00990 is a true, authentic, and genuine copy of the original.

6.      Admit that the copy of Motion to Compel Trial Documents Used by Plaintiff/Counterclaim Defendant and for Sanctions produced by Defendant as Bates SIMS 00991-01026 is a true, authentic, and genuine copy of the original.

7.      Admit that the copy of Defendant/Counterclaim Plaintiff's Reply to Opposition to Motion to Compel Trial Documents and for Sanctions produced by Defendant as Bates SIMS 01027-01044 is a true, authentic, and genuine copy of the original.

8.      Admit that the copy of Appellant's Motion to Compel Trial Court Action on Security Camera Footage Request produced by Defendant as Bates SIMS 01045-01086 is a true, authentic, and genuine copy of the original.

9. Admit that the copy of Appellees' Opposition to Appellant's Motion to Compel Production of Powerpoint Presentation for Record Extract produced by Defendant as Bates SIMS 01087-01089 is a true, authentic, and genuine copy of the original.

10. Admit that the copy of Appellant's Motion to Compel Trial Court Action on Pending Motion to Compel Production of Powerpoint Presentation produced by Defendant as Bates SIMS 01090-01128 is a true, authentic, and genuine copy of the original.

11. Admit that the copy of Appellant's Reply to Appellees' Opposition to Motion to Compel Trial Court Action on Security Camera Footage Request and Powerpoint Presentation produced by Defendant as Bates SIMS 01129-01139 is a true, authentic, and genuine copy of the original.

12. Admit that the copy of Defendant/Counterclaim Plaintiff's Motion to Expedite Hearing on Motion for Court Order to Release Trial Dates Security Camera Footage and for Sanctions produced by Defendant as Bates SIMS 01140-01149 is a true, authentic, and genuine copy of the original.

13. Admit that the copy of Defendant/Counterclaim Plaintiff's Emergency Motion to Compel Ruling on Pending Motions and for Immediate Preservation Order produced by Defendant as Bates SIMS 01150-01163 is a true, authentic, and genuine copy of the original.

14. Admit that the copy of Defendant/Counterclaim Plaintiff's Amended Emergency Motion to Compel Ruling on Pending Motions and for Immediate Preservation Order with Rule 1-351(B) Certification produced by Defendant as Bates SIMS 01164-01177 is a true, authentic, and genuine copy of the original.

15. Admit that the copy of Defendant/Counterclaim Plaintiff's Amended Emergency Motion to Compel Ruling on Pending Motions and for Immediate Preservation Order with Rule 1-

4

351(B) Certification produced by Defendant as Bates SIMS 01164-01177 is a true, authentic, and genuine copy of the original.

16. Admit that the copy of Affidavit of Yoseph Seyoum produced by Defendant as Bates SIMS 01180-01210 is a true, authentic, and genuine copy of the original.

/s/ Justin S. Dunbar
Justin S. Dunbar, Esq. (# 27699)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2026, a copy of the foregoing Requests for Admission was sent via electronic mail to:

Samuel Elira, Esquire
Patricia Peterson, Esquire
5302 E. Court Drive
Upper Marlboro, Maryland 20774
Tel.: (301) 936-1418
sqelaw@gmail.com
ppetersoneliralaw@gmail.com
*Counsel for Plaintiff*

/s/ Justin S. Dunbar
Justin S. Dunbar, Esq. (# 27699)

# EXHIBIT E

## Certificate of Discovery serving Requests for Admission

Yoseph Seyoum v. Charles M. Sims, et al.

Case No. 25-3446-TDC

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| YOSEPH SEYOUM, | * | |
| Plaintiff, | * | |
| v. | * | **Case No.: 25-3446-TDC** |
| CHARLES M. SIMS, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF DISCOVERY

I HEREBY CERTIFY that on this 19th day of March 2026, copies of the foregoing were electronically served via secured electronic mail to Plaintiff's counsel:

1.  Defendant Charles M. Sims' Requests for Admission to Plaintiff Yoseph Seyoum; and

2.  This Certificate of Discovery.

Respectfully submitted,

*/s/ Justin S. Dunbar*

Justin S. Dunbar, Esq. (# 27699)
Joshua B. Keyser, Esq. (#31406)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
Tel.: (410) 783-6432
Fax: (410) 783-6483
jsdunbar@nilesbarton.com
jbkeyser@nilesbarton.com
*Counsel for Defendants*

EXHIBIT 3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March 2026 a copy of Defendant's Certificate

of Discovery was electronically served on:

Samuel Elira, Esquire
5302 E. Court Drive
Upper Marlboro, Maryland 20774
Tel.: (301) 936-1418
sqelaw@gmail.com
*Counsel for Plaintiff*

*/s/ Justin S. Dunbar*
Justin S. Dunbar, Esq. (# 27699)

# EXHIBIT F

**March 19, 2026 email serving Requests for Admission on Plaintiff's former counsel**

Yoseph Seyoum v. Charles M. Sims, et al.

