# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

**YOSEPH SEYOUM,**
Plaintiff,

Civil Action No. 8:25-cv-03446-AAQ

**CHARLES M. SIMS, et al.,**
Defendants.

## PLAINTIFF'S REPLY IN SUPPORT OF HIS PENDING MOTIONS AND RESPONSE TO DEFENDANTS' OMNIBUS OPPOSITION

Plaintiff Yoseph Seyoum ("Plaintiff" or "Seyoum"), proceeding pro se, respectfully submits this Reply in support of his pending motions and in response to Defendants Charles M. Sims and O'Hagan Meyer, PLLC's Omnibus Response, ECF No. 51.

### INTRODUCTION

Defendants seek summary judgment based substantially upon an incomplete factual record created while Plaintiff was represented by former counsel who did not conduct the discovery Plaintiff believed was necessary, did not depose Defendant Sims or the material eyewitnesses, did not pursue courthouse security footage, did not timely respond to Defendants' Requests for Admission, and did not request an extension of discovery before the deadline expired.

Plaintiff should not be deprived of an adjudication on the merits because former counsel failed to carry out essential litigation responsibilities, particularly where Plaintiff retained counsel for the specific purpose of protecting his interests and developing the evidentiary record. Plaintiff did not knowingly decide to abandon discovery, concede the absence of physical contact, or admit facts that would dispose of his claims. To the contrary, Plaintiff has consistently maintained that the incidents occurred, requested preservation and production of objective video evidence, sought witness testimony, and attempted to bring the incidents to the attention of the courts and other authorities.

Defendants' own affidavits confirm important portions of Plaintiff's account, including that Defendant Sims moved toward Plaintiff during the second incident, that Michael Thomas placed himself between Sims and Plaintiff, and that Bradley Canter physically intervened and escorted or pulled Sims away. The parties disagree about the speed, aggressiveness, purpose, proximity, physical contact, and effect of those movements. Those disagreements present genuine disputes of material fact that should be resolved through discovery and, ultimately, by a jury.

For these reasons, Plaintiff respectfully requests that the Court permit withdrawal or amendment of the deemed admissions, accept Plaintiff's supplemental declaration and related submissions, reopen discovery for limited purposes, authorize the requested subpoenas, require production of the PowerPoint presentation, and deny or defer Defendants' request for summary judgment.

# I. PLAINTIFF SHOULD NOT BE PUNISHED FOR FORMER COUNSEL'S FAILURE TO DEVELOP THE CASE

Defendants repeatedly characterize the incomplete record as the product of Plaintiff's personal lack of diligence. That characterization overlooks the practical reality that Plaintiff retained counsel and reasonably relied upon counsel to perform the basic functions of representation.

1. conduct meaningful discovery before the deadline;
2. depose Defendant Sims and the known eyewitnesses;
3. obtain relevant documents and electronically stored information;
4. pursue the courthouse security-camera footage;
5. timely respond to Defendants' Requests for Admission;
6. seek an extension of discovery when it became apparent that necessary discovery had not been completed;
7. follow Plaintiff's reasonable instructions regarding development of his case; and
8. avoid withdrawing at a stage that would leave Plaintiff severely disadvantaged.

Plaintiff did not intentionally waive these matters. He did not instruct counsel to permit the discovery deadline to expire, abandon the depositions, ignore the Requests for Admission, or concede that Sims did not cause physical contact. Plaintiff retained counsel precisely because he needed professional assistance navigating federal procedure and developing the evidentiary record.

Defendants argue that Plaintiff could have bypassed his attorney, personally supervised every discovery obligation, or independently sought relief from the Court while represented. That position imposes an unrealistic burden upon a represented litigant. A client ordinarily relies on counsel to calendar deadlines, respond to discovery, conduct depositions, file appropriate motions, and advise the client regarding procedural requirements.

Plaintiff's conduct after learning of these omissions confirms that he did not knowingly accept them. After former counsel withdrew, Plaintiff promptly filed motions seeking to correct the omissions, withdraw or amend the deemed admissions, obtain limited discovery, subpoena objective evidence, and place his complete account before the Court. Those actions are consistent with an effort to obtain consideration of the merits, not an effort to manufacture a new claim.

