PLAINTIFF'S SECOND AMENDED COMPLAINT

JURY TRIAL DEMANDED

Plaintiff YOSEPH SEYOUM, proceeding pro se, files this Second Amended Complaint against Defendants CHARLES M. SIMS, ESQUIRE; O'HAGAN MEYER, PLLC; and MICHAEL THOMAS, and alleges as follows:

I. PARTIES, JURISDICTION, AND VENUE

**1. Plaintiff YOSEPH SEYOUM is an adult resident of Maryland.**

## REDLINE / CHANGES SHOWN - LOCAL RULE 103.6(c)

*Stricken material from the operative Amended Complaint is shown with strikethrough. New material in the proposed Second Amended Complaint is shown in bold. This comparison reflects the change from the operative pleading to the proposed pleading.*

## OPERATIVE AMENDED COMPLAINT - MATERIAL TO BE REPLACED

~~IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND~~

~~YOSEPH SEYOUM *~~

~~Plaintiff, *~~

~~v. * Case No.: C-15-CV-25-003984~~

~~CHARLES SIMS, et al,. *~~

~~Defendants. *~~

~~* * * * * * * * * * * * *~~

~~PLAINTIFF'S AMENDED COMPLAINT~~

~~COMES NOW Plaintiff YOSEPH SEYOUM, by and through his attorneys, Samuel Elira and the Elira Law Firm, LLC, to file this Amended Complaint against Defendant CHARLES SIMS, Esquire and Defendant O'HANGAN MEYER PLLC. In support thereof, the following is offered:~~

~~I. PARTIES, JURISDICTION, VENUE~~

~~1. Plaintiff YOSEPH SEYOUM is an adult over the age of 18 years and a resident of 1900 Lyttonsville Road, Suite 306, Silver Spring, Maryland 20910 at all times relevant to this Amended Complaint.~~

~~2. Defendant CHARLES SIMS is (hereinafter "Defendant Sims") is an attorney barred in the state of Maryland who regularly conducts business in the state of Maryland. The actions complained of in Plaintiff's Complaint and Amended Complaint took place in the state of Maryland,~~

~~3. Defendant O'HAGAN MEYER, PLLC is a law firm engaged in the practice of law, with offices at 411 East Franklin Street, Suite 500, Richmond, Virginia 23219, and is the employer of Defendant CHARLES SIMS, and conducts regular business in the state of Maryland but is registered as a business, upon information and belief, in Richmond, Virginia. At all times relevant to this Amended Complaint, Defendant CHARLES SIMS,~~

Esquire was an employee of O'HAGAN MEYER, PLLC. Defendant conducted business on behalf of O'HAGAN MEYER, PLLC in the state of Maryland on all dates complained of in Plaintiff's Complaint and Amended Complaint.

4. Venue is proper because the actions complained in Plaintiff's Complaint and Amended Complaint took place in Montgomery County, Maryland.

5. This action is timely filed because the actions alleged in this Complaint and Amended Complaint took place between July 22, 2024 and July 26, 2024. The original Complaint was filed on July 25, 2025.

II. STATEMENT OF FACTS

6. During the week of July 22-26, 2024, Plaintiff Seyoum was a pro se Defendant in a jury in trial against Plaintiff Crowley, Hoge& Fein, P.C. O'HAGAN MEYER, PLLC represented Crowley, Hoge & Fein, P.C Defendant CHARLES SIMS, Esquire was the attorney for Crowley, Hoge & Fein, P.C. The Case no. of the case is C-15-CV-22-004124. It was a jury trial.

7. The jury trial in the above-mentioned case took place July 17, 22, 23, 24, 25 and 26th, 2024.

8. Plaintiff, Crowley, Hoge & Fein, P.C, during the trial, presented a power-point presentation to the jury.

9. During a break, Mr. Seyoum walked outside of the courtroom. Mr. Sims was in the hallway. Mr. Seyoum asked Mr. Sims for a copy of the Power Point presentation presented in trial. Defendant Sims grew enraged, pointed his fingers at Mr. Seyoum in an aggressive manner, walked toward Mr. Seyoum quickly and yelled "I know what you are doing."