Case No. 25-3446-TDC

## Justin S. Dunbar

| | |
|---|---|
| **From:** | Joshua B. Keyser |
| **Sent:** | Thursday, March 19, 2026 5:20 PM |
| **To:** | sqelaw@gmail.com |
| **Cc:** | Justin S. Dunbar; Mary F. Greenberg |
| **Subject:** | Seyoum v. Sims, et al. - Requests for Admission |
| **Attachments:** | Requests for Admission to Plaintiff Seyoum from Defendant Sims.pdf; COS - Requests for Admission to Plaintiff Seyoum from Defendant Sims.pdf |
| **Categories:** | ND: Filed |

Mr. Elira,

Please find attached Defendant Charles Sims' Requests for Admission to Plaintiff.

Best,
Josh Keyser

Joshua B. Keyser, Esq. | Associate Attorney

**NILES·BARTON&WILMER** LLP
Trusted Legal Advisors Since 1838

**Niles, Barton & Wilmer, LLP**
111 South Calvert Street, Suite 1400
Baltimore, Maryland 21202
Direct: (410) 783-6465 | Fax: (410) 783-6449
jbkeyser@nilesbarton.com | www.nilesbarton.com
**Admitted to practice in Maryland, Virginia, and the District of Columbia**

NOTICE: This message and any attachments may constitute a confidential attorney-client communication, protected attorney work-product, or other privileged or confidential information. It is intended only for the designated and intended recipient(s). It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this communication in error or are not an intended recipient, do not review, disseminate, distribute or copy it. Notify the sender by reply e-mail or by calling (410)783-6300, and delete it from your system. Thank you.

EXHIBIT 4

# EXHIBIT G

**SIMS 01178-1185: orders and records concerning requests for courthouse security footage and PowerPoint materials**

Yoseph Seyoum v. Charles M. Sims, et al.

Case No. 25-3446-TDC

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| CROWLEY, HOGE & FEIN, P.C. | ) |
| | ) |
| Plaintiff/Counterclaim Defendant | ) |
| | ) |
| v. | )    Case No. C-15-CV-22-004124 |
| | ) |
| YOSEPH SEYOUM | ) |
| | ) |
| Defendant/Counterclaim Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| CHRISTOPHER G. HOGE | ) |
| | ) |
| Counterclaim Defendant | ) |

## ORDER AS TO AMENDED EMERGENCY MOTION AND MOTION TO COMPEL

**UPON CONSIDERATION** and review of the Defendant/Counterclaim Plaintiff's

Amended Emergency Motion to Compel Ruling on Pending Motions and for Immediate

Preservation Order ("Emergency Motion") and Defendant/Counterclaim Plaintiff's Motion for

Court Order to Release Trial Dates Security Camera Footage and for Sanctions ("Camera
31st of July, 2025
Preservation Motion"), it is this ___ day of July, 2025,
07/31/2025 7:45:27 AM

**Ordered**, that the Emergency Motion and Camera Preservation Motion be, and hereby are

**DENIED.**

_____
Judge

**Ronald B. Rubin**

Entered: Clerk, Circuit Court for
Montgomery County, MD
July 31, 2025

**SIMS 01178**

EXHIBIT 1

YOSEPH SEYOUM,            *     IN THE

       Appellant,          *     APPELLATE COURT

       v.                  *     OF MARYLAND

CROWLEY, HOGE & FEIN, P.C., *et al.*,    *     No. 1435, September Term 2024

       Appellees.          *     MDEC: ACM-REG-1435-2024

                                   *     (Cir. Ct. No. C-15-CV-22-004124)

        *    *    *    *    *    *    *    *    *    *    *    *    *

## ORDER

Upon consideration of appellant's "Motion to Compel Trial Court Action on Security Camera Footage Request" and "Motion to Compel Trial Court Action on Pending Motion to Compel Production of PowerPoint Presentation," the appellees' "Opposition to Appellant's Motion to Compel Production of PowerPoint Presentation for Record Extract" and "Opposition to Appellant's Motion to Compel Trial Court Action on Security Camera Footage Request and to Compel Trial Court Action on Pending Motion to Compel Production of PowerPoint Presentation," and the appellant's Reply thereto, it is, this 10th day of February 2025, by the Appellate Court of Maryland,

ORDERED that the appellant's motions are denied.