The requested relief is limited and proportional. Plaintiff is not requesting unlimited discovery or an indefinite postponement. He seeks targeted depositions, limited third-party subpoenas, production of a specific PowerPoint presentation, and a fair opportunity to develop evidence directly relevant to Defendants' summary-judgment arguments.

## II. WITHDRAWAL OR AMENDMENT OF THE DEEMED ADMISSIONS WOULD PROMOTE A DECISION ON THE MERITS

Federal Rule of Civil Procedure 36(b) permits withdrawal or amendment of admissions when doing so would promote presentation of the merits and the Court is not persuaded that withdrawal would prejudice the requesting party in maintaining or defending the action on the merits. Both requirements support relief here.

First, the deemed admissions concern whether Sims made or caused physical contact with Plaintiff. Those matters go directly to the central merits of the battery claim. Leaving the admissions in

place would effectively dispose of that claim because former counsel failed to serve responses, rather than because the evidence established that no contact occurred.

Plaintiff has consistently disputed the substance of the admissions. Plaintiff maintains that Sims advanced aggressively toward him and that Thomas, while intervening between them, was pushed or otherwise caused to make bodily contact with Plaintiff. Plaintiff did not intentionally admit the opposite.

Second, Defendants have not demonstrated the type of merits-based prejudice contemplated by Rule 36(b). The need to prove a disputed fact at trial is not, standing alone, unfair prejudice. Defendants have known from the beginning that Plaintiff alleged assault and battery arising from the two July 2024 incidents. Defendants have already obtained affidavits and interrogatory responses from their witnesses and have briefed the underlying factual issues.

Any additional burden can be addressed through a narrowly tailored discovery period allowing both sides to depose the relevant witnesses and supplement their submissions. Defendants may depose Plaintiff, question him concerning his account, and introduce admissible evidence contradicting him. What Defendants should not receive is judgment based upon procedural admissions that Plaintiff never authorized and that contradict his sworn account.

Withdrawal would allow the claims to be decided upon testimony and evidence rather than an inadvertent procedural default. It would therefore promote presentation of the merits as Rule 36(b) contemplates.

## III. THE AFFIDAVITS OF MICHAEL THOMAS AND BRADLEY CANTER CREATE, RATHER THAN ELIMINATE, MATERIAL FACTUAL DISPUTES

### A. The parties agree that Thomas positioned himself between Sims and Plaintiff

Thomas's presence between Sims and Plaintiff is significant. According to the existing accounts, Thomas observed the interaction and moved quickly into the space separating Sims from Plaintiff. A reasonable jury could infer that Thomas perceived a need to prevent Sims from reaching Plaintiff or to prevent the confrontation from escalating.

Plaintiff maintains that Sims was advancing aggressively, that Plaintiff took steps backward, and that Thomas intervened between them. Plaintiff further maintains that Sims continued pressing forward or attempted to move around Thomas, causing Thomas to come into bodily contact with Plaintiff.

Thomas reportedly states that he did not touch Sims and did not touch Plaintiff. That assertion does not resolve the dispute as a matter of law. It raises questions regarding:

9. how close the three individuals were to one another;
10. why Thomas moved between Sims and Plaintiff;
11. the speed and direction of each person's movement;
12. whether Sims continued advancing after Thomas intervened;
13. whether Thomas was pushed, forced, or displaced toward Plaintiff;
14. whether Thomas made contact while attempting to shield Plaintiff or restrain the confrontation; and
15. whether Thomas's present recollection is complete and accurate.

If Sims was advancing, Thomas was directly between the parties, and Plaintiff was retreating only a short distance, a jury could reasonably find that physical contact occurred even if Thomas now denies remembering or acknowledging it. The Court may not resolve such competing testimony, spatial questions, or credibility disputes against Plaintiff at summary judgment.