10. Mr. Sims' aggressive approach made Mr. Seyoum fearful causing him to retreat backward. He pleaded with Mr. Sims to calm down in an attempt to deescalate Mr. Sims' growing aggression. Mr. Sims' demeanor walking toward him seemed angry, unhinged, irrational, and inconsolable. Mr. Sims ignored Mr. Seyoum's request to back down and he continued his approach towards Mr. Seyoum. Mr. Seyoum retreated to a safe distance to protect himself from Mr. Smith's unprovoked rage.

11. Mr. Smith's actions of aggressively approaching Mr. Seyoum, causing him to retreat immediately, put him in fear of imminent harm particularly because he was perplexed by Mr. Sims' sudden, unprovoked and surprising anger.

12. During a second break, Mr. Seyoum assumed Mr. Sims' anger had calmed. Mr. Seyoum asked Mr. Sims politely, at a safe distance, for a copy of the witness list offered by Mr. Smith in trial. In this instance, Mr. Sims' lunged toward Mr. Seyoum causing one of Mr. Smith's colleagues to retrain him.

COUNT I - ASSAULT

13. Plaintiff incorporates by reference the allegations contained in paragraphs 1-13 as if fully set forth under this count.

14. Mr. Seyoum was placed in apprehension of harmful and offensive contact by Mr. Sims' aggressive gestures and approach toward Mr. Seyoum, which caused him to fear reasonable imminent harm despite Mr. Seyoum' attempt to retreat and to deescalate the situation. Bystanders had to retrain Mr. Sims to stop the attack Mr. Sims attempted to lodge on Mr. Seyoum.

~~15. Mr. Seyoum was placed in fear of imminent harm due to Mr. Sims' failure to retreat when asked by Mr. Seyoum and Mr. Sims's inability to calm down prompting bystanders to restrain his movement toward Plaintiff.~~

~~WHEREFORE, Plaintiff prays for recovery in damages caused by Defendant Sims' tortious behavior in excess of $75,000.00, including recovery of court courts, attorney's fees, pre-judgment and post judgment interest. Additionally, the Defendant acted maliciously and punitive damages are sought for Defendant's actions.~~

~~COUNT II - BATTERY~~

~~16. Plaintiff incorporates by reference the allegations contained in paragraphs 1-16 as if fully set forth under this count.~~

~~17. Mr. Sims pushed Mr. Seyoum outside of the courtroom because he was unable to control his emotions. The push offended Mr. Seyoum because it was unprovoked and without Mr. Seyoum's consent.~~

~~Plaintiff did not take any action to provoke Mr. Seyoum's actions.~~

~~WHEREFORE, Plaintiff prays for recovery in damages caused by Defendant Sims' tortious behavior in excess of $75,000.00, including recovery of court courts, attorney's fees, pre-judgment and post judgment interest. Additionally, the Defendant acted maliciously, and punitive damages are sought for Defendant's actions.~~

~~COUNT III - INTENTIONIAL INFLICTION OF EMOTIONAL DISTRESS~~

~~18. Plaintiff incorporates by reference the allegations contained in paragraphs 1-18 as if fully set forth under this count.~~

~~19. Mr. Sims' conduct was intentional and reckless and purposed done to inflict severe emotional distress on Mr. Seyoum;~~

~~20. His actions we were done knowingly to cause substantial and severe emotional distress; His actions were taken deliberately in disregard of a high degree of probability that emotional distress would follow;~~

~~21. Plaintiff did not take any actions to provoke Mr. Seyoum's actions.~~

~~WHEREFORE, Plaintiff prays for recovery in damages caused by Defendant Sims' tortious behavior in excess of $75,000.00, including recovery of court courts, attorney's fees, pre-judgment and post judgment interest. Additionally, the Defendant acted maliciously and punitive damages are sought for Defendant's actions.~~

~~COUNT V- RESPONDEAT SUPERIOR~~

~~22. Plaintiff incorporates by reference the allegations contained in paragraphs 1-22 as if fully set forth under this count.~~

~~23. Mr. Sims was an employee-agent of Defendant O'HAGAN MEYER, PLLC at all times relevant to this Complaint, employed as attorney. Defendant O'HAGAN MEYER, PLLC had the power to select and hire Mr. Sims, it paid his wages, had the power to discharge him, had the power to control his conduct, and Mr. Sims' work is apart of the regular business of O'HAGAN MEYER, PLLC.~~