Judge's Signature Appears on
Original Order
Gregory Wells, Chief Judge

**IN THE CIRCUIT COURT**
**FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| CROWLEY, HOGE & FEIN, P.C. ) | |
| ) | |
| Plaintiff/Counterclaim Defendant ) | |
| ) | |
| v. ) | Case No. C-15-CV-22-004124 |
| ) | |
| YOSEPH SEYOUM ) | |
| ) | |
| Defendant/Counterclaim Plaintiff, ) | |
| Pro se ) | |
| v. ) | |
| ) | |
| CHRISTOPHER G. HOGE ) | |
| ) | |
| Counterclaim Defendant ) | |

**AFFIDAVIT OF YOSEPH SEYOUM**

I, Yoseph Seyoum, being duly sworn, depose and state as follows:

**I. Background**

1. I am the Defendant/Counterclaim Plaintiff in the above-captioned matter and am competent to testify to the matters stated herein.

2. I represent myself *pro se* in this case, which is now on appeal, which involves significant factual and procedural issues requiring a complete and accurate record for appellate review.

3. I submit this affidavit in support of the following motions:

- Motion to compel Trial Documents Used by Plaintiff/Counterclaim Defendant, filed on December 9, 2024; and

- Motion for Court Order to Release Trial Dates Security Camera Footage, filed on December 9, 2024.

**SIMS 01180**

4. The facts stated herein provide evidence supporting the allegations of misconduct by Plaintiff's counsel, Charles Sims, and establish the necessity of the relief requested in both motions.

## II. Efforts to Obtain Trial Documents

5. During the trial proceedings, Plaintiff's counsel, Charles Sims, used a PowerPoint presentation during his opening statement. This presentation contained visual materials and arguments that I believe misrepresented key facts critical to the case.

6. On July 23, 2024, I requested a copy of the PowerPoint presentation directly from Mr. Sims during trial. My request was ignored.

7. Following the trial, I sent written follow-up requests to Mr. Sims on October 1, 2024, and December 4, 2024, asking for a copy of the PowerPoint presentation. Copies of these emails are attached hereto as **Exhibits A and B.**

8. As of the date of this affidavit, Mr. Sims has failed to respond to my emails or provide the requested document, necessitating the filing of the Motion to Compel.

## III. Incidents of Misconduct and Aggression

### A. First Incident: July 22, 2024

9. On or about July 23, 2024, during the second day of trial, I approached Mr. Sims and politely asked for a copy of the PowerPoint presentation he had used during his opening statement.

10. Mr. Sims immediately turned toward me, pointing his fingers and aggressively stating, "I know what you are doing" repeatedly. Startled by his verbal and physical response, I stepped backward, raising my hands and calmly stating, "Mr. Sims, what are you doing? Calm down." He continued to approach me, forcing me to

**SIMS 01181**

walk backward approximately 6-10 feet toward the judge's chambers. I was shocked and in fear for my safety.

11. I immediately notified everyone in the room of Mr. Sims's aggressive behavior, but no one acknowledged the incident or intervened. This left me feeling humiliated, disrespected, and emotionally distressed. Despite this, I gathered myself and continued with the trial.

**B. Second Incident: July 24, 2024**

12. In or around July 24, 2024, on or about July 24, 2024, during a midday break, I approached Mr. Sims - this time outside the courtroom - to discuss my witness list and the PowerPoint presentation.

13. He again responded aggressively, walking toward me in a threatening manner, stating, "I know what you are up to," and admonishing me.

14. Startled, I took a few steps backward. Mr. Sims's assistant, Mr. Thomas, intervened, physically restraining Mr. Sims and preventing the situation from escalating further. Jurors and others witnessed this incident, which I believe was a deliberate attempt to provoke me and create a false perception of aggression.