## B. Canter's physical intervention corroborates Plaintiff's description of an escalating confrontation

Bradley Canter's affidavit reportedly acknowledges that he physically intervened and pulled, escorted, or directed Sims back toward his group. That evidence supports Plaintiff's assertion that Sims was moving toward Plaintiff and that intervention was considered necessary.

The need for Canter to place his hands on Sims or pull Sims away is difficult to reconcile with Defendants' portrayal of an entirely calm exchange in which Sims merely stood still and firmly asked Plaintiff to back away. At minimum, Canter's intervention creates a factual question about Sims's demeanor, direction of movement, proximity to Plaintiff, and the perceived risk of further escalation.

A reasonable jury could conclude that Thomas and Canter intervened because Sims was upset and advancing toward Plaintiff. A jury could also conclude that contact between Thomas and Plaintiff occurred as a natural and foreseeable result of Sims's conduct, even if Sims did not personally place his own hands on Plaintiff.

## C. The physical dynamics cannot properly be resolved from affidavits alone

Defendants ask the Court to accept their witnesses' descriptions while rejecting Plaintiff's sworn account as "self-serving." Plaintiff's declaration is nevertheless competent evidence concerning events he personally experienced. Defendants' affidavits are also supplied by Sims's colleagues, clients, or persons aligned with him in the underlying litigation. Their credibility, potential bias, opportunity to observe, recollection, and internal consistency may properly be examined through deposition and cross-examination.

The parties disagree about whether Sims advanced aggressively, whether Plaintiff retreated, whether Thomas was preventing Sims from reaching Plaintiff, whether Sims pushed or displaced Thomas, whether Thomas contacted Plaintiff, whether Canter physically restrained Sims, why intervention by two individuals was necessary, and whether Plaintiff reasonably feared imminent harmful or offensive contact. Those are material factual issues for a factfinder.

## IV. THE FIRST INCIDENT INDEPENDENTLY PRESENTS A TRIABLE ASSAULT CLAIM

During the first incident inside the courtroom, Plaintiff requested a copy of the PowerPoint presentation after courthouse personnel directed him to request it from Sims. Plaintiff maintains that Sims became visibly angry, stated words to the effect of "I know what you are doing," and advanced toward Plaintiff as Plaintiff retreated several feet toward the bench.

Plaintiff's claim does not depend upon Sims physically touching him during this first incident. The assault claim concerns whether Sims intentionally placed Plaintiff in reasonable apprehension of imminent harmful or offensive contact.

The context, words, movements, distance, demeanor, and Plaintiff's reaction must be considered together. A jury could reasonably conclude that an angry attorney advancing toward an unrepresented

opposing litigant inside a courtroom, while making an accusatory statement and causing the litigant to retreat, placed that litigant in reasonable apprehension of imminent contact.

Defendants may attempt to characterize the encounter as brief or insignificant, but the duration of the incident does not eliminate the factual dispute. Plaintiff's testimony concerning Sims's demeanor and movement conflicts with Defendants' characterization. The Court should not decide which account is more credible at summary judgment.

## V. PLAINTIFF'S THEORY REGARDING CONTACT THROUGH THOMAS IS NOT AN IMPROPERLY INVENTED CLAIM

Defendants argue that Plaintiff's allegation that Thomas was pushed or caused to make contact with him is a new theory absent from the Amended Complaint.

Plaintiff respectfully submits that this argument elevates wording over substance. The Amended Complaint placed Defendants on notice that Plaintiff alleged assault and battery arising from the second confrontation and from Sims's aggressive advance toward Plaintiff. Plaintiff's supplemental description explains the physical mechanism by which the contact occurred. It does not substitute a completely unrelated event, date, actor, or transaction.

Moreover, Federal Rule of Civil Procedure 8 does not require a pro se plaintiff to plead every evidentiary detail or precise physical movement that discovery may later establish. The relevant issue is whether the allegations provided fair notice of the occurrence and the nature of the claim.

To the extent the Court concludes that a more explicit allegation is required, Plaintiff respectfully requests leave to amend rather than dismissal. Defendants would suffer no unfair surprise because they have already submitted affidavits specifically addressing whether Thomas touched Sims or Plaintiff. Their own submissions demonstrate that they understand the factual theory and have had an opportunity to respond.