~~24. Mr. Sims was acting in the scope of his employment when he attended trial on the dates mentioned herein. Mr. Sims' intimidating conduct of aggressively approaching Mr. Seyoum and/or committing battery on Mr. Seyoum was consistent with the goal of winning the case.~~

~~25. The intimidation initiated was purposely undertaken to accomplish O'HAGAN MEYER, PLLC's goal of being successful in the litigation.~~

~~26. O'HAGAN MEYER, PLLC has not contacted Mr. Seyoum expresses regret and has full knowledge of the despicable conduct of its employee. Thus, O'HAGAN MEYER, PLLC has ratified Mr. Sims' behavior.~~

~~WHEREFORE, Plaintiff prays for recovery in damages caused by Defendant Sims' tortious behavior in excess of $75,000.00, including recovery of court courts, attorney's fees, pre-judgment and post judgment interest.~~

~~Respectfully submitted,~~

~~/s/ Samuel Elira~~

____________________________

~~Samuel Elira, Esquire~~
~~CPF# 18-9060001~~
~~5302 E. Court Drive~~
~~Upper Marlboro, MD 20772~~
~~sqelaw@gmail.com~~
~~(301) 936-1418~~
~~(301) 218-9406 – fax~~

~~CERTIFICATE OF SERVICE~~

~~I HEREBY CERTIFY that on _________________, Plaintiff's Amended Complaint was served via first-class mail to:~~

~~Charles Sims, Esquire~~
~~411 East Franklin Street, Suite 500~~
~~Richmond, VA 23219~~

~~O'HAGAN MEYER, PLLC~~
~~411 East Franklin Street, Suite 500~~
~~Richmond, VA 23219~~

~~/s/ Samuel Elira~~___________

~~Samuel Elira~~

## PROPOSED SECOND AMENDED COMPLAINT - NEW MATERIAL

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**Plaintiff YOSEPH SEYOUM, proceeding pro se, files this Second Amended Complaint against Defendants CHARLES M. SIMS, ESQUIRE; O'HAGAN MEYER, PLLC; and MICHAEL THOMAS, and alleges as follows:**

**I. PARTIES, JURISDICTION, AND VENUE**

**1. Plaintiff YOSEPH SEYOUM is an adult resident of Maryland.**

**2. Defendant CHARLES M. SIMS ("Sims") is an attorney who regularly conducts legal business in Maryland and appeared as counsel in the underlying Montgomery County litigation giving rise to this action.**

**3. Defendant O'HAGAN MEYER, PLLC ("O'Hagan Meyer") is a law firm engaged in the practice of law and was, at all relevant times, the employer of Defendant Sims.**

**4. Upon information and belief, Defendant MICHAEL THOMAS ("Thomas") was an attorney, associate, colleague, or member of the trial team working with Sims during the underlying July 2024 trial and was personally present during the second occurrence giving rise to this action.**

**5. Thomas personally participated in the second occurrence by intentionally positioning himself physically between Sims and Plaintiff during the confrontation described below.**

**6. The acts complained of occurred in Montgomery County, Maryland.**

**7. Venue is proper in this District.**

**8. The underlying occurrences took place during the week of July 22-26, 2024.**

**9. Plaintiff's original action was commenced on July 25, 2025.**

**10. Plaintiff's proposed battery claim against Thomas concerns the exact same July 2024 occurrence already alleged in the original and Amended Complaints.**

**11. The proposed battery claim is brought within Maryland's general three-year limitations period applicable to civil battery claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101; Ford v. Douglas, 144 Md. App. 620, 623-25, 799 A.2d 448, 450-51 (2002).**

**II. FACTUAL ALLEGATIONS**

**A. The Underlying Jury Trial**

**12. During the week of July 22-26, 2024, Plaintiff Seyoum was a pro se defendant and counterclaim plaintiff in a jury trial involving Crowley, Hoge & Fein, P.C., Case No. C-15-CV-22-004124, in the Circuit Court for Montgomery County, Maryland.**

**13. O'Hagan Meyer represented Crowley, Hoge & Fein, P.C.**

**14. Defendant Sims served as trial counsel.**

**15. Thomas was present as a member of Sims's trial team during the events relevant to this action.**

**B. First Incident**

**16. During the underlying trial, opposing counsel used a PowerPoint presentation during opening statements.**

**17. On the morning following the opening statements, Plaintiff asked courtroom personnel how he could obtain a copy of that presentation.**