15. Witnesses to this incident included Mr. Hoge, Mr. Canter, Mr. Thomas, and others, including the jurors.

16. This incident was particularly distressing as it occurred in the presence of jurors, which I believe unfairly influenced their perception of me and the case. Despite the provocation, I remained calm and attempted to de-escalate the situation.

17. I believe that Mr. Sims's behavior was not only aggressive but also intentionally provocative. His actions seemed designed to try paint me as an "angry black man" and to discredit me in the eyes of the court and jury. This tactic, I believe,

**SIMS 01182**

was a dehumanizing attempt to provoke an emotional reaction, which I resisted by remaining calm and composed.

18. I find it deeply insulting that Mr. Sims would presume I could not control my emotions. His actions were unprofessional and indicative of his inability to maintain composure during the trial, particularly as his case weakened. This pattern of behavior disrupted the proceedings and undermined the fairness of the trial environment.

19. This confirmed for me that Mr. Sims's actions were not only unprofessional but also dehumanizing, as they were designed to exploit stereotypes and provoke me into reacting emotionally, which I resisted.

20. Throughout the trial, Mr. Sims continuously objected to my motions, witnesses, and even his own client's witnesses and experts.

21. Despite my efforts to present my case, I was repeatedly obstructed by Mr. Sims and opposing counsel, with the judge often siding with them. It became clear that I was not being allowed to put on my case as I wanted because I was winning. This entire experience was dehumanizing, unprofessional, and unfair.

## IV. Impact on My Case

22. The repeated acts of aggression by Mr. Sims during trial disrupted the decorum of the proceedings and hindered my ability to focus on presenting my defense effectively.

23. I believe these incidents were intentional attempts to provoke me into reacting emotionally in a way that could discredit me in front of the court and jury.

24. Despite these challenges, I maintained composure throughout the trial and continued to pursue justice through lawful and procedural means.

**SIMS 01183**

25. I raised these incidents with the Court during trial to ensure they were part of the record, specifically on pages 68 and 69 of the transcript of the trial, a true and correct copy of which is attached hereto as **Exhibit C.** Despite these efforts, no corrective action was taken to address the impact of opposing counsel's misconduct.

**V. Need for Security Footage**

26. Security camera footage from the trial days is essential to corroborate my account of these incidents and demonstrate the pattern of aggressive and obstructive behavior by Mr. Sims.

27. The footage will also serve as critical evidence for my appeal, ensuring that the appellate court has a complete record of the trial's proceedings and irregularities.

28. The security footage is particularly important to verify the second incident, which occurred in front of jurors and likely influenced their perception of me, thereby prejudicing the outcome of the trial.

29. I respectfully request that the Montgomery County Sheriff's Office preserve and release the security footage from July 22, 2024, through July 26, 2024.

30. The failure to preserve and release this footage promptly will irreparably harm my ability to substantiate my claims on appeal and address the procedural irregularities that occurred during the trial.

**VI. Good Faith Efforts**

31. I have made every reasonable effort to resolve these issues without court intervention, including multiple written requests to Plaintiff's counsel for the PowerPoint presentation.

**SIMS 01184**

32. My emails dated October 1, 2024, and December 4, 2024, clearly outline my requests and the urgency of the matter. Despite these efforts, I have received no response from Plaintiff's counsel.

**VII. Conclusion**

33. The relief sought is necessary to ensure a fair and complete appellate process and to address the misconduct and procedural irregularities that occurred during trial.

I declare under penalty of perjury under the laws of the State of Maryland that the foregoing is true and correct.

Dated: December 9, 2024

*Yoseph Seyoum*
*/s/ Yoseph Seyoum*
Yoseph Seyoum
Defendant/Counterclaim Plaintiff, *pro se*

STATE OF TEXAS COUNTY OF TARRANT
Sworn and subscribed before me this 9th day of December, 2024.

Jerry W Johnson
Notary Public: Notary Public, State of Texas

My Commission Expires: 07/28/2026

Jerry W Johnson
ID NUMBER
568607-3
COMMISSION EXPIRES
July 28, 2026

Electronically signed and notarized online using the Proof platform.

SIMS 01185

# EXHIBIT H

**January 22, 2025 email with the Montgomery County Sheriff's Office concerning courtroom security footage**

Yoseph Seyoum v. Charles M. Sims, et al.