## VI. LIMITED DEPOSITIONS ARE NECESSARY TO TEST THE WITNESSES' ACCOUNTS

Defendants argue that depositions are unnecessary because their witnesses have already provided affidavits or interrogatory responses. Affidavits prepared for summary judgment are not a substitute for depositions, particularly where the affiants' credibility, perception, physical movements, relationships, and recollections are disputed.

Depositions would allow Plaintiff to determine:

16. exactly where each individual was standing;
17. the approximate distance between Sims and Plaintiff;
18. how quickly Sims moved;
19. why Thomas stepped between them;
20. whether Sims attempted to move around Thomas;
21. whether Thomas felt pressure or movement from Sims;
22. why Canter physically intervened;
23. whether Canter believed Sims needed to be restrained or removed;
24. what Hoge and the other witnesses observed;
25. whether the witnesses discussed the incident with one another;

26. when their affidavits were prepared and what materials they reviewed;

27. whether any contemporaneous notes, communications, or reports exist; and

28. whether courthouse personnel or other witnesses were identified following the incident.

Defendants' assertion that credibility must be resolved at trial actually supports allowing the depositions. Plaintiff cannot meaningfully present credibility disputes at trial without first obtaining the ordinary discovery necessary to identify inconsistencies, refresh recollections, and preserve testimony.

## VII. DEFENDANTS' DECISION NOT TO DEPOSE PLAINTIFF DOES NOT DISPROVE HIS CLAIMS

Plaintiff has remained willing to be deposed. Defendants chose not to depose him during the discovery period, even though his observations, conduct, contemporaneous communications, emotional reaction, trial testimony, and subsequent requests for assistance are central to the case.

Defendants cannot rely upon their voluntary decision not to examine Plaintiff and then characterize his sworn testimony as unsupported or inadequately developed. A deposition would have allowed Defendants to test Plaintiff's account, question him about alleged inconsistencies, and explore his contemporaneous conduct.

Plaintiff would testify that after the incidents he documented what occurred, contacted friends and legal advisors, experienced fear and emotional distress, referred to the incidents during the underlying trial, sought assistance and intervention from the courts, requested preservation of courthouse video, and continued attempting to obtain objective evidence.

Those actions are relevant to Plaintiff's credibility and are consistent with his position that he genuinely believed he had been assaulted and battered. Defendants should not be permitted to avoid examining Plaintiff and then obtain summary judgment partly because the record lacks the testimony that a deposition would have developed.

Plaintiff does not contend that Defendants' failure to depose him independently establishes liability. It does, however, undermine their claim that the record was fully developed and that no additional discovery could affect the summary-judgment analysis.

## VIII. LIMITED EFFORTS TO LOCATE OR RECOVER SECURITY FOOTAGE REMAIN RELEVANT

The most direct evidence would be courthouse security-camera footage depicting the parties' movements during the incidents. Such evidence could confirm or contradict Plaintiff's description, establish the relative positions of the individuals, and show whether Sims advanced, Plaintiff retreated, Thomas intervened, Canter pulled Sims away, or bodily contact occurred.

Such limited third-party discovery would determine:

29. what cameras covered the courtroom or nearby areas;

30. whether footage was recorded on July 22 or July 23, 2024;

31. the applicable retention policy;

32. whether the footage was viewed, downloaded, exported, copied, preserved, overwritten, or deleted;

33. the date and manner of any deletion;

34. whether any contractor or information-technology provider maintained backup copies;

35. whether any request to preserve the footage was received;

36. who processed Plaintiff's preservation and production requests; and

37. whether logs, metadata, correspondence, incident reports, or derivative materials still exist.

The fact that the primary recording may no longer be routinely accessible does not establish that every relevant record, backup, log, communication, or knowledgeable witness has disappeared. A narrowly tailored Rule 45 subpoena may determine whether recovery is possible and may produce evidence concerning preservation, retention, or the identity of percipient witnesses.