**18. Plaintiff was directed to request it from Sims.**

**19. Plaintiff approached Sims and politely requested a copy of the PowerPoint.**

**20. Sims became visibly agitated, pointed toward Plaintiff, advanced rapidly toward Plaintiff, and repeatedly stated words to the effect of, "I know what you are doing."**

**21. Plaintiff was startled by Sims's reaction and began retreating backward while asking Sims to calm down.**

**22. Sims continued advancing.**

**23. Plaintiff reasonably believed that harmful or offensive physical contact was imminent.**

**24. Plaintiff retreated approximately six to ten feet in an effort to maintain distance and avoid physical contact.**

**25. The incident occurred in the presence of persons in or around the courtroom.**

**C. Second Incident**

**26. During another break in the trial, Plaintiff again encountered Sims and members of Sims's trial team.**

**27. Plaintiff believed Sims had calmed down and approached from what Plaintiff considered a safe distance to address trial-related documents and a witness list.**

**28. Sims again became agitated and moved or lunged toward Plaintiff.**

**29. Plaintiff began moving backward to avoid Sims and to maintain distance.**

**30. Michael Thomas observed the confrontation.**

**31. Thomas deliberately moved from his position and physically inserted himself into the space between Sims and Plaintiff.**

**32. Bradley Canter was also present during the confrontation.**

**33. Canter has stated under oath that he physically intervened with Sims and directed or pulled Sims back toward the group.**

**34. Thomas has likewise stated under oath that he intentionally positioned himself between Sims and Plaintiff.**

**35. Plaintiff distinctly remembers Thomas entering Plaintiff's physical space and making unwanted bodily contact with Plaintiff while Plaintiff was retreating.**

**36. Plaintiff did not consent to Thomas touching him or entering his physical space in a manner that resulted in bodily contact.**

**37. Plaintiff originally understood that Sims's continued forward movement caused, contributed to, or resulted in Thomas being moved, displaced, or forced into Plaintiff.**

**38. Plaintiff has therefore consistently maintained that the second encounter included actual unwanted bodily contact.**

**D. Thomas's Subsequent Sworn Account Creates an Alternative Factual Theory**

**39. Thomas subsequently submitted an affidavit concerning the second confrontation.**

**40. Thomas acknowledges that he deliberately positioned himself between Sims and Plaintiff.**

**41. Thomas nevertheless states that he did not restrain or touch Sims.**

**42. Thomas also denies touching Plaintiff.**

**43. Plaintiff disputes Thomas's denial that contact occurred.**

**44. Plaintiff personally experienced and remembers Thomas making bodily contact with him during the confrontation.**

**45. Plaintiff cannot presently know the precise mechanism of that contact because Thomas, Sims, Canter, and the other percipient witnesses were not deposed before discovery closed.**

**46. Plaintiff therefore pleads alternative factual theories pursuant to Federal Rule of Civil Procedure 8(d).**

**47. Alternative Theory One: Sims intentionally advanced toward Plaintiff and caused or contributed to Thomas being pushed, displaced, forced, or otherwise moved into Plaintiff, resulting in harmful or offensive bodily contact.**

**48. Alternative Theory Two: If Thomas's assertion that Sims did not touch, push, restrain, or otherwise physically move Thomas is accepted, Plaintiff alleges in the alternative that Thomas independently and intentionally moved his body into Plaintiff's space and intentionally caused unwanted bodily contact while interposing himself between Sims and the retreating Plaintiff.**

**49. The two theories concern the exact same physical encounter.**

**50. Plaintiff is not required at the pleading stage to determine which Defendant's description of the physical mechanics will ultimately be credited.**

**51. Plaintiff pleads these theories in the alternative so that responsibility may be determined from testimony and evidence.**

**52. Thomas's intervention did not occur in isolation.**

**53. Thomas acknowledges positioning himself between the parties, while Canter separately acknowledges physically intervening with Sims.**

**54. Plaintiff alleges that these interventions occurred because Sims was advancing toward Plaintiff and the confrontation was escalating.**

**55. Plaintiff was retreating rather than advancing toward Sims or Thomas.**

**56. Plaintiff alleges that Sims, Thomas, and Canter were moving within the confrontation while Plaintiff was attempting to create distance.**