Case No. 25-3446-TDC



**Joe Scott <joe.scott@phantomalert.com>**

# Re: 2023 MPIA 0013 -- Request for Courtroom Security Footage (Yoseph Seyoum v. Carlos Salvado et al.

**Joe Scott** <Joe.Scott@phantomalert.com>                              Wed, Jan 22, 2025 at 5:47 PM
To: "Feldenzer, Christopher M." <Christopher.Feldenzer@montgomerycountymd.gov>

Dear Lt. Col. Christopher M. Feldenzer,

My name is Yoseph Seyoum, and I am a Pro Se Plaintiff/Counter Defendant in Circuit Court Case No. C-15-CV-22-004124. The case was set for a 5-day jury trial starting Monday, July 22, 2024, and was assigned to and heard by Judge Rubin in Courtroom 7, South Tower. The case is now on appeal with the Appellate Court of Maryland, Case No. ACM-REG-1435-2024.

I am writing to formally request a copy of the security camera footage for the dates of July 22–26, 2024, covering inside and outside Courtroom 7 in the South Tower. This footage is critical for my appeal.

**I filed the attached motion with the Circuit Court on December 9, 2024, requesting the same, but I have not received any response.** I kindly ask for your guidance on how to proceed to obtain the footage. Additionally, I request that you ensure the security camera footage is preserved to prevent its deletion while this matter is being addressed.

Thank you for your attention to this matter. I greatly appreciate your assistance.

Respectfully,


Yoseph Seyoum

(Attachment: Motion filed on December 9, 2024)


On Mon, Jul 10, 2023 at 3:30 PM Feldenzer, Christopher M. <Christopher.Feldenzer@montgomerycountymd.gov> wrote:

> Dear Mr. Seyoum –
>
>
> This e-mail is a follow-up to our initial telephone conversation on June 26, 2023, and a subsequent voice mail message that I left for you on June 28, 2023. As I have noted in my June 26 voice mail message, the security camera video footage that you sought in your written request covering the trial in which you were the plaintiff, *Yoseph Seyoum v. Carlos Salvado et al.,* CSA-Reg-1007-2022 (Courtroom 8A), and that is currently on appeal, was no longer available at the time of your request. Typically, such security video footage is available for approximately six (6) months and, even assuming it is available for release under the Maryland Public Information Act, such requests are subject to indivdual approval by the presiding judge for the case and/or the Circuit Court Administrative Judge.
>
>
> If you have any further questions regarding this request, please contact the undersigned. Thank you.
>
>
> *Lt. Col. Christopher M. Feldenzer*
>
> *Assistant Sheriff*
>
> Montgomery County Sheriff's Office

EXHIBIT 2

50 Maryland Ave., Room 4226 North

Rockville, MD 20850

Office # (240) 777-7120  Cell # (410) 206-1464

Christopher.Feldenzer@montgomerycountymd.gov

*This communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system.*

*Metadata: This e-mail transmission and any accompanying material may contain embedded metadata. Any included metadata is confidential or privileged information and is not intended to be viewed by any recipient.*



**For more helpful Cybersecurity Resources, visit: https://www.montgomerycountymd.gov/cybersecurity**

--
Joseph Seyoum |CEO | PhantomALERT INC. |Joe.Scott@PhantomALERT.com |
Direct: 703.975.8957 | Land: 800. 725. 8425 |  www.PhantomALERT.com |

Now responding to the global call to action to stop Coronavirus Pandemic.

PhantomALERT's Coronavirus real-time reporting, tracking, viewing & mapping tool.

Please comment & share.

Free Demo Videos:

https://youtu.be/dj-idJPR_nw

https://youtu.be/k06IVSMNzTM?t=83

Please support PhantomALERT in

PhantomALERT v Apple, Inc.
https://www.openappmarketsact.org/

DOJ v Apple, Inc.

https://www.justice.gov/d9/2024-03/420763.pdf

'Even stronger' than imagined: DOJ's sweeping Apple lawsuit draws expert praise
https://www.theverge.com/2024/3/22/24109033/doj-apple-antitrust-lawsuit-legal-expert-praise

Our story. Part 1.
https://youtu.be/VUptyABtEVs?si=7ByJvl0gMKcrPbl6

Part 2.
https://youtu.be/NXy056OF_b8?si=3WrMMHQkdB8nVwhY

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

**Motion for Court Order Decemner 9 2024.pdf**
159K