Plaintiff also acted repeatedly to obtain the footage after the underlying trial. His inability to obtain it through state-court motions does not establish that it was immaterial or that reasonable third-party discovery in this action would be futile.

The absence of objective footage should not be used exclusively against Plaintiff where neither side secured the footage during the retention period and where Plaintiff maintains that he repeatedly requested its preservation.

## IX. DEFENDANTS' FAILURE TO SEEK THE VIDEO DOES NOT PROVE LIABILITY, BUT IT UNDERCUTS THEIR CLAIM THAT OBJECTIVE EVIDENCE IS UNIMPORTANT

Plaintiff recognizes that Defendants had no automatic obligation to prove their innocence. Nevertheless, Defendants' position regarding the footage is relevant to their current argument that Plaintiff's allegations are demonstrably false.

Sims knew of Plaintiff's allegations during or shortly after the underlying trial. Plaintiff states that he testified concerning Sims's conduct, filed post-trial motions, sought sanctions and investigation, and repeatedly requested access to security footage. Sims and his law firm possessed substantially greater litigation resources and knowledge than Plaintiff, who was proceeding pro se in the underlying case.

Had the footage conclusively shown that Sims never advanced, Thomas never intervened, Canter never pulled Sims away, and no contact occurred, it would have been highly favorable evidence for Defendants. Yet the existing record does not show that Defendants attempted to preserve it.

Plaintiff does not ask the Court to treat that omission alone as proof of liability or spoliation. He asks the Court to permit reasonable inquiry into what footage existed, who had access to it, what preservation requests were made, and why no party obtained it before it became unavailable.

## X. THE POWERPOINT PRESENTATION IS RELEVANT, AND THE CONCLUSION OF THE UNDERLYING APPELLATE PROCEEDINGS FURTHER SUPPORTS PRODUCTION

Defendants contend that the PowerPoint presentation used by Defendant Sims during the July 2024 opening statement is irrelevant and that Plaintiff previously sought the presentation unsuccessfully in the underlying state-court proceedings. Those arguments do not justify withholding the presentation in this separate federal action.

On July 21, 2026, the Supreme Court of Maryland issued a Notice of Order confirming that it denied Plaintiff's petition in Yoseph Seyoum v. Crowley, Hoge & Fein, P.C., et al., Petition No. 117, September Term 2026. A true and correct copy of that Notice is attached to Plaintiff's Supplemental Declaration as Exhibit A.

The Supreme Court of Maryland's denial means that Plaintiff's petition seeking further review of the underlying legal-malpractice case is no longer pending before that Court. Accordingly, there is no

longer a pending appeal before Maryland's highest court that could provide a legitimate basis for refusing to produce a presentation that was openly displayed during a public jury trial.

Plaintiff does not contend that denial of the petition automatically resolves every discovery issue in his favor or independently creates an ownership right in the presentation. The denial is nevertheless significant because it eliminates any contention that producing the presentation could interfere with active proceedings before the Supreme Court of Maryland.

The PowerPoint was affirmatively used by Defendant Sims during an opening statement and displayed to Plaintiff, the presiding judge, and members of the jury. Once Defendants used the presentation as an advocacy tool in open court, its contents became directly relevant to understanding the circumstances surrounding the first alleged assault.

Plaintiff alleges that the first incident occurred immediately after he requested a copy of that PowerPoint. The presentation therefore bears directly upon:

38. why Plaintiff approached Sims;
39. whether Plaintiff's request was legitimate and litigation-related;
40. why the request allegedly caused Sims to become angry;
41. the meaning of Sims's statement, "I know what you are doing";
42. Sims's motive, intent, and state of mind;
43. the context in which Sims advanced toward Plaintiff; and
44. the credibility of the parties' competing descriptions.

Defendants argue that the presentation does not independently prove physical contact. That is not the proper relevance standard. Evidence need not conclusively prove the entire claim to be discoverable. The presentation may provide context and circumstantial evidence concerning Sims's reaction, motive, intent, and demeanor during the first incident.