**57. Plaintiff maintains that bodily contact with Thomas occurred during that movement.**

**58. Whether Sims caused Thomas's movement or Thomas independently caused the contact is a disputed factual question.**

**E. Courthouse Security Evidence**

**59. The events occurred in and around a public courthouse where security-camera systems were present.**

**60. Plaintiff promptly sought preservation and production of security-camera footage concerning the incidents.**

**61. Plaintiff has consistently maintained that objective video or related security records could materially assist in determining the movements, locations, and conduct of the persons involved.**

**62. Plaintiff does not presently know whether the original footage remains recoverable.**

**63. Plaintiff seeks through appropriate discovery any existing footage, copies, backups, preservation records, access logs, deletion records, audit information, vendor records, metadata, or testimony concerning the security-camera system.**

**64. Such evidence is potentially material because the parties dispute who moved toward whom, who physically intervened, and whether bodily contact occurred.**

**COUNT I - ASSAULT AGAINST CHARLES M. SIMS**

**65. Plaintiff incorporates paragraphs 1 through 64 as though fully stated herein.**

**66. During both encounters, Sims intentionally engaged in conduct that placed Plaintiff in reasonable apprehension of imminent harmful or offensive bodily contact.**

**67. Sims's rapid and aggressive approach, gestures, demeanor, and continued movement toward Plaintiff caused Plaintiff reasonably to fear imminent physical contact.**

**68. Plaintiff responded by retreating and attempting to create additional physical distance.**

**69. During the second encounter, Sims's conduct caused other persons to intervene physically between Sims and Plaintiff.**

**70. Plaintiff alleges that Thomas positioned himself between Sims and Plaintiff and that Canter separately physically intervened with Sims.**

**71. These facts are consistent with Plaintiff's contemporaneous perception that Sims's movement presented a threat of imminent harmful or offensive contact.**

**72. As a direct and proximate result of Sims's conduct, Plaintiff suffered damages, including fear, emotional distress, disruption, and other damages to be established through admissible evidence.**

**WHEREFORE, Plaintiff requests judgment against Defendant Charles M. Sims for compensatory damages in an amount to be determined at trial, punitive damages if proven under the applicable legal standard, allowable costs, pre- and post-judgment interest, and such other relief as the Court deems just.**

**COUNT II - BATTERY AGAINST CHARLES M. SIMS AND MICHAEL THOMAS, PLEADED IN THE ALTERNATIVE**

**73. Plaintiff incorporates paragraphs 1 through 72 as though fully stated herein.**

**74. During the second incident, Plaintiff was retreating from Sims and attempting to avoid physical confrontation.**

**75. Thomas deliberately positioned himself physically between Sims and Plaintiff.**

**76. Thomas entered the physical space immediately surrounding Plaintiff and made bodily contact with Plaintiff.**

**77. Plaintiff did not consent to the bodily contact.**

**78. Under the circumstances, the contact was harmful or offensive to Plaintiff.**

**79. Plaintiff alleges that the bodily contact occurred as part of the physical sequence initiated by Sims's aggressive advance.**

**80. Plaintiff presently lacks access to deposition testimony or objective video evidence establishing the exact mechanism by which Thomas came into contact with Plaintiff.**

**Alternative Battery Theory Against Sims**

**81. Plaintiff alleges that Sims continued moving or pressing forward and caused, contributed to, or set in motion the physical movement that caused Thomas to make unwanted contact with Plaintiff.**

**82. Under this alternative, Sims is responsible for the resulting harmful or offensive contact even if Sims's own body did not directly touch Plaintiff.**

**Alternative Battery Theory Against Thomas**

**83. Thomas states that Sims did not touch, push, restrain, or otherwise physically displace him.**

**84. If Thomas's statement concerning the absence of physical contact between Sims and Thomas is accepted, Plaintiff pleads in the alternative that Thomas voluntarily and intentionally undertook the movement that placed his body into Plaintiff's space and intentionally caused the bodily contact.**

**85. Plaintiff further alleges that Thomas's intentional physical movement resulted in unwanted and offensive bodily contact with Plaintiff.**

**86. Plaintiff did not invite or consent to that contact.**

**87. Plaintiff therefore pleads battery against Thomas in the alternative to the existing causation theory against Sims.**