The conclusion of the Maryland appellate process also reduces any possible burden or prejudice associated with production. Defendants can produce the precise presentation shown in open court without affecting any pending proceeding before the Supreme Court of Maryland.

If Defendants claim that the PowerPoint no longer exists, they should be required to provide a sworn statement identifying whether Sims created or received the presentation, who maintained or controlled it, where it was stored, whether copies were provided to anyone, whether it was preserved after the July 2024 trial, when it was deleted or lost, who authorized its deletion, whether backup, archived, emailed, or cloud-stored copies exist, and what efforts were made to locate it after Plaintiff requested production.

Because the presentation was shown publicly, triggered the interaction underlying Plaintiff's first assault claim, and is no longer connected to a pending petition before the Supreme Court of Maryland, the Court should order its production.

## XI. PRIOR NON-PRODUCTION IN THE STATE PROCEEDINGS DOES NOT RESOLVE DISCOVERY IN THIS ACTION

Defendants emphasize that Plaintiff unsuccessfully sought the PowerPoint presentation and security footage through motions in the underlying state-court proceedings. That procedural history

does not establish that the requested materials are irrelevant to this separate federal assault-and-battery action.

The state courts were addressing the underlying legal-malpractice case and its appeal. This Court is addressing independent tort claims arising from Sims's alleged conduct inside the courtroom and courthouse. The relevance and discoverability of evidence must therefore be evaluated in relation to the claims before this Court.

The Supreme Court of Maryland's denial of Plaintiff's petition did not adjudicate whether the PowerPoint is discoverable in this action, whether Sims assaulted Plaintiff after Plaintiff requested it, or whether the presentation provides relevant evidence concerning motive and context. The denial simply concluded the petition before that Court.

Defendants should therefore not be permitted to transform the conclusion of the underlying appeal into a ruling that the PowerPoint can never be discovered. No Maryland appellate court determined the merits of Plaintiff's present federal discovery request.

## XII. PLAINTIFF'S CONTEMPORANEOUS CONDUCT CORROBORATES HIS ACCOUNT

Defendants characterize Plaintiff's present declaration as a belated and self-serving reconstruction. Plaintiff's conduct beginning immediately after the incidents provides corroborating circumstances.

45. informed friends, attorneys, and advisors of the incidents;
46. documented his recollection;
47. displayed fear and emotional distress;
48. referred to Sims's conduct during testimony in the underlying trial;
49. sought assistance from courthouse and law-enforcement personnel;
50. requested preservation of courthouse security footage;
51. filed motions seeking investigation, production, and sanctions;
52. pursued the footage in the state trial and appellate courts; and
53. filed his civil action within the applicable limitations period.

The Court need not determine at this stage whether those facts conclusively prove Plaintiff's claims. They are relevant because they contradict Defendants' assertion that Plaintiff later invented the allegations solely to avoid summary judgment.

Plaintiff should be permitted to submit the relevant emails, telephone records, declarations, filings, and transcript excerpts and to explain their timing and significance.

## XIII. THE CIRCUMSTANCES OF THE INCIDENTS HEIGHTENED THEIR INTIMIDATING EFFECT

The incidents allegedly occurred inside a courtroom and courthouse during a complex jury trial in which Plaintiff was proceeding without counsel and more than $232,000 was at issue. Sims was an experienced attorney representing parties adverse to Plaintiff.

Plaintiff contends that he was making meaningful progress presenting his position when the confrontations occurred. In that setting, aggressive physical movement by opposing counsel could reasonably be perceived as intimidating and could interfere with Plaintiff's ability to concentrate, participate effectively, and complete the trial.

Plaintiff does not ask this Court, through these motions, to adjudicate whether the underlying legal-malpractice trial was correctly decided or whether the directed verdict should be reversed. Those matters belong to the appropriate state proceedings. The circumstances of that litigation are nevertheless relevant to the relationship between the parties, the emotional intensity of the encounters, Sims's alleged motive and state of mind, and the reasonableness of Plaintiff's apprehension.