**88. Plaintiff does not allege that both mutually inconsistent mechanisms must be true.**

**89. Plaintiff alleges that bodily contact occurred and requests that the factfinder determine, after discovery, whether Sims caused the contact, Thomas independently caused it, or the conduct of both Defendants contributed to it.**

**90. The alternative claim against Thomas arises from the same July 2024 occurrence alleged from the outset of this action.**

**91. Thomas has been identified throughout the litigation as an eyewitness and participant in the physical intervention during the second incident.**

**92. As a direct and proximate result of the alleged battery, Plaintiff suffered damages to be determined at trial.**

**WHEREFORE, Plaintiff requests judgment against Defendant Sims and/or Defendant Thomas, as established by the evidence, for compensatory damages in an amount to be determined at trial, punitive damages against any Defendant as to whom the required state of mind is established by the requisite evidentiary standard, allowable costs, pre- and post-judgment interest, and such further relief as justice requires.**

**COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST CHARLES M. SIMS**

**93. Plaintiff incorporates paragraphs 1 through 92 as though fully stated herein.**

**94. Plaintiff alleges that Sims's conduct was intentional or reckless.**

**95. Plaintiff alleges that Sims repeatedly used physical intimidation during an active jury trial despite Plaintiff's attempts to retreat and de-escalate.**

**96. Plaintiff alleges that the conduct was extreme and outrageous under the circumstances.**

**97. Plaintiff alleges that Sims intended to cause severe emotional distress or acted recklessly in deliberate disregard of the probability that such distress would result.**

**98. Plaintiff alleges that he experienced severe emotional distress as a direct result of the conduct.**

**WHEREFORE, Plaintiff requests judgment against Defendant Sims for compensatory damages, punitive damages if legally and factually established, allowable costs and interest, and such other relief as the Court deems proper.**

**COUNT IV - RESPONDEAT SUPERIOR AGAINST O'HAGAN MEYER, PLLC**

**99. Plaintiff incorporates paragraphs 1 through 98 as though fully stated herein.**

**100. At all relevant times, Sims was an employee and agent of O'Hagan Meyer.**

**101. Sims was acting as O'Hagan Meyer's trial attorney while conducting the litigation in which the incidents occurred.**

**102. Plaintiff alleges that Sims's interactions with Plaintiff arose while Sims was performing work on behalf of O'Hagan Meyer and occurred in connection with the underlying trial.**

**103. To the extent Sims's tortious conduct is determined to have occurred within the scope of his employment under Maryland law, Plaintiff alleges that O'Hagan Meyer is vicariously liable.**

**104. To the extent discovery establishes that Thomas was also an employee or agent of O'Hagan Meyer acting within the scope of that employment during the second incident, Plaintiff preserves the right to seek any vicarious liability permitted by law arising from Thomas's conduct.**

**WHEREFORE, Plaintiff requests judgment against O'Hagan Meyer to the extent permitted under principles of respondeat superior and Maryland law.**

**PRAYER FOR RELIEF**

**A. enter judgment in Plaintiff's favor on each claim established by the evidence;**

**B. award compensatory damages in an amount to be determined by the jury;**

**C. award punitive damages against any Defendant as to whom Plaintiff proves the necessary factual and legal requirements;**

**D. award pre- and post-judgment interest where authorized;**

**E. award costs where authorized by law;**

**F. permit a jury to determine the disputed factual questions concerning the two July 2024 incidents; and**

**G. grant such other and further relief as the Court deems just and proper.**

**JURY DEMAND**

**Plaintiff demands trial by jury on all issues so triable.**

**Respectfully submitted, /s/ Yoseph Seyoum**



**Yoseph Seyoum**
**Plaintiff, Pro Se**
**1900 Lyttonsville Road, Suite 306**
**Silver Spring, Maryland 20910**
**(703) 975-8957**
**Joe.Scott@PhantomALERT.com**

**Date: August 26, 2026**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that on August 26, 2026, a copy of the foregoing Plaintiff's Second Amended Complaint was filed with the Court and served upon counsel for the existing Defendants:**

**Justin S. Dunbar, Esq.**
**Niles, Barton & Wilmer, LLP**
**111 S. Calvert Street, Suite 1400**
**Baltimore, Maryland 21202**
**jsdunbar@nilesbarton.com**



**/s/ Yoseph Seyoum**
**Yoseph Seyoum**
**Plaintiff, Pro Se**