Plaintiff also does not ask the Court to infer liability merely because Sims was an attorney or because the incident occurred in a courthouse. Plaintiff asks that the case be evaluated with appropriate consideration of the power imbalance, the pending adversarial trial, the location, the financial stakes, and the intervention of multiple individuals.

## XIV. THE REQUESTED DISCOVERY WOULD MATERIALLY AFFECT THE SUMMARY-JUDGMENT ANALYSIS

The discovery Plaintiff seeks is not speculative or collateral. It directly concerns the questions raised in Defendants' Motion for Summary Judgment:

- whether Sims advanced toward Plaintiff;
- whether the movement was angry, aggressive, or threatening;
- whether Plaintiff reasonably feared imminent contact;
- whether Sims caused Thomas to contact Plaintiff;
- whether Thomas made contact with Plaintiff;
- why Thomas intervened;
- why Canter physically pulled or escorted Sims away;
- what other witnesses observed;
- whether objective video or related records exist;
- what Plaintiff reported contemporaneously; and
- what caused the confrontation concerning the PowerPoint.

Depositions, subpoenas, and production of the presentation could produce evidence rebutting Defendants' contention that no genuine dispute exists. Rule 56(d) relief is therefore appropriate.

At minimum, the Court should defer ruling on summary judgment until Plaintiff has had a fair, limited opportunity to obtain this evidence and supplement the record.

## XV. DEFENDANTS WOULD NOT SUFFER UNFAIR PREJUDICE FROM NARROWLY TAILORED RELIEF

Defendants claim prejudice because they relied upon the deemed admissions and already briefed summary judgment. Litigation expense or the need to address a claim on its merits is not the type of unfair prejudice that should override consideration of the merits.

Any prejudice can be minimized by an order:

54. limiting discovery to sixty or ninety days;
55. identifying the specific witnesses who may be deposed;
56. limiting deposition duration;
57. limiting subpoenas to courthouse footage, preservation records, retention records, metadata, communications, and witness identification;
58. requiring prompt production of the PowerPoint;

59. allowing Defendants to depose Plaintiff;

60. permitting both sides to supplement summary-judgment briefing; and

61. prohibiting unrelated or duplicative discovery.

Such an order would protect Defendants while preventing the far greater injustice of disposing of Plaintiff's claims because former counsel failed to create a record.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

62. accept Plaintiff's Supplemental Declaration and Supplemental Opposition;

63. grant Plaintiff's Motion for Extension of Time Nunc Pro Tunc and accept his response to the Court's June 29, 2026 Order;

64. permit Plaintiff to file his Sur-reply;

65. permit withdrawal or amendment of the deemed admissions under Rule 36(b);

66. reopen discovery for the limited purposes described in Plaintiff's motions;

67. permit limited depositions of Defendant Sims, Michael Thomas, Bradley Canter, Christopher Hoge, and other identified percipient witnesses;

68. authorize narrowly tailored Rule 45 subpoenas to the Montgomery County Sheriff's Office, the Circuit Court for Montgomery County, and any identified custodian or contractor;

69. compel production of the PowerPoint presentation used during the July 2024 opening statement;

70. deny Defendants' request for summary judgment or defer resolution under Rule 56(d) until completion of limited discovery;

71. permit supplemental summary-judgment briefing following discovery;

72. take notice of the July 21, 2026 Notice of Order from the Supreme Court of Maryland denying Plaintiff's petition in the underlying legal-malpractice matter and recognize that no petition remains pending before that Court that would justify withholding the PowerPoint presentation publicly used during the July 2024 trial; and

73. grant such other and further relief as the Court deems just and appropriate.

**Respectfully submitted,**

Yoseph Seyoum

Plaintiff, Pro Se

[Mailing Address]

[Telephone Number]

joe.scott@phantomalert.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24TH day of July 2026, a copy of the foregoing Plaintiff's Reply in Support of His Pending Motions and Response to Defendants' Omnibus Opposition was filed through the Court's CM/ECF system and served electronically upon counsel for Defendants:

Justin S. Dunbar, Esq.
Niles, Barton & Wilmer, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
jsdunbar@nilesbarton.com

Yoseph Seyoum
Plaintiff, Pro Se

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

YOSEPH SEYOUM,
Plaintiff,

Civil Action No. 8:25-cv-03446-AAQ

CHARLES M. SIMS, et al.,
Defendants.

## SUPPLEMENTAL DECLARATION OF YOSEPH SEYOUM REGARDING THE SUPREME COURT OF MARYLAND'S JULY 21, 2026 NOTICE OF ORDER

I, Yoseph Seyoum, declare under penalty of perjury as follows:

74. I am the Plaintiff in this action and am competent to testify concerning the matters stated in this Declaration.

75. I submit this Supplemental Declaration in further support of my pending motions, including my Motion to Compel Defendants to Produce the PowerPoint presentation used by Defendant Charles M. Sims during the opening statement in the July 2024 trial.

76. The underlying legal-malpractice action was captioned Yoseph Seyoum v. Crowley, Hoge & Fein, P.C., et al.

77. Following the conclusion of the proceedings in the Circuit Court for Montgomery County and the Appellate Court of Maryland, I filed a petition seeking review by the Supreme Court of Maryland.

78. The proceeding in the Supreme Court of Maryland was identified as Petition No. 117, September Term 2026.

79. On July 21, 2026, the Supreme Court of Maryland issued a Notice of Order stating that the Court had denied my petition.

80. A true and correct copy of the July 21, 2026 Notice of Order is attached to this Declaration as Exhibit A.

81. Based upon that Notice, my petition is no longer pending before the Supreme Court of Maryland.

82. Defendant Sims used the requested PowerPoint presentation during his opening statement in the July 2024 trial.

83. The presentation was displayed openly to the presiding judge, the jury, me, and other persons present in the courtroom.

84. My request for a copy of the PowerPoint led directly to the first incident underlying my assault claim.

85. After courthouse personnel directed me to request the presentation from Defendant Sims, I approached him and asked for a copy.

86. Defendant Sims responded by stating words to the effect of, "I know what you are doing," became visibly upset, and advanced toward me.

87. I retreated several feet toward the judge's bench because I feared that Defendant Sims was about to make harmful or offensive physical contact with me.

88. The PowerPoint is therefore relevant to explaining why I approached Defendant Sims, why he reacted as he did, the meaning of his statement, and his motive and state of mind during the first incident.

89. Because the presentation was used publicly during trial and the petition before the Supreme Court of Maryland has now been denied, I am unaware of any remaining proceeding before that Court that could be affected by production of the presentation.

90. I respectfully request that the Court order Defendants to produce the exact PowerPoint presentation used during the July 2024 opening statement.

91. If Defendants contend that the PowerPoint no longer exists, I respectfully request that they be required to state under oath what happened to the presentation, when it was lost or deleted, who maintained it, and what efforts were made to locate all electronic, archived, emailed, cloud-stored, or backup copies.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____JULY 24TH_____, 2026

_____

Yoseph Seyoum
Plaintiff, Pro Se

# EXHIBIT A

Supreme Court of Maryland
Notice of Order dated July 21, 2026

Yoseph Seyoum v. Crowley, Hoge & Fein, P.C., et al.
Petition No. 117, September Term 2026



# Supreme Court of Maryland

Robert C. Murphy Courts of Appeal Building
361 Rowe Boulevard
Annapolis, Maryland 21401

Gregory Hilton,
Clerk

(410) 260-1500
(800) 926-2583

July 21, 2026

## NOTICE OF ORDER

*Yoseph Seyoum v. Crowley, Hoge & Fein, P.C., et al.*
Petition No. 117, September Term, 2026

On July 21, 2026, the Court entered an order.[1] denying the petition in this Court.

/s/ Gregory Hilton
Clerk

Copy to: All counsel of record
Any unrepresented parties
Clerk, Appellate Court of Maryland
Clerk, Circuit Court

---

[1] The Court's order can be viewed online at https://www.mdcourts.gov/scm/petitions.